*US District Court*
*for District*
*Original*

**FILED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAY 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| **SHEILA A. BLOOM**<br>1712 Cedarpark Road<br>Annapolis, Maryland 21401<br>*410. 267. 1515*<br><br>            Plaintiff,<br><br>      v.<br><br>**PETER GEREN, ACTING SECRETARY**<br>UNITED STATES ARMY<br>101 Army Pentagon<br>Washington, DC 20310-0101<br><br>      and<br><br>**LTG ROBERT L. VAN ANTWERP**<br>Chief of Engineers<br>Office of the Chief of Engineers<br>2600 Army Pentagon<br>Washington, DC 20310-2600<br><br>Et. Al: Bruce Merle Elliott, Toni Trever Trombecky,<br>Sean M. Wachutka, James J. Braxton,<br>Tim Alderman, David Breeden, Kathy Genung<br>Kristine Allaman (SES), Barbara Campbell<br>Carl A. Strock LTG-RET, Robert Griffin MG-RET<br>Up to 10 defendants to be named<br>US ARMY CORPS OF ENGINEERS<br>441 G Street, NW<br>Washington, DC 20314-1000<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Complaint and Jury Demand**

Case: 1:07-cv-00979
Assigned To : Kennedy, Henry H.
Assign. Date : 5/25/2007
Description: Employ. Discrim.

*JURY ACTION*

## COMPLAINT

1.    This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII), *as amended,* 42 U.S.C. 2000eet seq,; the Civil Service Reform Act ("CSRA"), Rehabilitation Act of 1973, Reasonable Accommodation, 5 U.S.C. 2302; and the Whistleblower Protection Act ("WPA"), 5 U.S.C. 1211-1215, 1218-1219, 1221-1222, 7702-7703.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under over all of Plaintiff's Title VII claims pursuant to 42 U.S.C. 2000e -5(f)(3), 2000e-5(g), 2000e-16(c), and 29 C.F.R. 1614.407(b) and (d).

3.    Venue is proper in the United States District Court for the District of Columbia pursuant to 42 U.S.C. 2000e-5(f)(3) because of unlawful employment practices alleged to have occurred in the District of Columbia.

4.    This Court has jurisdiction over the Plaintiff's whistleblower and Civil Service Reform Act claims pursuant to Section 7702 of Title V of the United States Code, which governs the prosecution of "mixed case" claims, and Section 7703 of Title V of the United States Code.  Plaintiff initially elected to proceed with her "mixed case" claims before the Agency's Equal Employment Office ("EEO Office").

5.    Plaintiff claims standing with regards to Executive Branch officials being directed to break laws, statutes, regulations and policies and exacting discrimination, reprisal, retaliation and hostile work environment and other employment law violations against the Plaintiff through the use of privileges provided by Presidential Signing Statements yet to be determined.

6.    Plaintiff exhausted her administrative remedies before pursuing her claims in federal court.  Plaintiff exhausted her administrative remedies both with the Agency (Army/DoD)

and EEOC regarding four timely filed complaints under Department of the Army ("DA")

Docket Numbers:

a. **ARCEHECSA05APR08233** (Initial contact with EEO April 13, 2005. EEO
Counselor's Report Submitted to EEO Officer on June 20, 2005. Notice of Right
to File dated May 20, 2005 received June 4, 2005, formal complaint filed June 3,
2005. EEO Officer acknowledgment of formal complaint received June 29, 2005.
Amendments July 25, 2005 and July 27, 2005. Notice of Partial Dismissal
received October 12, 2005); Formal complaint filed with request for hearing and
appeal to EEOC on April 27, 2006.

b. **ARCEHECSA05JUL11813** (Initial contact with EEO on July 8, 2005. Assigned
to an investigator on July 8, 2006. EEO Counselor's Report Submitted to EEO
Officer on November 11, 2005. Notice of Right to File dated October 27, 2005.
Amendment filed August 1, 2005. No acknowledgement of amendment received.
Formal complaint filed with request for hearing and appeal to EEOC on April 27,
2006.

c. **ARCEHECSA05OCT12448** (Initial contact with EEO Office on October 20,
2005, Notice of Right to File dated December 16, 2005 (untimely by Agency),
Formal Complaint filed December 26, 2005, EEO Officer Acknowledgement of
Complaint dated January 4, 2006 received January 9, 2006; Amendments and
clarifications submitted February 23, 2006; Notice of Dismissal dated March 15,
2006 received March 27, 2007); Addendum to Notice of Dismissal dated March
24, 2006. Formal complaint timely filed with request for hearing and appeal to
EEOC on April 27, 2006.

d. **No DA Docket Number assigned.** (Initial contact with EEO on October 27, 2005, January 6, 2006, January 16, 2006 and February 23, 2006. Not assigned to an investigator by Agency. No counseling session conducted by EEO Office. EEO Officer dismissed the complaint without an investigation. Addendum to Notice of Dismissal dated March 24, 2006 received March 27, 2006). Formal complaint timely filed with request for hearing and appeal to EEOC on April 27, 2006.

7.    Agency officials had also failed to conduct their investigations within the time frames or in accordance with EEO procedures stipulated within Agency Policy, procedures, regulations and laws. Therefore, in accordance with 29 CFR 1614.108(g), Plaintiff timely filed a request for hearing before the Equal Opportunity Employment Commission Washington Field Office ("EEOC") on April 27, 2006. EEOC also failed to perform their duties within the 180 days allotted and failed to conduct a hearing within the stipulated time frames denying Plaintiff her rights under the law.

8.    Therefore on November 1, 2006, Plaintiff timely filed a Motion to Request to Proceed to Federal Court After Exhausting Her Administrative Remedies with the presiding Administrative Law Judge, Varice Ted Henry. On November 6, 2006, her motion was GRANTED and hereby remanded to the Agency for further processing. Between November 6, 2006 and February 22, 2007, Agency officials failed to provide the Agency Final Decision within the stipulated time frames for such action.

9.    On February 22, 2007 Plaintiff received the Agency Final Decision letter via regular mail. Plaintiff is timely filing the Civil Action in accordance with directives within the

Agency Final Decision letter dated February 15, 2007 mailed February 20, 2007 and received by the Plaintiff on February 22, 2007.

10.   Plaintiff exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407 (d) as more than 180 days have passed since she filed her request for hearing (April 27, 2006) with the EEOC on all four complaints.

11.   The Plaintiff exhausted her administrative remedies regarding the first formal complaint filed with the Agency's EEO Office on June 20, 2005 (Army Docket No. **ARCEHECSA05APR08233).**  Plaintiff made her initial contact with the EEO was April 13, 2005 but was not provided the Notice of Right to File until May 20, 2005.

12.   The Agency EEO Office took delayed action in investigating the complaint that contained multiple valid claims.  EEO Officer inappropriately dismissed the numerous claims and only investigated on claim thus denying the Plaintiff her rights to investigation of all stated claims.  Plaintiff attempted to exhaust her administrative remedies within the Agency by participating in the Department of Defense Office of Complaint Investigations ("DOD OCI") Fact Finding Conference ("FFC") on March 23, 2006 that only investigated one claim, not the many raised by the Plaintiff.  The FFC was held way over the 180 days allotted for Agency investigation.

13.   Due to the delay in processing her complaint, Plaintiff timely filed a request for hearing with the EEOC on April 27, 2006.  The EEOC did not issue a final decision or hold a hearing within 2 years of filing this complaint.  Plaintiff has exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for hearing with EEOC.  In addition, more than 768 days (over two

years) have elapsed since Plaintiff made initial contact with Agency EEO on April 13,

2005;

14. A second complaint was timely filed on July 8, 2005 with the Agency EEO Office and

on April 27, 2006 with EEOC (Army Docket No. **ARCEHECSA05JUL11813).** Once

again the Plaintiff was denied her rights to have a valid investigation on multiple claims

raised within her complaint by the Agency EEO. The complaint investigator conducted no

counseling sessions with the Plaintiff. The EEO Office submitted the EEO Counselor's

Report (AR 690-600, DA Form 7510) on November 11, 2005 to the Agency EEO Officer.

Plaintiff was not provided the final counseling session or counselors report dated

November 11, 2005 until after July 25, 2006 (9 months later). Plaintiff did not receive the

EEO Counselor's report until after July 25, 2006 when Agency Counsel provided the

document as a part of the Agency's Brief in Opposition to Appeal for Army Docket No.

**ARCEHECSA05OCT12448** to the Equal Employment Opportunity Commission Office

of Federal Operations. EEO Counselor had intended to amend the complaint after Plaintiff

met with her on October 27, 2005. From Agency documents submitted to the EEOC, the

EEO Counselor was still conducting her investigation on October 27, 2005. Plaintiff has

exhausted her administrative remedies as more than 682 days (almost two years) has

elapsed since Plaintiff made initial contact with EEO on July 8, 2005. Plaintiff had

provided amendments to the complaint on August 1, 2005. Agency did not provide

acknowledgement of the amendment to the Plaintiff. Due to the serious delay in

processing her complaint and her right to appeal through the EEOC, Plaintiff timely filed

an appeal and request for hearing with the EEOC on April 27, 2006. Plaintiff raised these

matters with the EEOC on April 27, 2006 and requested a hearing into the allegations

raised in her multiple claims within this complaint. The EEOC did not issue a final

decision or hold a hearing within over 1 year of requesting a hearing with the EEOC and

almost two years since filing with Agency EEO. Plaintiff has exhausted her administrative

remedies as set forth under 29 C.F.R. 1614.407(d) as more than 180 days has passed since

she filed her request for hearing with EEOC. In addition, more than 768 days (over two

years) have elapsed since Plaintiff made initial contact with Agency EEO on July 8, 2005;

15.    In complaints **ARCEHECSA05APR08233 and ARCEHECSA05JUL11813** Plaintiff

requested a identified claims that included discrimination, reprisal and retaliation by key

Agency officials involved in the EEO, Family Medical Leave Act, Americans with

Disability Act and Rehabilitation Act processing of requests for Reasonable

Accommodation and Rehabilitation as Agency witnesses and notified Agency officials

within USACE and the Army. On July 18, 2005 Plaintiff requested a Change in Venue

from the EEO Officer and his superior, Mr. Chuck Rau. The EEO Officer and his superior

ignored the request. Plaintiff requested the complaints to be elevated to the next level of

review on August 11, 2005 and October 17, 2005. Plaintiff also requested the change in

venue from the Department of Army after naming the EEO Officer as a Responsible

Management Official as well as others on October 25, 2005. Department of the Army did

not respond to the Plaintiff but to the EEO Officer on November 14, 2005 denying her

request. Army never provided a letter to the Plaintiff denying her request.

16.    EEO Officer failed to process the Change in Venue request.

17.    A third complaint was timely filed on October 20, 2005 with the Agency EEO Office

and on April 27, 2006 with the EEOC (Army Docket No. **ARCEHECSA05OCT12448).**

Plaintiff made initial contact with EEO Office on October 20, 2005 and the Agency

provided an untimely Notice of Right to File to the Plaintiff on December 16, 2005. Agency failed to conduct a valid investigation on multiple claims raised within the complaint and provided a Notice of Dismissal to the Plaintiff dated March 24, 2006, received on March 27, 2006). Once again the Plaintiff was denied her rights and especially her right to change in venue she made to the Agency based upon conflicts arising out of discriminatory acts conducted by the EEO Officer as well as other Senior Officials within the EEO, Safety and Security, Occupational Safety and Health, Human Resources and Labor Relations, and Senior officers/civilians within the Chain of Command involved in the discriminatory acts against the Plaintiff. The Plaintiff did not raise these matters against these officials because of their position, but because of their direct discrimination and retaliation against the Plaintiff.

18.  Plaintiff elevated the request for "change in venue" to the Army EEO and never received correspondence explaining why her request was denied. The Local EEO officer delayed processing her request for "change in venue" within US Army Corps of Engineers (USAC) for months. Then Plaintiff was denied her request to have Department of Army conduct the investigation even though she demonstrated clear evidence that the EEO procedures were being violated by the EEO Officer and other key officials within the process. The USACE EEO Officer dismissed her complaint and failed to conduct a valid investigation on multiple claims raised within her complaint by the Agency EEO. Agency officials never assigned her complaint to an investigator and no counseling session was conducted by EEO Office. Plaintiff has no record of her complaint being investigated by the Agency EEO. Plaintiff has exhausted her administrative remedies as more than 682 days (almost two years) has elapsed since Plaintiff made initial contact with EEO on

October 20, 2005. USACE EEO Officer once again dismissed the complaint and the Notice of Dismissal dated March 24, 2006. Due to the serious delay in processing her complaint and her right to appeal through the EEOC, Plaintiff timely filed an appeal and request for hearing with the EEOC on April 27, 2006. Plaintiff raised these matters with the EEOC on April 27, 2006 and requested a hearing into the allegations raised in her multiple claims within this complaint. The EEOC did not issue a final decision or hold a hearing within over 1 year of requesting a hearing with the EEOC and almost two years since filing with Agency EEO. Plaintiff has exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for hearing with EEOC. In addition, more than 768 days (over two years) have elapsed since Plaintiff made initial contact with Agency EEO on April 13, 2005;

19.  A Notice of Dismissal was never provided to the Plaintiff for additional claims raised on October 27, 2005, January 6, 2006, January 16, 2006 and February 23, 2006. Once again the Plaintiff was denied her rights to have a valid investigation on multiple claims raised within her complaint by the Agency EEO. Agency officials never investigated her multiple claims under these complaints. No investigation or counseling session were conducted by EEO Office. Plaintiff has no record of her complaint being processed by the Agency.  and more than 365 days since her claims dated January 16, 2006 and February 23, 2006. Due to the serious delay in processing her complaint, Plaintiff filed a request for hearing with the EEOC on April 27, 2006. Plaintiff raised these matters with the EEOC on April 27, 2006 and requested a hearing into the allegations raised in her multiple claims within this complaint. The EEOC did not issue a final decision or hold a hearing within over 1 year of requesting a hearing with the EEOC and almost two years since filing with

Agency EEO. Plaintiff has exhausted her administrative remedies as set forth under 29

C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for

hearing with EEOC. Plaintiff has exhausted her administrative remedies as more than 674

days (almost two years) has elapsed since Plaintiff made initial contact with EEO on

October 27, 2005, more than 499 days (over 1 year) has elapsed since Plaintiff made initial

contact with EEO on January 6, 2006 and 420 days (over 1 year) has elapsed since Plaintiff

made initial contact with EEO on February 23, 2006.


## PARTIES

20.  Plaintiff, Ms. Sheila A. Bloom, is a citizen of the United States and a resident of the

State or Maryland. She was employed by the United States Army Corps of Engineers and

the Defense Department between December 1, 1986 and December 2006. Plaintiff had

continuous career federal service and was denied her rights under the Rehabilitation Act

and provisions of Reasonable Accommodation. Plaintiff was forced to retire under the

provisions of the Disability in Federal Employee Retirement System when her requests for

reasonable accommodation and rehabilitation were denied or ignored by all levels within

her Chain of Command. After exhausting all avenues within her Chain of Command to

secure reasonable accommodation, Plaintiff filed her FERS disability retirement papers on

March 17, 2006.

21.  Plaintiff last position was a GS-13-0301 Strategic Planner. During her career service

within the Department of Defense (Army and Air Force) Plaintiff held positions in

Engineering (General, Environmental, Civil), Environmental Scientist, Community

Planning, Economic Development, Biologist, Project and Program Management.

22. The United States Army is an Agency of the United States Government and is headquartered in Virginia. United States Army is an executive agency within the meaning of 42 U.S.C. 2000e-16(a).

23. The United States Army Corps of Engineers ("USACE") is headquartered in Washington, DC. The USACE is an executive agency within the meaning of 42 U.S.C. 2000e-16(a).

24. Defendant is the Secretary of the United States Army. He is being sued in his official capacity under 42 U.S.C. 2000e-16(c).

25. Defendant is the Commander of the United States Army Corps if Engineers as the Chief of Engineers. Defendant is being sued in his official capacity and in his capacity under 42 U.S.C. 2000e-16(c).

26. Defendant Carl A. Strock (RET) was the Commanding General of the United States Army Corps of Engineers and served as the 51st Chief of Engineers. Defendant Strock is being sued as a former Responsible Management Official and personally.

27. Defendant Robert Griffin (RET) was the Deputy Commanding General of the United States Army Corps of Engineers. Defendant Strock is being sued as a former Responsible Management Official and personally.

28. Defendant MG Ronald Johnson is the Deputy Commander of the United States Army Corps if Engineers. Defendant Johnson is being sued as a Responsible Management Official and personally.

29. Defendants Bruce M. Elliott, Toni Trever Trombecky and Sean Wachutka are each being sued as Responsible Management Officials and personally.

**30.**  Defendant Kristine Allaman, Senior Executive Service (SES), Director of Strategy and Integration Directorate (SID), is being sued as a Responsible Management Official and personally.

**31.**  Defendant James Braxton, EEO Officer is being sued as a Responsible Management Official, in his capacity under 42 U.S.C. 2000e-16(c) and personally.

**32.**  Defendant Barbara Campbell, Deputy Chief of Staff (Civilian) is being sued as a Responsible Management Official, in her capacity under 42 U.S.C. 2000e-16(c) and personally.

**33.**  Defendant David Breeden, Safety and Occupational Health Officer is being sued as a Responsible Management Official, in his former capacity under 42 U.S.C. 2000e-16(c) and personally.

**34.**  Defendant Timothy Alderman, Director of Civilian Personnel Advisory Center (CEPAC) is being sued as a Responsible Management Official, in his capacity under 42 U.S.C. 2000e-16(c) and personally.

**35.**  Defendant Kathy Genung, Lead Human Resources Specialist of Civilian Pe rsonnel Advisory Center (CEPAC) is being sued as a Responsible Management Official and in her capacity under 42 U.S.C. 2000e-16(c)

**36.**  Defendants John and Jane Doe, yet to be determined, are being sued as a Responsible Management Official and in their capacity under 42 U.S.C. 2000e-16(c), and potentially personally.

## **FACTS**

37.  Plaintiff was hired by the defendant, the United States Army Corps of Engineers ("USACE"), in December of 1986 as a Civil Engineer.

38.   Between December of 1986 and September of 2002, Plaintiff's career and individual
performance as an employee of the USACE excelled.  She received numerous promotions;
outstanding performance appraisals; performance based Within Grade Increases; Quality
Step Increases; cash awards; prestigious leadership training; and letters and notes of
commendation and recognition form inside and outside of the USACE.

39.   In June 1996, Plaintiff was permanently promoted to Formerly Used Defense Site
(FUDS) Program Manager over the Northeast Region in the Environmental Management
Branch in Programs and Project Management Division in the Baltimore District Corps
office.  Shortly after assuming this position, Plaintiff began to uncover major flaws at the
FUDS site known as "American University Experiment Station (AUES)" or "Spring
Valley" in the Northwest of the District of Columbia.  The site involved identification,
testing, removal and clean-up of chemical and biological agents, nerve agents, chemical
and conventional weapons and munitions and the breakdown products.

40.   Between 1996 and 1998, Plaintiff raised significant concerns to her supervisors with
respect to critical and life threatening deficiencies in the cleanup of the Spring Valley
project.  Plaintiff's disclosures exposed specific and substantial dangers to public health
and safety as well as to the environment.  Plaintiff's concerns involved the drinking water
reservoir, tributaries and sources of potential contamination arising from the FUDS
activities at AUES and to surrounding areas.  Plaintiff's concerns also included flawed
scientific and engineering analysis strategies that were foundational to correct clean-up and
restoration of the site.  Plaintiff also raised concerns over inadequate and misleading
sample collection, munitions discovery and removal, inaccurate baseline mapping,
inadequate sampling, analysis and testing of the chemical constituents and breakdown

products from chemical and biological weapons, improper data quality and third party validation methods, and deficiencies with how deep soil, water, surface and subsurface samples were collected throughout the site.

41.   Plaintiff noted several violations of the Community Right to Know Act, the Clean Water Act, Clean Air Act, Safe Drinking Water and Comprehensive Environmental Response and Liability Act (CERCLA). She also disclosed conflicts of interest created by rehiring and paying Parsons Engineering to reevaluate its own project documents and cleanup strategies under Operation Safe Removal conducted between 1993 and 1995.

42.   In retaliation for raising these concerns with USACE and Army, Plaintiff was informed she was no longer going to function as the AUES (Spring Valley) Project Manager and was going to be replaced.

43.   In late 1998 and early 1999, Plaintiff was selected as the top candidate for a key position funded by EPA and detailed to the City of Baltimore as the Baltimore City Showcase Community Federal Loaned Executive.  In retaliation for her disclosures, USACE Senior officials attempted to interfere with this transfer and informed the Plaintiff that she was not allowed to accept the assignment.  Said interference was taken as a result of Plaintiff having raised serious concerns related to the Spring Valley site.  After EPA and Baltimore City officials objected due to the fact that Plaintiff was the top candidate for the position, USACE Senior officials capitulated and allowed her to accept the assignment. Between February 1999 and April 2001 served with excellence forging key relationships and agreements under the Brownfields Showcase initiative both within Baltimore, Annapolis and on the national level.  Plaintiff received an Excellent Performance appraisal with awards for this effort and was recognized by EPA Administrator Carol Browner.

Plaintiff was responsible for crafting landing memorandum of agreements between the Mid-Atlantic Federal Partners for the Environment (MAFPE) and the cities of Baltimore and Annapolis both ratified on September 25, 2002 and April 22, 2004 respectively.

44. During this time, Plaintiff also graduated from the Leadership Anne Arundel Flagship Class after 10 month course work in Community Trustee training. Plaintiff also was an instructor for USACE and spoke at various major forums for environmental matters and Brownfields.

45. In early 2001, Plaintiff had arranged a new potential assignment with the Baltimore City Mayor's Office or another Department to continue the efforts on Brownfields. However, in retaliation, once again Senior Agency officials refused to allow her to be assigned to this high status position working on Brownfields Redevelopment in Baltimore City.

46. In April 2001, Plaintiff was suddenly transferred to Headquarters USACE at 441 G. Street, NW, Washington DC as the National Program Manager for FUDS and Native American Lands Environmental Mitigation Program (NALEMP). Plaintiff received commendation and awards in this assignment.

47. In July 2001, Plaintiff provided an email to internal USACE team members raising concerns regarding Spring Valley to the Project Team in preparation for Congressional Hearings.

48. In October 2001, Plaintiff was selected to Shadow the former Chief of Engineers, Robert Flowers LTG (Ret) for six days.

49. Plaintiff was competitively selected to attend the prestigious Army Management Staff College (AMSC) for four months from which she graduated in April 2002. While attending the AMSC, Plaintiff interviewed for key top positions at the GS-13 and GS-14

level both within and outside of USACE. On March 24, 2002, Plaintiff was permanently transferred from Baltimore District to HQ USACE Command Planning Group a new strategic planning cell within the Executive Office of the Chief of Engineers. Plaintiff was assigned to the CPG and informed in writing by Personnel that she was a strategic planner, GS-13-0301. Plaintiff reported for duty in April 2002 following graduation from AMSC.

50. Plaintiff was provided a Permanent Change of Station (PCS) order reflecting her new job title (Strategic Planner), grade (GS-13) and Series (0301) by USACE Personnel.

51. After arrival in the CPG, Plaintiff discovered that her position description and title (Facilitator) reflected on her SF-50 were incorrect and immediately notified Agency officials who assured her that the job title and description would be corrected. This calculated decision by Personnel resulted in further reprisal that eventually was used as a form of retaliation against the Plaintiff during a "MOCK" Reduction in Force conducted in 2003 and 2004.

52. Plaintiff's concerns became the subject of Department of Justice ("DOJ") investigation following the filing of a Civil Action in early 2002 by Thomas P. Loughlin and Kathy Loughlin ("Loughlin's") individually and on behalf of their children regarding the Spring Valley (AUES) project cleanup. In accordance with the Appeals from the United States District Court for the District of Columbia No. 03-5284 (page 3) decided December 21, 2004 and consolidated with 03-5286, et. al., the Loughlin's along with other appellants – American University ("AU"); Glenbrook Limited Partnership, Lawrence N. Brandt, Inc., Lawrence N. Brandt and Robert Brant (Collectively "Glenbrook-Brandt"); Patricia Gillum and Samille Saum "for the Government's alleged negligence in (1) burying dangerous munitions and toxic chemicals on property leased from AU in the Spring Valley area of the

District of Columbia around the time of World War I, (2) failing to issue warnings about the buried munitions and chemicals and resulting in dangerous conditions, and (3) failing to investigate and remedy the hazards and contamination it caused." Gillum and Saum initially filed Federal Tort Claims Act (FTCA) and local law claims in the DC Superior Court. AU removed the actions to the District Court under 28 USC 1441(b)-(c) (2000). The Loughlins, Gillum and Saum had originally brought negligence claims against AU - *Loughlin I, 209 F. Supp. 2d at 167* which brought cross-claims against the Government under the FTCA. Loughlins filed both FTCA and supplemental local law claims in District Court. Loughlin's were able to bring their local law claims to the District *Court See Loughlin I, 209 F. Supp. 2d at 167* even after AU entered a Motion to Dismiss. The US District Court of DC Civil Docket No. 1:02-cv-00294-ESH only dismiss the case based upon discretionary function and not the merits of the issues raised. The Appellant's appealed the dismissal and filed *Loughlin II, 286 F. Supp. 2d at 23* with Oral Argument 3:17-:28.

53.   The Government is compelled to comply with local, state, federal laws, statutes, policies and procedures under the CERCLA, Clean Water, Clean Air, Safe Drinking Water, NEPA, OSHA, Department of Transportation (shipment of hazardous substances, munitions and chemicals), Community Right to Know Act, Emergency Response, etc..

54.   Federal employees who are entrusted with safety, health, environmental and public policy positions are required to warn and notify the Public of imminent or potential threats to human health and the environment and can suffer both criminal and civil penalties for willingly and knowingly misleading or withholding such information from the Public and other Federal Agencies engaged in the Clean-up and Restoration of FUDS sites. Under

DOD and Army Policy the Restoration Advisory Board and advertisement of valid, accurate, timely and scientifically based information regarding issues related safety, human health and the environment is required. Misleading the Public through manipulation or withholding of critical data is a violation of law, regulations and policies. Agency officials who purposefully withhold such information are violating the intention of Congress in establishing the FUDS program as a remedy to past military activities. At AUES (Spring Valley) the imminent threat and danger to both human health and the environment as well as National Security related to the Safety of the Government within the Executive, Judicial and Legislative Branches even requires more due diligence in ensuring that quantification and scientific analysis, clean-up and restoration strategies, Spill and Emergency Response Reporting and destruction of Weapons of Mass Destruction (chemical and biological agents, munitions) is adhered to with extreme rigor and commitment. AUES also has a direct impact on the Drinking Water Reservoir and tributaries of the Nations Capital due to potential underground infiltration of toxic chemicals, agents and munitions.

55. During the World War I operations at AUES (Spring Valley) the US Army Corps had exclusive control over the property. During operations, the Gas Service did conduct massive research and development activities with thousands of scientists and engineers to develop, test, manufactured a myriad of chemical, biological and nerve agents as well as weapons. The Gas Service used open burst air testing of these agents over trenches, bunkers and pits to simulate battlefield conditions. When the AUES was suddenly closed the very large quantities appear to have been dumped into various areas within AUES and many wood buildings were burned on site potentially spreading the contaminants by wind to other areas.

56.  Following Loughlin's and other appellants suits mentioned above, Plaintiff was compelled to meet with "DOJ" after she discussed the her concerns over Spring Valley with Susan Platt, Agency Counsel of the Baltimore District Corps office and Kenneth Powers of the USACE General Counsel (Ethics Officer) in early April 2002.  Following graduation from AMSC, Plaintiff met with "DOJ" attorneys at which time Plaintiff revealed her concerns during the interview with DOJ attorneys in the Civil Litigation Department.

57.  Thereafter, it became known to the entire Command Structure within HQ USACE, North Atlantic Division and the Baltimore District that Plaintiff was willing to go forward and expose concerns that she raised internally with USACE, potentially leading to embarrassment and potential criminal and civil penalties for misleading the public and other local, state, federal agencies.  Plaintiff had attempted to raise these concerns since 1996 and believed it was her duty to do so in the interest of the Public Trust for which she was called to uphold.

58.  Significant retaliation and reprisal against the Plaintiff ensued shortly after these protected disclosures to DOJ.  Plaintiff was now residing under the Chief of Engineers Executive Office.  Plaintiff's protected disclosures related to the AUES (Spring Valley) project were a contributing factor in a multitude of adverse actions and reprisals conducted by Senior Agency officials between September 2002 and present.

59.  Plaintiff further attempted to bring forward her concerns to the USACE and DOD Inspector General ("IG") who report directly to the Commanding General and Secretary of Defense respectively.  The USACE IG and the Plaintiff met and discussed the issues

related to Spring Valley. Plaintiff also alerted both the USACE and DOD IG and the Commanding General to her protected disclosures regarding Spring Valley.

60. The retaliation was so severe within the CPG that the Plaintiff and other CPG personnel request sensing sessions. The USACE IG refused to investigate or conduct any sessions until November 2003.

61. Between June of 2002 and August of 2002, three GS-15 managers were hired in the CPG and referred to themselves as the "management team": Bruce M. Elliott (Deputy), Mr. Sean Wachutka and Toni Trombecky.

62. In July 2002, at a work-related party held in the home of USACE Colonel Peter Saia (RET), Ms. Trombecky's husband made inappropriate sexual advances towards Plaintiff. He assumed another name, Sam, and did not tell the Plaintiff that his wife was her supervisor. At the end of the party, Plaintiff was saying goodbye to her supervisors and other people while standing outside, including Ms. Trombecky. Mr. Trombecky grabbed Plaintiff and pulled her towards him into a hug and said "take me away from them, they don't understand me."

63. Within several days of this incident with Mr. Trombecky, Ms. Trombecky trapped Plaintiff in her cubicle and berated her.

64. Beginning in September of 2002 and continuing through the present, Plaintiff has been subjected to a pattern of discrimination, reprisal and hostilities in violation of the terms and conditions of her employment by the management team, Senior Civilian and Military Officers, Personnel Officials, Safety and Health Officials, Labor Relations and the EEO Office.

65. After Mr. Wachutka's arrival in the CPG in August 2002, he continually presented Plaintiff with job announcements on a daily basis. Mr. Wachutka also threatened, harassed and reprised against the Plaintiff.

66. Following the first party at Colonel Saia's house in July 2002, Ms. Trombecky accused Plaintiff of intending to undermine her authority on numerous occasions.

67. On November 15, 2002, the day before another work-related Holiday Party at Mr. Bruce Elliott's home, Mr. Trombecky approached Plaintiff and asked if she was going to the party. Plaintiff said she thought she was going but was very apprehensive due to the behavior of Mr. Trombecky at the last party. Ms. Trombecky then stated that her husband was going to "joke" with the Plaintiff. Plaintiff asked why he was going to "joke" with her. Ms. Trombecky stated in a very sexual tone, "Oh he really likes you." Plaintiff became very frightened and upset and did not wish to attend the party but felt compelled since her next line supervisor had invited her.

68. On November 16, 2002, Plaintiff reluctantly attended the Holiday Party at Mr. Elliott's house as she was afraid of the Trombecky pair. There were approximately 30-40 people gathered in a large open kitchen living room area. When the Plaintiff walked in, Mr. Trombecky immediately approached her, grabbed her and pulled her towards him, then grabbed and tickled her near her breasts. Plaintiff immediately pushed him away and said, "Don't you ever touch me again" loud enough for people in the room to hear. Mr. Trombecky asked Plaintiff what was wrong and she told him that he inappropriately tickled her and to never touch her again. Plaintiff quickly moved away from him and the into the finished basement, then both Mr. and Mrs. Trombecky followed her there. Mrs.

Trombecky approached the Plaintiff and was overly nice. Mr. Trombecky stood against the wall and stared at the Plaintiff for a long time. Plaintiff left the party a short time later.

69. Agency officials refused to change the Plaintiff's job title until October 2, 2004 preventing Plaintiff to be reassigned to vacant positions for which she was more than qualified.

70. During the International District Commanders Conference in 2003, Ms. Trombecky and Mr. Elliott further retaliated and reprised against the Plaintiff.

71. Beginning in September 2002, the management team would not assign valid work for which she was qualified, namely in environmental and International work. After early 2003, the management team conspired together to ensure that Plaintiff was not assigned valid work, given a legitimate Total Army Performance And Evaluation System TAPES Performance Standards and associated work assignments. The management team made it impossible for the Plaintiff to excel as she had always done by withholding work, over assigning work or abusing her in meetings, withholding access to tools to perform her job such as telephone, computers and attendance of meetings. Plaintiff repeatedly submitted Draft TAPES to the management team as well as her Senior Executive Service member Ms. Kristine Allaman. In late 2003, Ms. Allaman assumed leadership of the Strategy and Integration Directorate formerly known as the Command Planning Group. Plaintiff was reassigned from the CPG to the SID during the MOCK RIF under the illegal and unauthorized USACE 2012 reorganization scheme.

72. The acts of discrimination, reprisal and retaliation and hostilities against the Plaintiff have never lapsed. These acts of aggression led first to an Administrative Grievance in

March 2003 and four subsequent EEO Complaints documented within the timely filed
Civil Action Case Number 1:05CV01804 on September 12, 2005.

73.   Within the court filing (Case Number 1:05CV01804), Plaintiff's Counsel, Mike Kohn,
Kohn, Kohn & Colapinto, clearly identified claims from September 2002 to October 22,
2004. That Case clearly identifies, with specificity, the increasing hostilities towards the
Plaintiff for her protected disclosures both under Title VII of the Civil Rights Act of 1964
("Title VII), *as amended,* 42 U.S.C. 2000e et seq,; the Civil Service Reform Act
("CSRA"), 5 U.S.C. 2302; and the Whistleblower Protection Act ("WPA"), 5 U.S.C. 1211-
1215, 1218-1219, 1221-1222, 7702-7703. Plaintiff's attorney clearly provided supporting
evidence and claims for Five (V) counts: COUNT I (Hostile Work Environment); COUNT
II (Retaliation); COUNT III (Sex Discrimination); COUNT IV (Whistleblower
Discrimination (and reprisal)) ; and COUNT V (Violation of the Merit Systems Protection
– 30 Day Suspension) (30 working day, really 43 calendar days).

74.   The following claims identified within this current action submitted on May 20, 2007
are being submitted Pro Se by the Plaintiff.

75.   Plaintiff requests the Court to assign Plaintiff Counsel to litigate this complaint as
outlined in the Agency Final Decision Letter received February 22, 2007.

76.   The claims stated within this action give rise out of the actions taken by Agency
officials in prior claims and the evidence of on-going reprisal must be considered as
overwhelming evidence of on-going and continual discrimination, harassment, reprisal and
retaliation by the "management team", Ms. Kristine Allaman and Senior Agency Officials.

77.   The claims included within this action arise out of provisions of law, regulation, policy
ad procedures governed by Title VII of the Civil Rights Act of 1964 ("Title VII), *as*

*amended,* 42 U.S.C. 2000eet seq,; the Civil Service Reform Act ("CSRA"), Rehabilitation

Act of 1973, Reasonable Accommodation, 5 U.S.C. 2302; and the Whistleblower

Protection Act ("WPA"), 5 U.S.C. 1211-1215, 1218-1219, 1221-1222, 7702-7703. The

Claims arise out of the following counts: COUNT I (Hostile Work Environment); COUNT

II (Retaliation and Reprisal); COUNT III (Sex Discrimination); COUNT IV (Disability

Discrimination); COUNT V (Reprisal and Discrimination by Senior Agency Responsible

Management Officials; COUNT VI (Violation of the Merit Systems Protection –

Performance Management and Union Representation); COUNT VII (Violation of the

Family Medical Leave Act ("FMLA"), Americans with Disability Act ("ADA"),

Rehabilitation Act and Reasonable Accommodation); COUNT VIII (Violation of the

Occupational Safety and Health Act (OSHA)OSHA and DOL Employment Laws); and,

COUNT IX (Whistleblower Discrimination (and reprisal)).

### COUNT I (Hostile Work Environment)

78.   Plaintiff incorporates by reference paragraphs 1-77, inclusive and all allegations

   contained herein.

79.   Agency officials have not provided customary benefits, rights and privileges given to

   similar employees within her class and Agency officials have colluded to discriminate and

   reprise against Plaintiff in violation of laws, regulations, statutes, policies and principles of

   the Army after Plaintiff notified her superiors of the discrimination, reprisal, retaliation and

   hostile work environment created by the Senior managers within the Strategy and

   Integration Directorate (formerly known as the Command Planning Group). Her

   disclosures about workplace discrimination and reprisal only led to more reprisal and

discrimination, threats and retaliation in violation of Plaintiff rights and protections under Title VII and Title X.

80.  On September 21, 2004 Mr. Elliott, Mr. Wachutka and a contractor from the USACE Provost Marshall threatened to have Plaintiff arrested by the District of Columbia Police Department and falsely accused Plaintiff of a felony in the District of Columbia.   Mr. Wachutka falsely stated that the Plaintiff was "guilty of a Felony in the District of Columbia" and that they were going to have arrested, however this was her first offense for an undefined and proven crime.

81.  Between September 21 and 30, 2004, Plaintiff notified appropriate law enforcement of the treats made by her managers to District of Columbia Police Department, GAO, the Executive Branch and Congressional Members.

82.  On September 22, 2004 Plaintiff was compelled to notify the GAO security who in turn notified the Federal Protective Service regarding the threats by the Senior Managers.

83.  On September 24, 2004 Colonel McMahon and Barbara Campbell refused to remove me from the hostile work environment or to report the reprisal actions on-going within the Strategy and Integration Directorate.  During this meeting, Colonel McMahon repeatedly interrogated the Plaintiff as to why she was not willing to deploy to the war zones of IRAQ or Afghanistan.

84.  On March 7, 2005, Mr. Elliott threatened Plaintiff during a weekly Performance Improvement Plan meeting.  Mr. Elliott intimidated and forced the union steward to leave the meeting and then threatened Plaintiff and refused her to have union representation in violation of the USACE-AFGE Union Agreement. Plaintiff was compelled to notify the GAO security and Federal Protective Service regarding the threats.

85. On March 21, 2005, Mr. Elliott threatened Plaintiff during a meeting to discuss fraudulent timekeeping and illegal withholding of Plaintiff pay and a second meeting for the weekly Performance Improvement Plan meeting. Mr. Elliott intimidated and forced the union steward to leave the meeting and then threatened Plaintiff and refused her to have union representation in violation of the USACE-AFGE Union Agreement. Plaintiff was compelled to notify the GAO security and Federal Protective Service regarding the threats.

86. Between December 15, 2005 and June 1, 2006, Mr. Elliott, Mr. Wachutka and Ms. Toni Trombecky continually threatened Plaintiff and refused to allow her to have union representation at meetings in violation of the USACE-AFGE union agreements. Mr. Elliot threatened union stewards and representatives and approached their supervisors to attempt to stop them from representing Plaintiff during meetings in violation of USACE-AFGE union agreements.

87. Between December 15, 2005 and June 1, 2006, Mr. Elliott, Mr. Wachutka and Ms. Toni Trombecky continually threatened Plaintiff and refused to allow her to have union representation at meetings in violation of the USACE-AFGE union agreements. Mr. Elliot threatened union stewards and representatives and approached their supervisors to attempt to stop them from representing Plaintiff during meetings in violation of USACE-AFGE union agreements.

88. As a direct and proximate result of the hostile work environment created by Agency on-going and continual vicarious and unlawful harassment, Plaintiff has suffered damages, including but not limited to physical and emotional harm, damage to reputation and other monetary damages in an amount to be proven at trial.

## COUNT II (Retaliation and Reprisal)

89.  Plaintiff incorporates by reference paragraphs 1-88, inclusive and all allegations
contained herein.

90.  Plaintiff has protected EEO and Administrative Grievance activities filed with the
Army.  Plaintiff has been subjected to on-going and continual hostilities and reprisal since
late January 2003 until the present.  These activities gave rise to the actions and claims
outlined within this request for hearing and appeal now under consideration within the
EEOC.

91.  On March 21, 2005, Mr. Wachutka placed Plaintiff on leave restriction based upon
unmerited and unauthorized reasons including Family Medical Leave Act status.

92.  On March 29, 2005, Mr. Wachutka denied Plaintiff request for removal of
unauthorized, unmerited and illegal leave restriction and in reprisal changed Plaintiff work
schedule from Alternative Work Schedule to a Fixed Scheduled.

93.  On June 10, 2005, Ms. Kristine Allaman, sent an email about a vacant position that was
being advertised.  Ms. Allaman, Mr. Elliott and Mr. Wachutka reprised against Plaintiff by
not placing Plaintiff out of "overhire" status into the vacant position for which Plaintiff
was more than qualified.

94.  On June 28, 2005, Mr. Tim Alderman (CPAC) refused to give Plaintiff the list of
Agency vacancies in the HQ so that Plaintiff could be placed out of overhire status into
permanent status.

95.  On December 16, 2005 Plaintiff contacted Mr. Wachutka to discuss several issues and
Mr. Wachutka never returned Plaintiff's calls.  Mr. Wachutka arbitrarily and maliciously
did not pay Plaintiff the advanced sick leave he promised and placed Plaintiff on LWOP

for over 59 hours. On January 3, 2006, Plaintiff received her Leave and Earning Statement
and discovered that Mr. Wachutka had placed her on LWOP rather than Advanced Sick
Leave per his agreement.

96.   On December 16, 2005, Plaintiff contacted Ms. Allaman via telephone. Plaintiff faxed
Mr. Wachutka's determination and the medical determination letter from Dr. Present to
Mr. Mike Kingsley and he hand delivered the documents to Ms. Allaman. Mr. Kingsley
confirmed by telephone that Ms. Allaman had received them from him. Plaintiff left a
message for Ms. Allaman and to date Ms. Allaman never returned Plaintiff call.

97.   On December 20, 2005, Plaintiff sent an email to Ms. Allaman. Ms. Allaman never
responded. Plaintiff resent the email on January 3, 2006 and Ms. Allaman sent Plaintiff an
email stating she did not have knowledge of the situation and was on leave. Ms. Allaman
appears to have falsely stated that she never received the documents hand delivered to her
by Mr. Kingsley on December 16, 2005. Plaintiff notified Ms. Allaman of the apparent
misstatements.

98.   On January 5, 2006, Mr. Wachutka informed me that Plaintiff official duty station was
now HECSA as did Mr. Elliott on January 6, 2006 in violation of Plaintiff permanent
change of station agreement issued in April 2002 that established Plaintiff permanent duty
station as the HQ USACE, 441 G. Street, Washington, DC not 7701 Telegraph Road,
Alexandria, VA (HECSA).

99.   On January 5, 2006, Mr. Wachutka provided notice to Plaintiff of a change in duty
station from Washington DC to Fort Belvoir, VA (HECSA) in violation of working
conditions as another form of reprisal and to force Plaintiff to resign or retire. Plaintiff and
her physician had informed the Agency that she must reduce her commute from DC to a

location closer to Plaintiff home or in Plaintiff home to reduce stress. Mr. Wachutka
refused to acknowledge this notification resulting in a potential 5 ½ to 6 hour commute per
day.

100. On January 9, 2006, Mr. Elliott confirmed in writing that he agreed with Mr.
Wachutka's requirement to commute to HECSA.

101. Between December 15, 2005 and February 7, 2006, Ms. Allaman refused to intervene
and ignored Plaintiff request for assistance under the Rehabilitation Act of 1973. Ms.
Allaman refused to provide any direction and ignored Plaintiff emails requesting her
assistance for almost two months.

102. On February 7, 2006 Ms. Allaman informed Plaintiff in writing that she agreed with
Mr. Wachutka's unreasonable accommodation and undue burden requiring Plaintiff to
extend her long commute to 5 ½ to 6 hours per day.

103. On January 7, 2006, Plaintiff notified Ms. Allaman and Mr. Wachutka of this undue and
unnecessary burden and the potential impacts to Plaintiff health.

104. On January 9, 2006, Plaintiff once again notified Ms. Allaman of Plaintiff concerns
about Mr. Wachutka's directive to change her duty station.

105. On January 9, 2006, during a telephone conversation, Mr. Wachutka stated that his
email dated Saturday, January 7, 2006 instructed Plaintiff to report to HECSA and that
Plaintiff was to be placed on AWOL if she did not report. He stated that Plaintiff only
other option was to be placed on FMLA. Mr. Wachutka falsely stated that he had authority
to change Plaintiff official duty station and that Plaintiff had to report or be placed on
FMLA.

106. On January 9, 2006, Mr. Wachutka informed Plaintiff that she had to report to HECSA or he was placing her on AWOL even though Plaintiff was on FMLA leave.

107. Between January 9 and present, Plaintiff elevated the matter of the unreasonable accommodation, arbitrary and discriminatory action of management to change her duty station, denial of her request for reasonable accommodation and telework for medical necessity to Colonel McMahon, MG Johnson and LTG Strock.

108. On January 18, 2006 Colonel McMahon contacted Plaintiff and assured Plaintiff that he would look into the new work location as well as the TAPES issues. Colonel McMahon never responded to Plaintiff emails or contacted Plaintiff since that discussion.

109. On February 7, 2006, MG Johnson refused to meet with Plaintiff and informed Plaintiff through his aid (MAJ Harris) that Plaintiff had to meet with LTG Strock.

110. On February 17, 2006 Plaintiff was informed by Colonel Coats that he would elevate the matter to LTG Strock. Then Colonel Coats informed Plaintiff that she needed to coordinate with her Chain of Command.

111. On February 23, 2006, Colonel Coats informed Plaintiff was required to work with Richard Frenette, Agency Council to see LTG Strock.

**112.** As a direct and proximate result of the retaliation and reprisal exacted by Agency ongoing and continual vicarious and unlawful harassment, Plaintiff has suffered damages, including but not limited to physical and emotional harm, damage to reputation and other monetary damages in an amount to be proven at trial.

## COUNT III (Sex Discrimination)

113. Plaintiff incorporates by reference paragraphs 1-112, inclusive and all allegations contained herein.

114. In July 2002, at a work-related party held in the home of USACE Colonel Peter Saia (RET), Ms. Trombecky's husband made inappropriate sexual advances towards Plaintiff. He assumed another name, Sam, and did not tell the Plaintiff that his wife was her supervisor. At the end of the party, Plaintiff was saying goodbye to her supervisors and other people while standing outside, including Ms. Trombecky. Mr. Trombecky grabbed Plaintiff and pulled her towards him into a hug and said "take me away from them, they don't understand me."

115. Within several days of this incident with Mr. Trombecky, Ms. Trombecky trapped Plaintiff in her cubicle and berated her.

116. Beginning in September of 2002 and continuing through the present, Plaintiff has been subjected to a pattern of discrimination, reprisal and hostilities in violation of the terms and conditions of her employment by the management team, Senior Civilian and Military Officers, Personnel Officials, Safety and Health Officials, Labor Relations and the EEO Office.

117. After Mr. Wachutka's arrival in the CPG in August 2002, he continually presented Plaintiff with job announcements on a daily basis. Mr. Wachutka also threatened, harassed and reprised against the Plaintiff.

118. Following the first party at Colonel Saia's house in July 2002, Ms. Trombecky accused Plaintiff of intending to undermine her authority on numerous occasions.

119. On November 15, 2002, the day before another work-related Holiday Party at Mr.
Bruce Elliott's home, Mr. Trombecky approached Plaintiff and asked if she was going to
the party. Plaintiff said she thought she was going but was very apprehensive due to the
behavior of Mr. Trombecky at the last party. Ms. Trombecky then stated that her husband
was going to "joke" with the Plaintiff. Plaintiff asked why he was going to "joke" with
her. Ms. Trombecky stated in a very sexual tone, "Oh he really likes you." Plaintiff
became very frightened and upset and did not wish to attend the party but felt compelled
since her next line supervisor had invited her.

120. On November 16, 2002, Plaintiff reluctantly attended the Holiday Party at Mr. Elliott's
house as she was afraid of the Trombecky pair. There were approximately 30-40 people
gathered in a large open kitchen living room area. When the Plaintiff walked in, Mr.
Trombecky immediately approached her, grabbed her and pulled her towards him, then
grabbed and tickled her near her breasts. Plaintiff immediately pushed him away and said,
"Don't you ever touch me again" loud enough for people in the room to hear. Mr.
Trombecky asked Plaintiff what was wrong and she told him that he inappropriately
tickled her and to never touch her again. Plaintiff quickly moved away from him and the
into the finished basement, then both Mr. and Mrs. Trombecky followed her there. Mrs.
Trombecky approached the Plaintiff and was overly nice. Mr. Trombecky stood against
the wall and stared at the Plaintiff for a long time. Plaintiff left the party a short time later.

121. On April 25, 2003, Ms. Trombecky targeted Plaintiff, unlike her male counterparts, and
insisted that she provide a fixed schedule of arrival and departure, even though Plaintiff
has a Variable Work Schedule under the Agency approved Alternative Work Schedule.

122. In late April 2003, Ms. Trombecky targeted Plaintiff, unlike her male counterparts, and instructed her that 1) she had to sign in and out on a timesheet by the minute for time in, lunch in, lunch out, and time out; 2) she had to sing in an out on a board anytime she was away from her desk for more than thirty minutes; and 3) she had to immediately leave any meeting that went longer than expected and call Ms. Trombecky to let her know when she would be returning to her desk.

123. In May of 2003, Ms. Trombecky and Mr. Elliott denied Plaintiff's request to attend the International Association of Facilitators Conference Training, despite the fact that Plaintiff was the only official facilitator within the Unit and the conference was in her TAPES and Individual Development Plan (IDP). Upon information and belief, two of the Plaintiff's male counterparts were allowed to plan to attend.

124. In May 2003, Plaintiff was given a directed reassignment by the then Chief of Staff, Colonel Joseph Schroedel out of the Command Planning Group in the Research and Development Directorate as a Program Manager. This transfer was suddenly stopped and Plaintiff was sent to Civil Works, Regulatory Branch as a Biologist. This was outside her field of expertise and required years of field level experience to adapt to the requirements of the position. Plaintiff performed a detail there between May and September 2003.

125. Despite being provided a PCS, which affirmed her title should have been changed from Facilitator to Strategic Planner, the management team targeted Plaintiff by refusing to follow the PCS and change her job title. The failure of USACE to correct her job title and job description caused Plaintiff to become and "overhire" (i.e. surplus employee) during USACE 2012 reorganization in January 2004. Plaintiff's male counterparts either held

Strategic Planner or other job titles, therefore they did not become "overhires" during the reorganization.

126. In February 2004, Plaintiff was assigned to the South Atlantic Division Regional Integration Team under Mr. Donald Basham (SES). Mr. Basham had informed the Plaintiff that she could be permanently transferred out of the SID into the SAD as an environmental Protection Specialist position that was vacant on his team. Mr. Basham informed Plaintiff to tell Ms. Allaman that he would agree if she would. Ms. Allaman refused to allow Plaintiff to be transferred out the hostile work environment created by the management team within the SID (formerly CPG).

127. This job title was not corrected until October 2, 2005 thus causing financial harm to the Plaintiff and limited her access to transfers, details and reassignments within USACE.

128. Between January 2004 and June 2005, Plaintiff had requested Mr. Wachutka, Mr. Elliott and Ms. Allaman to be reassigned to a permanent position based upon the Chief of Engineers written and verbal statements that all "overhires" would be placed before any hiring actions were conducted. Plaintiff also volunteered for emergency response, vacant positions in South Atlantic Division Regional Integration Team and notified the Chief of Engineers (Strock) of her qualifications.

129. On March 21, 2005, Mr. Wachutka placed Plaintiff on leave restriction based upon unmerited and unauthorized reasons including Family Medical Leave Act status unlike her male counterparts.

130. On March 29, 2005, Mr. Wachutka denied Plaintiff request for removal of unauthorized, unmerited and illegal leave restriction and in reprisal changed Plaintiff work

schedule from Alternative Work Schedule to a Fixed Scheduled unlike her male counterparts.

131. On May 31, 2005 Plaintiff was informed in writing by Personnel (Ms. Genung) that she was qualified for General Engineer/Project Engineer GS-801, Environmental Engineer GS-819, Civil Engineer GS-810, Environmental Protection Specialist GS-0028, Strategic Planner GS-301, Program Manager GS-340, Management/Program Analyst GS-343, General Biologist GS-0401, and General Physical Scientist GS-1301. In early 2002 and 2003, Plaintiff was interviewing at both the GS-13 and GS-14 levels in many different career fields beyond the list provided by Ms. Genung.

132. In early June 2005, Plaintiff became aware that the management team was recruiting new hires for positions entitled Interdisciplinary GS-13 within the Strategy and Integration Directorate for which she was qualified. The Interdisciplinary Vacancy Announcement stated that Community Planner 020, Social Scientist 101, Economist 110 or ORSA 1515. Plaintiff was more than qualified as a Community Planner based upon her work in the City of Baltimore and other positions previously held.

133. On June 28, 2005 Plaintiff wrote to Ms. Allaman requesting to be placed in the positions currently being recruited. Her request was ignored by Ms. Allaman. The positions were filled by males.

134. The reprisal actions arising out of Plaintiff's disclosures of Sexual Discrimination are documented herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September 12, 2005 and as a result of Plaintiff's disclosures of Sexual Discrimination to Between March 2003 and present, Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel ("OSC"),

Merit Systems Protection Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management ("OPM"), Congressional Members and the DoD Inspector General (IG). Plaintiff specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer, USACE IG and Chain of Command.

**135.** As a direct and proximate result of the sexual discrimination exacted by Agency on-going and continual vicarious and unlawful harassment, Plaintiff has suffered damages, including but not limited to physical and emotional harm, damage to reputation and other monetary damages in an amount to be proven at trial.

## COUNT IV (Disability Discrimination)

136. Plaintiff incorporates by reference paragraphs 1-163, inclusive and all allegations contained herein.

137. Between June 9, 2004 and December 15, 2005, Mr. Wachutka, Mr. Elliott and Ms. Allaman refused to provide assistance through reasonable accommodation provisions of Rehabilitation Act of 1973.

138. On March 21, 2005, Mr. Wachutka placed Plaintiff on leave restriction based upon unmerited and unauthorized reasons including Family Medical Leave Act status.

139. On March 21, 2005, Mr. Wachutka falsely accused Plaintiff of being Absent Without Leave while she was attending Groove training on the 6th floor of the GAO building her official duty station.

140. On April 21, 2005, Agency officials were officially notified that Plaintiff could no longer work within the GAO based upon medical evidence. Agency officials refused to allow Plaintiff to be transferred or work at an alternative work site between April 21, 2005

and December 15, 2005. Agency officials refused to acknowledge medical certificates

from three physicians stating Plaintiff needed to work somewhere else. These notes were

provided in January, April, May, September, October and November 2005.

141. Finally on November 21, 2005, the Agency designated medical professional from the

Federal Occupation Health (FOH) Department of Health and Human Services confirmed

Plaintiff needed to be immediately transferred out the GAO and provided reasonable

accommodation. The FOH indicated that the Plaintiff was not allowed to remain in the

GAO for periods in excess of ONE HOUR.

142. Regardless of the direction provided by the FOH Physician, Mr. Wachutka and Agency

officials (including Agency Counsel – **Andrew Lopez and Richard Frenette**) withheld

the notice from the Plaintiff between November 21 and December 15, 2005 and refused to

allow Plaintiff to work anywhere else knowing she was in grave medical crisis and danger.

143. On December 15, 2005, Mr. Wachutka informed Plaintiff that she could not work in the

GAO and that he was not going to provide reasonable accommodation. Plaintiff had made

her first request for Reasonable Accommodation – Telecommuting for Medical Necessity

as early as June 2004 following a major medical crisis requiring FMLA extended absence.

144. On December 15, 2005, Mr. Wachutka informed Plaintiff that she could not work in the

GAO and that he was not going to provide reasonable accommodation even though

USACE regularly and customarily provides accommodations to employees due to family

emergencies or medical crisis. The Plaintiff's job functions could have easily been

performed at a remote location either out of her home or at a TELEWORK CENTER.

Federal Agencies are provided funding and a mandate to provide teleworking to all eligible

employees with a Satisfactory Performance (Plaintiff's last legitimate Performance

Appraisal was Excellent Level 1 and her 4 Month illegitimate Performance Appraisal signed October 27, 2005 was Successful).

145. The "Corps Family", as USACE refers to itself and in its policies and regulations makes Family Friendly Practices a primary focus for employee retention and recruitment. The Agency also received special funding to provide teleworking for employees at the HQ and over half of HQ staff telework on a regular basis.

146. On December 15, 2005 after over 20 months of requests by Plaintiff for assistance under the ADA, Rehabilitation and Reasonable Accommodation, Mr. Wachutka finally provided written notice denying Plaintiff request for reasonable accommodation ignoring 4 medical notices from Plaintiff's medical experts. In addition, Mr. Wachutka and Agency officials ignored the medical advise and direction provided by FOH on November 21, 2005.

147. Immediately following this notification, Plaintiff elevated the determination to her Senior Executive Service member, Ms. Kristine Allaman. Ms. Allaman ignored the Plaintiff's request between December 16, 2005 and February 2006. Then informed Plaintiff that she was in agreement with her first and second line supervisors (Mr. Wachutka and Mr. Elliott respectively) who had demonstrated over three years of reprisal, retaliation, discrimination and hostilities towards the Plaintiff. All these acts were conducted under the watchful and complicit eyes of Ms. Allaman.

148. Between January and March 2006, Plaintiff also elevated the request for reasonable accommodation to first the Chief of Staff (COL John McMahon), then the Deputy Commanding General (MG Ronald Johnson) and thirdly to former Commanding General (LTG Carl Strock (RET)). COL McMahon returned the Plaintiff's call and promised to

raise the matter to his superiors. He never did. Both Johnson and Strock refused to meet or respond to the Plaintiff's request for a final written decision on the formal Request for Reasonable Accommodation. Plaintiff was then forced to submit her Federal Employee Retirement System ("FERS") Disability Retirement papers on March 17, 2006 at the conclusion of her FMLA.

149. Between November 21 and December 15, 2006, Mr. Wachutka withheld the medical determination from Dr. Neal Present causing Plaintiff additional undue mental, physical and long-term health impacts. Dr. Present's medical notice revealed that Ms Bloom was not allowed to be in the GAO, 441 G. Street for more than 1 hour and revealed and confirmed Plaintiff serious health condition. Between November 21 and December 15, 2005, Plaintiff repeatedly alerted Ms. Wachutka of her failing health while in the GAO and requested the determination on several occasions. Mr. Wachutka knowingly and willingly placed Plaintiff in harms way because he knew the content of the letter from Dr. Present and did not provide the information to Plaintiff or provide her with an interim accommodation. Mr. Wachutka allowed Plaintiff to continue working in the building even though he was aware of the damage he was causing Plaintiff.

150. Between December 15, 2005 and present, Plaintiff notified Mr. Wachutka, Ms. Allaman, Colonel McMahon, MG Johnson and LTG Strock on several occasions that she was ready, willing and able to work from her home or an alternative work location near her home on issues identified in the Draft Standards she submitted to Mr. Wachutka. Plaintiff also notified Colonel McMahon of the same willingness on January 18, 2006 and after in several emails.

151. On December 15, 2005, Mr. Sean Wachutka provided Plaintiff written notice regarding his denial of Plaintiff request for reasonable accommodation in his Memorandum for Record dated December 15, 2005 to once again discriminate and as another form of reprisal and on-going harassment. The MFR stated that Plaintiff position would not allow me to telecommute based upon the nature of the work performed. This was invalid because many HQ staff currently telecommute on a regular basis for no reason except it meets Federal government initiatives that promote telecommuting. There are people within HQ who telecommute from other parts of the country on a full time basis. This is discrimination and reprisal.

152. On December 15, 2005, Plaintiff provided written notification to Mr. Wachutka and submitted signed projected time sheets to cover two pay periods stating she wished to continue working at an alternative work site or within her home. Plaintiff asked Mr. Wachutka to place her on Advanced Sick Leave for the days that she was not working over the next two weeks. Mr. Wachutka refused to allow Plaintiff to continue working from Plaintiff home or at another alternative work place within a reasonable distance from Plaintiff home.

153. On December 16, 2005, Plaintiff contacted Ms. Allaman via telephone. Plaintiff faxed Mr. Wachutka's determination and the medical determination letter from Dr. Present to Mr. Mike Kingsley and he hand delivered the documents to Ms. Allaman. Mr. Kingsley confirmed by telephone that Ms. Allaman had received them from him. Plaintiff left a message for Ms. Allaman and to date Ms. Allaman never returned Plaintiff call.

154. On December 20, 2005, Plaintiff sent an email to Ms. Allaman. Ms. Allaman never responded. Plaintiff resent the email on January 3, 2006 and Ms. Allaman sent Plaintiff an

email stating she did not have knowledge of the situation and was on leave. Ms. Allaman appears to have falsely stated that she never received the documents hand delivered to her by Mr. Kingsley on December 16, 2005. Plaintiff notified Ms. Allaman of the apparent misstatements.

155. On January 5, 2006, Mr. Wachutka informed me that Plaintiff official duty station was now HECSA as did Mr. Elliott on January 6, 2006 in violation of Plaintiff permanent change of station agreement issued in April 2002 that established Plaintiff permanent duty station as the HQ USACE, 441 G. Street, Washington, DC not 7701 Telegraph Road, Alexandria, VA (HECSA).

156. On January 5, 2006, Mr. Wachutka provided notice to Plaintiff of a change in duty station from Washington DC to Fort Belvoir, VA (HECSA) in violation of working conditions as another form of reprisal and to force Plaintiff to resign or retire. Plaintiff and her physician had informed the Agency that she must reduce her commute from DC to a location closer to Plaintiff home or in Plaintiff home to reduce stress. Mr. Wachutka refused to acknowledge this notification resulting in a potential 5 ½ to 6 hour commute per day.

157. On January 9, 2006, Mr. Elliott confirmed in writing that he agreed with Mr. Wachutka's requirement to commute to HECSA.

158. Between December 15, 2005 and February 7, 2006, Ms. Allaman refused to intervene and ignored Plaintiff request for assistance under the Rehabilitation Act of 1973. Ms. Allaman refused to provide any direction and ignored Plaintiff emails requesting her assistance for almost two months.

159. On February 7, 2006 Ms. Allaman informed Plaintiff in writing that she agreed with Mr. Wachutka's unreasonable accommodation and undue burden requiring Plaintiff to extend her long commute to 5 ½ to 6 hours per day.

160. On January 7, 2006, Plaintiff notified Ms. Allaman and Mr. Wachutka of this undue and unnecessary burden and the potential impacts to Plaintiff health.

161. On January 9, 2006, Plaintiff once again notified Ms. Allaman of Plaintiff concerns about Mr. Wachutka's directive to change her duty station.

162. On January 9, 2006, during a telephone conversation, Mr. Wachutka stated that his email dated Saturday, January 7, 2006 instructed Plaintiff to report to HECSA and that Plaintiff was to be placed on AWOL if she did not report. He stated that Plaintiff only other option was to be placed on FMLA. Mr. Wachutka falsely stated that he had authority to change Plaintiff official duty station and that Plaintiff had to report or be placed on FMLA.

163. On January 9, 2006, Mr. Wachutka informed Plaintiff that she had to report to HECSA or he was placing her on AWOL even though Plaintiff was on FMLA leave.

164. Between January 9 and present, Plaintiff elevated the matter of the unreasonable accommodation, arbitrary and discriminatory action of management to change her duty station, denial of her request for reasonable accommodation and telework for medical necessity to Colonel McMahon, MG Johnson and LTG Strock.

165. On January 18, 2006 Colonel McMahon contacted Plaintiff and assured Plaintiff that he would look into the new work location as well as the TAPES issues. Colonel McMahon never responded to Plaintiff emails or contacted Plaintiff since that discussion.

166. On February 7, 2006, MG Johnson refused to meet with Plaintiff and informed Plaintiff through his aid (MAJ Harris) that Plaintiff had to meet with LTG Strock.

167. On February 17, 2006 Plaintiff was informed by Colonel Coats that he would elevate the matter to LTG Strock. Then Colonel Coats informed Plaintiff that she needed to coordinate with her Chain of Command.

168. On February 23, 2006, Colonel Coats informed Plaintiff was required to work with Richard Frenette, Agency Council to see LTG Strock.

169. Plaintiff repeatedly requested assistance under the ADA, Rehabilitation Act and Reasonable Accommodation and repeatedly required to provide more and more medical certifications to various and sundry officials. This practice is considered reprisal under the EEOC guidelines for Reasonable Accommodation. Plaintiff first made requests to her supervisors and then she was informed she had to go to Personnel, then EEO, back to Personnel, then to another person in Personnel causing more and more delays while her health was failing. All this as a means to reprise, discriminate and retaliate against Ms. Bloom for her protected disclosures.

**170.** The reprisal actions arising out of Plaintiff's disclosures of Disability Discrimination are documented herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September 12, 2005 and as a result of Plaintiff's disclosures of discrimination to Between March 2003 and present, Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management ("OPM"), Congressional Members and the DoD Inspector General (IG).

Plaintiff specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer, USACE IG and Chain of Command.

171. As a direct and proximate result of the disability discrimination, Plaintiff suffered damages and is entitled to injunctive relief and an award of monetary damages under the ADA, Rehabilitation Act and other provisions for protection against disability discrimination in the workplace.

**172.** As a direct and proximate result of the environment created by Agency on-going and continual vicarious and unlawful harassment, Plaintiff has suffered damages, including but not limited to physical and emotional harm, damage to reputation and other monetary damages in an amount to be proven at trial.

## COUNT V (Reprisal and Discrimination by Senior Agency Responsible Management Officials (Including Agency EEO Officer and Counsel)

173. Plaintiff incorporates by reference paragraphs 1-200 inclusive and all allegations contained herein.

174. The Agency and EEO Officer failed to investigate Plaintiff's complaints and valid claims within the time frames established by the laws and regulations governing Title VII.

175. The Agency and EEO Officer repeatedly delayed processing Plaintiff complaints during the pre-complaint processing in an effort to suppress complaints.

176. The EEO Officer, Mr. James Braxton and his superiors refused to process EEO Complaints in accordance with Army regulation AR 690-600 timeframes.

177. The EEO officer, Mr. James Braxton, failed to elevate the complaints from the US Army Corps of Engineers to the jurisdiction of the Department of Army. Bloom's in

accordance with the following regulations: AR 690-600 paragraphs 1-7, 1-10 and 1-11 and

Corps of Engineers Equal Employment Office (CEEO) Memorandum, July 23, 2992,

subject: Determination of Venue – EEO Complaints.

178. The Department of the Army failed to allow Plaintiff EEO Complaints to be elevated

based upon the provisions of Change in Venue when the actions and inaction of high level

officials in the form of vicarious and unlawful harassment, discrimination and reprisal.

179. Between March 21 and June 10, 2005, Mr. Wachutka and Mr. Michael Millard denied

Plaintiff equal access to reasonable time for preparing for protected practices associated

with upcoming hearings with the EEOC. Mr. Wachutka and Mr. Millard denied adequate

time for activities required to prepare for the hearing as specified by AJ Elizabeth Brown

and to seek counsel and prepare documents required for pre-hearing report, EEOC AJ

requirements, deposition of Bruce Elliott, Fact Finding Conferences with DOD Office of

Complaint Investigations (OCI), narrowing and consolidation of issues, clarification of

issues for two new complaints.

180. Between May and July 2005, Mr. Braxton was derelict in his duties with regard to

processing Plaintiff request for reasonable accommodation. Mr. Braxton refused to

provide a list of questions for Plaintiff physician and would not inform Plaintiff as to why

her submitted request provided by Plaintiff physician was not sufficient to meet the

requirements for reasonable accommodation. When Plaintiff requested clarification, Mr.

Braxton then claimed he was not responsible and told Plaintiff that she had to start over

again with Mr. Alderman. Mr. Alderman then informed Plaintiff that he was not involved

and referred her to Ms. Genung. Ms. Genung failed to reply or respond and the request

was not processed in timeframes established.

181. On June 10, 2005, Mr. Braxton partially dismissed Plaintiff 4th complaint due to discrimination for Plaintiff prior EEO activities. The letter of partial dismissal was sent to Plaintiff on June 29, 2005.

182. On Between August 11 and October 28, 2005, Mr. James Braxton (EEO Officer) ignored and circumvented Plaintiff request for a change in venue from USACE to the Department of Army EEOCR for processing Plaintiff EEO requests involving high level officials.

183. On October 18, 2005, Mr. Braxton illegally intercepted a package for LTG Strock and MG Johnson notifying them of the untimely and outstanding EEO complaints and the request for change in venue from USACE to Army EEOCR.

184. On October 17 and 28, 2005, Mr. Braxton denied Plaintiff requests for change in venue to Army EEOCR.

185. On October 17, 2005 and October 18, 2005, Plaintiff requested both Mr. Alderman and Ms. Genung to correct significant personnel data errors in the Army's MODERN personnel database system including: training, incorrect performance appraisals and removal of illegal special appraisals falsely reflecting them as annual appraisals in violation of Army TAPES regulations, and union status. Plaintiff also requested a written statement on official letterhead from CEPAC stating that Plaintiff was in a probationary status in accordance with the performance review conducted by Mr. Wachutka.

186. Between April 2005 and December 15, 2005, on numerous occasions Plaintiff requested CPAC representative Ms. Genung, to input training into the personnel database. Plaintiff provided a complete list of training information to her for entry per her direction. After some time Plaintiff contacted Ms. Genung to see if the action had been completed. Finally

after an extended period had elapsed, Ms. Genung then informed Plaintiff that she did not

do that anymore and that Ms. Sylvia Shaner was responsible for the action. Plaintiff

forwarded the information to Ms. Shaner and Ms. Shaner assured Plaintiff that the data

would be correctly entered into the system. Ms. Shaner was then deployed to the efforts in

Katrina. Plaintiff then requested Ms. Shaner's supervisor, Ms. Trombecky to enter the data

and it was never performed. Plaintiff attempted to get Ms. Genung to enter the data during

Ms. Shaner's absence. The data corrections were key factors to Plaintiff success in seeking

new positions and this inhibited Plaintiff from a transfer out of the hostile work

environment.

187. On November 22 and 23, 2005 Plaintiff requested Ms. Genung to correct these

deficiencies in MODERN and to correct Plaintiff OPF. Plaintiff once again requested Ms.

Genung to inform her of the status of key issues to include: Training in MODERN, OPF

access, Ratings in MODERN, Status of Reasonable Accommodation and FMLA, Plaintiff

also requested an update on Ms. Genung's processing of Plaintiff workers compensation

forms that were submitted to personnel for DOL. Ms Bloom had submitted the forms

months before and Ms. Genung did not process them in the timeframes established by

DOL.

188. On February 23, 2006, Plaintiff notified Agency EEO regarding filing a new complaint

against MG Johnson and LTG Strock regarding Plaintiff request for assistance under the

ADA and Reasonable Accommodation. This was new complaint because it involved new

Agency officials and could not be consolidated with the other complaints. The EEO

Officer never investigated the complaint and the claims raised by the Plaintiff.

189. AR 690-600 paragraphs 1-7, 1-10 and 1-11. CEEO Memorandum, July 23, 2992, subject: Determination of Venue – EEO Complaints (enclosed). Per these references Plaintiff requested and insisted that her future EEO Complaints and Request for Reasonable Accommodation be immediately removed from USACE HECSA jurisdiction and processed by appropriate organizations within the Department of the Army.

190. Plaintiff identified key Senior Level officials as party to this discrimination and reprisal and that would be considered responding management officials in USACE Executive Officer, Chief Counsel, EEO, CPAC and Labor Relations. Plaintiff made all necessary notifications to the Chain of Command including the Commanding General, LTG Carl Strock and USACE Chief Counsel, Mr. Earl Stockdale regarding these matters.

191. Plaintiff previously made this request in her 3rd EEO complaint, informal contact made November 30, 2004 and her corresponding formal complaint filed in a timely manner with Agency officials. In the Notice of Partial Acceptance for the 3rd complaint, the EEO Officer, Mr. James Braxton, ignored the matter, failed to identify the concern and did not address most of Plaintiff claims, misidentified them, dismissed them and did not address this issues addressed in Plaintiff correspondence to your office. In addition, Plaintiff did not receive a Notice of Partial Acceptance on this complaint until June 29, 2005, over 7 months after she made initial contact with Mr. Judith Poole an EEO counselor under Mr. Braxton's control.

192. On June 4, 2005, Plaintiff filed her 4th fourth formal complaint with the Department of the Army and Plaintiff did not receive a Notice of Right to file for many months after her initial contact with the EEO Office.

193. The EEO Officer, Labor counselor and EEO counselors have delayed the processing of complaints in violation of federal regulations and according to EEOCR the following statement is written on the website: "TIMELINESS; ACCEPTING AND DISMISSING EEO COMPLAINTS (12-02-2003) The Army Standard Level of Service for accepting or dismissing EEO complaints is 15 calendar days from date of receipt of the formal EEO complaint. A review of the submissions from installation EEO offices indicates that the time to accept or dismiss an EEO complaint far exceeds the 15 calendar days. Such performance is unacceptable. " See link:
http://eeoa.arPlaintiff.pentagon.mil/web/prog_comp/complaints/guidance.cf

194. Plaintiff suffered serious infringements of her rights under the EEO and Reasonable Accommodation (ADA) processes. These actions and inaction demonstrate the intention of the EEO Officer (Braxton), Director of Personnel (Alderman), Labor Counselor (multiple) and Relations (Genung), and the Safety Officer (Dave Breeden) to collaborate in exacting direct discrimination, hostilities and reprisal against the Plaintiff. These acts constitute conflicts of interest within USACE management officials when conducting investigations involving discrimination, reprisal and harassment.

195. Plaintiff requested investigations into the EEO process currently being used within the jurisdiction of the US Army Corps of Engineers. The EEO Officer, Mr. James Braxton, arbitrarily issued dismissals, partial dismissals and suppresses complaints within the Corps of Engineers. His predecessor, Ms. Patricia West (retired) had also conducted similar actions and violated the EEO process with regards to Plaintiff complaints now filed in her Civil Action.

196. The Agency EEO Officers within USACE and DOD Office of Complaint Investigations repeatedly do not investigate within the established timeframe of 180 days for each complaint. The EEO Officer began to arbitrarily dismiss Plaintiff's complaints or claims in order to suppress complaints involving high level senior military and civilian officials who demonstrate a pattern and practice of vicarious and unlawful harassment within the Agency.

197. The EEO Officer and Labor Counselor seriously delay processing Plaintiff's complaints within both the pre-complaint and complaint process in order to lengthen the discrimination complaint process thus allowing more harassment, discrimination, reprisal and hostile actions to be perpetrated against the Plaintiff.

198. The reprisal actions arising out of Plaintiff's disclosures of Reprisal and Discrimination by Senior Agency Responsible Management Officials (Including Agency EEO Officer and Counsel are documented herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September 12, 2005 and as a result of Plaintiff's disclosures of between March 2003 and present, Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management ("OPM"), Congressional Members and the DoD Inspector General (IG). Plaintiff specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer, USACE IG and Chain of Command.

199. As a direct and proximate result of the Reprisal and Discrimination by Senior Agency Responsible Management Officials (Including Agency EEO Officer and Counsel exacted by the Agency through on-going and continual vicarious and unlawful harassment,

Plaintiff has suffered damages, including but not limited to physical and emotional harm, damage to reputation and other monetary damages in an amount to be proven at trial.

## COUNT VI (Violation of the Merit Systems Protection – Performance Management and Union Representation)

200. Plaintiff incorporates by reference paragraphs 1-199, inclusive and all allegations contained herein.

201. Plaintiff received her last legitimate annual performance appraisal in November 2002 at which time Plaintiff was a Top performer, level 1 with a Quality Step Increase authorized.

202. Prior to her protected disclosures, Plaintiff received monetary performance awards, letters of commendation, flexible work conditions, individual development plans and training and performance appraisals for many years until suddenly a shift occurred when Plaintiff made protected disclosures to several other Federal Agency officials.

203. Between August 4, 2004 and October 22, 2004, Mr. Wachutka and Mr. Elliott refused to meet to discuss performance measures work, work assignments submitted for review and refused to assign valid work.

204. On October 22, 2004 Ms. Wachutka arbitrarily issued a failing level 5 "Special Performance Appraisal" without any supporting documentation, valid reason and without the required Senior Rater's approval or signature. Mr. Wachutka did not conduct counseling sessions and had no record of counseling sessions and had repeatedly refused to meet or discuss work during the rating period. Mr. Wachutka refused to provide written feedback on work products submitted. During the performance review meeting, the Senior Rater, Mr. Elliott was not present and I was not allowed to discuss work elements.

205. On October 22, 2004 Plaintiff elevated and reported the illegal and unauthorized performance appraisal issued by Mr. Wachutka to Mr. Elliott, Ms. Allaman and the Chief of Engineers. These officials refused to intervene and allowed the illegal appraisal to be illegally recorded as Plaintiff official annual appraisal in violation of Army Total Army Performance Evaluation System (TAPES) Performance management regulations.

206. Between October 22 and December 15, 2004, Mr. Wachutka and Mr. Elliott refused to meet with Plaintiff to discuss performance measures work, work assignments and refused to assign valid work.

207. On December 15, 2004, Mr. Wachutka and Mr. Elliott issued to Plaintiff an illegal Performance Improvement Plan (PIP) as a "special" 4 month performance appraisal based upon the illegally issued failing performance appraisal dated October 22, 2004.

208. Between December 15, 2004 and July 2005, both Mr. Wachutka and Mr. Elliott refused to provide written feedback or progress reports regarding the weekly PIP meetings and work submitted. Both Mr. Wachutka and Mr. Elliott insisted that they were not required to provide Plaintiff any written feedback on performance progress.

209. On March 7, 2005, Mr. Elliott threatened Plaintiff during a weekly Performance Improvement Plan meeting. Mr. Elliott intimidated and forced the union steward to leave the meeting and then threatened Plaintiff and refused her to have union representation in violation of the USACE-AFGE Union Agreement.

210. On June 2, 2005, Mr. Wachutka refused to lock-in performance standards and objectives for the 2006 rating period. Between June 2, 2005 and December 15, 2005 Mr. Wachutka refused to establish performance standards and objectives in accordance with Army TAPES regulations.

211. On July 7, 2005, Mr. Wachutka informed Plaintiff by email that Plaintiff was not allowed to send any emails to her team for 30 days in an effort to sabotage the project (Project Delivery Team Conference) and prevent Plaintiff from accomplishing work milestones.

212. On June 10, 2005, Mr. Alderman did not follow proper procedures when processing and advising Mr. Wachutka on the substituting a "special performance appraisal" in lieu of an annual appraisal. Plaintiff did not receive an annual rating since November 2002.

213. On September 26, 2005, Mr. Wachutka and Ms. Trombecky ordered Plaintiff to attend a meeting where actions impacting employment were being discussed. When Plaintiff requested a union representative be present, her requests were denied and Plaintiff was forced to remain in the room against her will. Plaintiff was denied her right to union representation.

214. On October 17, 2005 and October 18, 2005, Plaintiff requested both Mr. Alderman and Ms. Genung to correct significant personnel data errors in the Army's MODERN personnel database system including: training, incorrect performance appraisals and removal of illegal special appraisals falsely reflecting them as annual appraisals in violation of Army TAPES regulations, and union status. Plaintiff also requested a written statement on official letterhead from CEPAC stating that Plaintiff was in a probationary status in accordance with the performance review conducted by Mr. Wachutka.

215. Between June 1 and October 17, 2005, Mr. Wachutka, Mr. Elliott and Ms. Allaman were derelict in their duties by not providing a special performance appraisal for Plaintiff PIP. Agency Counsel informed AFGE in writing that Plaintiff was not a member of the

bargaining unit and would not acknowledge the District 14 National Representative's letter requesting the status of the successful completion of the PIP by Plaintiff.

216. Between June 1 and October 17, 2005, Mr. Wachutka, Mr. Elliott, Ms. Allaman refused to provide a performance review to Plaintiff closing out the PIP. In addition they also refused to provide written performance standards, objectives or work assignments for the next rating period to Plaintiff. Plaintiff continued to notify the Chief of Engineers and his senior staff of these violations of the performance management process that had been ongoing since January 2003. They did nothing and did not penalize these managers but allowed the abuses, harassment, reprisal and retaliation to continue.

217. On October 17, 2005, Mr. Wachutka and Mr. Elliott finally provided Plaintiff with another special performance appraisal for the PIP performance period of December 15, 2004 and June 1, 2005. The performance appraisal was not based upon performance and during the discussion, Mr. Wachutka and Mr. Elliott refused to discuss the rating of Fully Successful and how Plaintiff could have received an excellent appraisal. Mr. Wachutka and Mr. Elliott stated that they did not have to and would not provide the reasons for their rating. Status of Plaintiff FMLA Leave Transfer and Reasonable Accommodation, New TAPES performance appraisal entered into system, Access to Plaintiff OPF, Change Plaintiff job title and position description in Modern. Both Mr. Alderman and Ms. Genung failed to perform these actions.

218. On October 17, 2005, Mr. Wachutka and Mr. Elliott held a PIP Performance review meeting with Plaintiff. Ms. Pam Caraway, AFGE Local 4055 Chief Steward was present as Plaintiff representative since Plaintiff was a member of the bargaining unit.

219. On October 17, 2006, Mr. Wachutka and Mr. Elliott informed Plaintiff that she was now on probationary status between October 17, 2005 and June 9, 2006. Mr. Elliott acknowledged that he agreed with Mr. Wachutka. Mr. Wachutka supported by Mr. Elliott informed Plaintiff that Mr. Wachutka "could recommend Plaintiff for removal from federal service or to be downgraded" if Plaintiff did not maintain successful performance during this period.

220. Between October 17 and December 2005, Mr. Wachutka, Mr. Elliott as well as Ms. Allaman have violated the stipulations governing PIPs and Army/DOD/OPM and other governing bodies and regulations regarding the performance process. Plaintiff elevated the matter to Ms. Allaman and her Chain of Command alerting them to this on-going harassment, reprisal and discrimination.

221. Between December 15, 2003 and June 1, 2005, Mr. Elliott, Mr. Wachutka and Ms. Toni Trombecky continually threatened Plaintiff and refused to allow her to have union representation at meetings in violation of the USACE-AFGE union agreements. Mr. Elliot threatened union stewards and representatives and approached their supervisors to attempt to stop them from representing Plaintiff during the performance meetings in violation of USACE-AFGE union agreements.

222. Between June 2005 to December 15, 2005, Plaintiff repeatedly submitted and resubmitted Drafts performance plans and made additions and corrections until her FMLA began on December 15, 2005.

223. Between December 15, 2005 and April 2006, Mr. Wachutka and Mr. Elliott have not provided Plaintiff valid performance measures and standards in accordance with TAPES and provisions of the Rehabilitation Act of 1973. Even during Plaintiff current extended

absence under FMLA, Plaintiff notified Mr. Wachutka, Mr. Elliott, Ms. Allaman, Colonel

McMahon, MG Johnson and LTG Strock of the violations by Plaintiff supervisors

(Wachutka, Elliott and Allaman) with regards to the performance process. Plaintiff

provided notice to Mr. Wachutka, Mr. Elliott, and LRD RIT leaders (Gerald Barnes, Brian

Peckins and Dr. Lang) prior to Plaintiff extended absence.

224. The reprisal actions arising out of Plaintiff's disclosures of Violation of the Merit

Systems Protection – Performance Management and Union Representation by Senior

Agency Responsible Management Officials (Including Agency EEO Officer and Counsel

are documented herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September

12, 2005 and as a result of Plaintiff's disclosures of between March 2003 and present,

Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity

Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection

Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management

("OPM"), Congressional Members and the DoD Inspector General (IG). Plaintiff

specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer,

USACE IG and Chain of Command.

225. As a direct and proximate result of the violations of the Merit Systems Protection –

Performance Management and Union Representation exacted by the Agency through on-

going and continual vicarious and unlawful harassment, Plaintiff has suffered damages,

including but not limited to physical and emotional harm, damage to reputation and other

monetary damages in an amount to be proven at trial.

226. As a direct and proximate result of the Defendants violations of the Merit Systems Protections, Plaintiff suffered damages and is entitled to injunctive relief and an award of monetary damages.

## COUNT VII (Violation of the FMLA, ADA, Rehabilitation Act and Reasonable Accommodation).

227. Plaintiff incorporates by reference paragraphs 1-226, inclusive and all allegations contained herein.

228. When Plaintiff suffered health impacts due to contaminants and other hazardous substances within the workplace, Plaintiff was subjected to more reprisal and discrimination when her requests for assistance under the Rehabilitation Act of 1973, telecommuting for medical necessity, enrollment in the Voluntary Leave Transfer Programs, Advanced Sick leave, advanced annual leave, flexible work schedules, telecommuting for medical necessity, disability and reasonable accommodation and fair and equitable performance management processes.

229. Plaintiff's health and well being was continuously placed in great jeopardy due to discrimination, reprisal, hostile work environment and retaliation due to her protected disclosures by the Agency officials by the Director of CEPAC (Personnel-Tim Alderman), Safety and Occupational Health Officer – David Breeden, EEO Officer – James Braxton, Chain of Command (Wachutka, Elliott, Allaman, McMahon, Johnson and Strock, Agency Counsel (Earl Stockdale) and Health Center Personnel (Tracey Verscheren- nurse).

230. Plaintiff first requested Reasonable Accommodation from Mr. Wachutka, her first line supervisor on June 23, 2004.

231. Plaintiff suffered great physical and financial losses due to the inability of the Agency to comply with mandates and Executive Orders governing WPA, Rehabilitation Act, ADA, Federal Labor Relations, Department of Labor, Occupational Safety and Health, and Reasonable Accommodation.

232. Agency officials repeatedly overstepped boundaries and reprised against the Plaintiff by requesting unnecessary medical information and violated medical privacy and HIPPA by insisting that the Plaintiff submit her private medical records to non-medical personnel.

233. Plaintiff's supervisors violated many federal laws, EEOC regulations and mandates, DoD Instructions and Army Policy related to processing her requests for assistance under the Family Friendly Practices, President Bush's New Freedom Initiative, Fair Labor Standards, OPM regulations and guidelines. These requests and delays in processing Requests for Reasonable Accommodation are viewed as retaliation per EEOC guidelines.

234. Plaintiff repeatedly requested written notification as to why Plaintiff her medical certificates signed by Plaintiff's physician and medical expert was "not sufficient".

235. On May 10, 2005 Plaintiff submitted a medical certification as instructed to the EEO Officer and his assigned staff member. These instructions to the Plaintiff were explicitly given by Ms. Braxton to the Plaintiff on behalf of the Agency. Between June 2004 and November 21, 2005, Plaintiff's ongoing requests for reasonable accommodation still remained unprocessed in violation of timeframes and requirements of federal statute, OPM, DOD, CFR regulations, DOD and Army policies

236. Between May and September 2005, Plaintiff was denied her right to a written list of questions to be provided to her physician by the EEO Officer and other Agency personnel.

Plaintiff's requests were ignored for long periods of time resulting in more long term damage to Plaintiff health and wellbeing.

237. Between April 2004 and January 2005 and between March 2005 and late 2006, Mr. Wachutka repeatedly ignored requests for assistance under the Voluntary Leave Transfer programs with expansion to USACE wide, Army, DOD and Federal Government wide in accordance with Code of Federal Regulations governing the Voluntary Leave Donor Program. Mr. Wachutka refused to allow Plaintiff to participate in the Leave Donor Program between April 2004 and January 2005. Then refused to make announcements to staff requesting donations for Plaintiff.

238. Between June 9, 2004 to present Plaintiff request for reasonable accommodation and telecommuting for medical necessity were ignored, delayed, denied, pass from one party to the next, denied again and delayed. Ultimately the request was denied by Mr. Wachutka on December 15, 2005.

239. Between June 9, 2004 and December 15, 2005, Mr. Wachutka, Mr. Elliott and Ms. Allaman refused to provide assistance through reasonable accommodation provisions of Rehabilitation Act of 1973.

240. On January 28, 2005, Plaintiff was finally allowed to enroll in the Voluntary Leave Transfer Program after being denied and ignored by Agency officials since April 2004. Plaintiff outstanding request since June 2004 for Advanced Sick Leave were finally approved by Mr. Wachutka after 7 months.

241. Between February 1 and February 28, 2005, Plaintiff was placed on extended medical absence by her physician due to the health effects of the GAO building.

242. On February 28, 2005, upon Plaintiff return to work, Mr. Wachutka again denied Plaintiff request for telecommuting for medical necessity based upon medical documentation.

243. On March 21, 2005, Mr. Wachutka placed Plaintiff on leave restriction based upon unmerited and unauthorized reasons including Family Medical Leave Act status.

244. In reprisal and as discrimination against the disabled, Mr. Wachutka and Agency officials (including Agency Counsel – **Andrew Lopez and Richard Frenette**) withheld the notice until December 15, 2005 and refused to allow Plaintiff to work anywhere else.

245. Mr. Wachutka informed Plaintiff on December 15, 2005 that she could not work in the GAO and that he was not going to provide reasonable accommodation.

246. Regardless of the direction provided by the FOH Physician, Mr. Wachutka and Agency officials (including Agency Counsel – **Andrew Lopez and Richard Frenette**) withheld the notice from the Plaintiff between November 21 and December 15, 2005 and refused to allow Plaintiff to work anywhere else knowing she was in grave medical crisis and danger.

247. Between December 15, 2005 and Plaintiff's retirement, Mr. Wachutka further attempted to place Plaintiff in additional distress and to cause potential lifelong health impacts to Plaintiff due to his dereliction of duties and by informing Plaintiff that she had to come to work at the GAO and HECSA. Mr. Wachutka, Mr. Elliott and Ms. Allaman further reprised against Plaintiff by informing her she had to unnecessarily commute from her home in Annapolis to HECSA to perform work that could have been performed at Plaintiff home between December 15, 2005 and her disability retirement. These actions represent on-going and continual harassment, management negligence and dereliction of

duties related to Plaintiff request for reasonable accommodation, specifically Mr.

Wachutka, Mr. Elliott, Ms. Allaman and Senior Military officers within USACE.

**248.** The reprisal actions arising out of Plaintiff's disclosures of Violation of the FMLA,

ADA, Rehabilitation Act and Reasonable Accommodation by Senior Agency Responsible

Management Officials (Including Agency EEO Officer and Counsel are documented

herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September 12, 2005 and as

a result of Plaintiff's disclosures of between March 2003 and present, Plaintiff

subsequently made protected disclosures to the Equal Employment Opportunity

Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection

Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management

("OPM"), Congressional Members and the DoD Inspector General (IG).  Plaintiff

specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer,

USACE IG and Chain of Command.

**249.** As a direct and proximate result of the violations of the FMLA, ADA, Rehabilitation

Act and Reasonable Accommodation exacted by Agency on-going and continual vicarious

and unlawful harassment, Plaintiff has suffered damages, including but not limited to

physical and emotional harm, damage to reputation and other monetary damages in an

amount to be proven at trial.

250. As a direct and proximate result of the discrimination, Plaintiff suffered damages and is

entitled to injunctive relief and an award of monetary damages under the ADA,

Rehabilitation Act and other provisions for protection against disability discrimination in

the workplace.

## **COUNT VIII (Violation of the OSHA and DOL Employment Laws)**

251. Plaintiff incorporates by reference paragraphs 1-250, inclusive and all allegations contained herein.

252. On October 18, 2004, Plaintiff filed a workers compensation claim for occupational illness with the DOL OWCP based upon medical reports indicating the GAO building was impacting Plaintiff health. Agency medical personnel (USACE Health Unit (now closed and taken over by GAO) and the Occupational Safety and Health Officer, David Breeden, initially refused to provide Plaintiff with forms (CA-1 and CA-2) to submit to DOL. After Plaintiff was finally provided the documents she completed them and submitted them to Mr. Wachutka, her first line supervisor, and he would not forward them to the Safety Office in the stipulated time frames. Plaintiff was forced to contact the DOL-OWCP and notify them of the refusal of her supervisor and the Safety Office to provide the claims forms to DOL. Plaintiff continued to submit the forms for processing and her supervisor refused to provide signed copies or proof that the documents had been processed. This pattern of abuse continued.

253. In early January 2005, Plaintiff suffered two medical emergencies while working in the GAO that resulted in emergency room visits. Plaintiff requests for interim relief under reasonable accommodation that would allow her to telecommute for medical necessity were ignored, denied and ignored again. Plaintiff submitted medical notes from two physicians confirming this and Plaintiff requests were still denied.

254. Between February 1 and February 28, 2005, Plaintiff was placed on extended medical absence by her physician due to the health effects of the GAO building. Between September 2004 and December 15, 2005, Mr. Breeden violated DOD, Army and other

workplace regulations governing safety and occupational health by refusing to provide

Plaintiff requests for access to environmental studies and reports conducted on the GAO.

255. On March 21, 2005 Mr. Wachutka denied Plaintiff request to move from the 3rd to 6th

floor of the GAO based upon medical recommendations. Space was available to relocate

Plaintiff and her request was denied.

256. On April 21, 2005, Agency officials were officially notified that Plaintiff could no

longer work within the GAO based upon medical evidence. Agency officials refused to

allow Plaintiff to be transferred or work at an alternative work site between April 21, 2005

and December 15, 2005. Agency officials refused to acknowledge medical certificates

from three physicians stating Plaintiff needed to work somewhere else. These notes were

provided in January, April, May, September, October and November 2005.

257. On March 21, 2005 Ms. Andrea Owens met with Mr. Alderman and Ms. Barbara

Campbell to discuss the Occupational and Safety requirements of the Union agreement.

Mr. Alderman and MS. Campbell threatened to reverse Plaintiff union membership and

coverage under the bargaining unit. Starting in mid 2004, Plaintiff had alerted both the

Union and Senior Management Officials (Dave Breeden, Barbara Campbell, Earl

Stockdale (Agency Lead Counsel) and the military Chief of Staffs (Walsh and McMahon)

of the contamination issues within the GAO.

258. In mid-October 2004, Plaintiff filed notices with GAO-Comptroller General (Mr.

Walker), OSHA DOL (OSHA) and National Institutes of Safety and Occupational Health

(NIOSH) and ultimately with DOL-OWCP.

259. In February 2005, Plaintiff once again filed a Whistleblowing complaint with DOL under the WPA for OSHA issues. DOL did not conduct a valid investigation in either October 2004 or February 2005.

260. Finally on November 21, 2005, the Agency designated medical professional from the Federal Occupation Health (FOH) Department of Health and Human Services confirmed Plaintiff needed to be immediately transferred out the GAO and provided reasonable accommodation. The FOH indicated that the Plaintiff was not allowed to remain in the GAO for periods in excess of ONE HOUR.

**261.** Regardless of the direction provided by the FOH Physician, Mr. Wachutka and Agency officials (including Agency Counsel – **Andrew Lopez and Richard Frenette**) withheld the notice from the Plaintiff between November 21 and December 15, 2005 and refused to allow Plaintiff to work anywhere else knowing she was in grave medical crisis and danger.

**262.** The reprisal actions arising out of Plaintiff's disclosures of Violation of the OSHA and DOL Employment Laws by Senior Agency Responsible Management Officials (Including Agency EEO Officer and Counsel are documented herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September 12, 2005 and as a result of Plaintiff's disclosures of between March 2003 and present, Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management ("OPM"), Congressional Members and the DoD Inspector General (IG). Plaintiff specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer, USACE IG and Chain of Command.

**263.** As a direct and proximate result of the violations of the OSHA and DOL Employment Laws exacted by the Agency through on-going and continual vicarious and unlawful harassment, Plaintiff has suffered damages, including but not limited to physical and emotional harm, damage to reputation and other monetary damages in an amount to be proven at trial.

264. As a direct and proximate result of the these violations, Plaintiff suffered damages and is entitled to injunctive relief and an award of monetary damages under the DOL Whistleblower protections..

## COUNT VIII (Whistleblower Discrimination (and Reprisal))

265. Plaintiff incorporates by reference paragraphs 1-264, inclusive and all allegations contained herein.

266. In June 1996, Plaintiff was permanently promoted to Formerly Used Defense Site (FUDS) Program Manager over the Northeast Region in the Environmental Management Branch in Programs and Project Management Division in the Baltimore District Corps office. Shortly after assuming this position, Plaintiff began to uncover major flaws at the FUDS site known as "American University Experiment Station (AUES)" or "Spring Valley" in the Northwest of the District of Columbia. The site involved identification, testing, removal and clean-up of chemical and biological agents, nerve agents, chemical and conventional weapons and munitions and the breakdown products.

267. Between 1996 and 1998, Plaintiff raised significant concerns to her supervisors with respect to critical and life threatening deficiencies in the cleanup of the Spring Valley project. Plaintiff's disclosures exposed specific and substantial dangers to public health

and safety as well as to the environment. Plaintiff's concerns involved the drinking water reservoir, tributaries and sources of potential contamination arising from the FUDS activities at AUES and to surrounding areas. Plaintiff's concerns also included flawed scientific and engineering analysis strategies that were foundational to correct clean-up and restoration of the site. Plaintiff also raised concerns over inadequate and misleading sample collection, munitions discovery and removal, inaccurate baseline mapping, inadequate sampling, analysis and testing of the chemical constituents and breakdown products from chemical and biological weapons, improper data quality and third party validation methods, and deficiencies with how deep soil, water, surface and subsurface samples were collected throughout the site.

268. Plaintiff noted several violations of the Community Right to Know Act, the Clean Water Act, Clean Air Act, Safe Drinking Water and Comprehensive Environmental Response and Liability Act (CERCLA). She also disclosed conflicts of interest created by rehiring and paying Parsons Engineering to reevaluate its own project documents and cleanup strategies under Operation Safe Removal conducted between 1993 and 1995.

269. In retaliation for raising these concerns with USACE and Army, Plaintiff was informed she was no longer going to function as the AUES (Spring Valley) Project Manager and was going to be replaced.

270. In late 1998 and early 1999, Plaintiff was selected as the top candidate for a key position funded by EPA and detailed to the City of Baltimore as the Baltimore City Showcase Community Federal Loaned Executive. In retaliation for her disclosures, USACE Senior officials attempted to interfere with this transfer and informed the Plaintiff that she was not allowed to accept the assignment. Said interference was taken as a result

of Plaintiff having raised serious concerns related to the Spring Valley site. After EPA and Baltimore City officials objected due to the fact that Plaintiff was the top candidate for the position, USACE Senior officials capitulated and allowed her to accept the assignment.

271. In April 2001, Plaintiff was suddenly transferred to Headquarters USACE at 441 G. Street, NW, Washington DC as the National Program Manager for FUDS and Native American Lands Environmental Mitigation Program (NALEMP). Plaintiff received commendation and awards in this assignment.

272. In July 2001, Plaintiff provided an email to internal USACE team members raising concerns regarding Spring Valley to the Project Team in preparation for Congressional Hearings.

273. Plaintiff was provided a Permanent Change of Station (PCS) order reflecting her new assignment to HQ USACE as job title (Strategic Planner), grade (GS-13) and Series (0301) by USACE Personnel. The effective date of Plaintiff's permanent transfer was March 24, 2002.

274. Plaintiff's concerns over AUES (Spring Valley) became the subject of Department of Justice ("DOJ") investigation following the filing of a Civil Action in early 2002 by Thomas P. Loughlin and Kathy Loughlin ("Loughlin's") individually and on behalf of their children regarding the Spring Valley (AUES) project cleanup.

275. Following Loughlin's and other appellants suits mentioned above, Plaintiff was compelled to meet with "DOJ" after she discussed her concerns over Spring Valley with Susan Platt, Agency Counsel of the Baltimore District Corps office and Kenneth Powers of the USACE General Counsel (Ethics Officer) in early April 2002. Following graduation

from AMSC, Plaintiff met with "DOJ" attorneys at which time Plaintiff revealed her concerns during the interview with DOJ attorneys in the Civil Litigation Department.

276. Thereafter, it became known to the entire Command Structure within HQ USACE, North Atlantic Division and the Baltimore District that Plaintiff was willing to go forward and expose concerns that she raised internally with USACE, potentially leading to embarrassment and potential criminal and civil penalties for misleading the public and other local, state, federal agencies. Plaintiff had attempted to raise these concerns since 1996 and believed it was her duty to do so in the interest of the Public Trust for which she was called to uphold.

277. Significant retaliation and reprisal against the Plaintiff ensued shortly after these protected disclosures to DOJ. Plaintiff was now residing under the Chief of Engineers Executive Office. Plaintiff's protected disclosures related to the AUES (Spring Valley) project were a contributing factor in a multitude of adverse actions and reprisals taken against her.

278. Plaintiff further attempted to bring forward her concerns to the USACE and DOD Inspector General ("IG") who report directly to the Commanding General and Secretary of Defense respectively. The USACE IG and the Plaintiff met and discussed the issues related to Spring Valley. Plaintiff also alerted both the USACE and DOD IG and the Commanding General to her protected disclosures regarding Spring Valley.

279. In an email dated May 7, 2003, Plaintiff alerted the 50th Chief of Engineers, Robert Flowers (LTG-RET) that she believed she was being discriminated and retaliated against as a result of her whistleblower activity in connection with Spring Valley and her prior

EEO protected activities. Neither LTG Flowers nor his replacement, LTG Carl Strock failed to take any corrective action.

280. Between March 2003 and present, Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management ("OPM"), Congressional Members and the DoD Inspector General (IG). Plaintiff specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer.

281. The items covered within the complaint continue from the current issues within the Civil Action and demonstrate the Agency attempt to discriminate, reprise, create a hostile work environment force Plaintiff into a constructive discharge and disability retirement.

282. The Whistleblower reprisal and retaliation against the Plaintiff are evidenced by a myriad of claims raised by the Plaintiff following her protected disclosures regarding the FUDS clean-up at the AUES (Spring Valley) and in response to her disclosures to the Government related to contaminants found at the Plaintiff's work stations within the GAO. Plaintiff filed an Occupational Illness and Injury in October 2004 and subsequently notified OSHA, NIOSH, Agency Senior Managers and the Union regarding the contaminants located within the GAO. Both Agency and GAO monitoring reports and Environmental Studies revealed significant indoor air quality issues culminating in a very limited report dated March 2005 and released to the Plaintiff in May 2005.

283. Following Plaintiff's disclosures and in light of the Civil lawsuits brought by various parties with interests in the FUDS Site known as the American University Experiment Station (Spring Valley), Plaintiff has been subjected to on-going and continual acts of

vicarious and unlawful harassment, aggression, discrimination, reprisal and retaliation from senior military and civilian officials within the US Army Corps of Engineers.

284. Plaintiff repeatedly elevated issues and alerted all levels within her Chain of Command of the on-going, continual and relentless discrimination, harassment, hostile work environment and reprisal resulting from her protected activities.

285. These senior officials conducted vicarious and unlawful harassment, discrimination, retaliation and reprisal actions based upon Plaintiff's gender (female), age (43), religion (Jewish), disability and reprisal due to Plaintiff's prior protected practices and disclosures under the Whistleblower Protection Act.

**286.** The reprisal actions arising out of Plaintiff's disclosures of Violation of the **Whistleblower Protection Act** by Senior Agency Responsible Management Officials (Including Agency EEO Officer and Counsel are documented herein and in Plaintiff's Civil Action 1:05-cv-01804-HHK filed September 12, 2005 and as a result of Plaintiff's disclosures of between March 2003 and present, Plaintiff subsequently made protected disclosures to the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel ("OSC"), Merit Systems Protection Board ("MSPB"), Department of Labor ("DOL"), Office of Personnel Management ("OPM"), Congressional Members and the DoD Inspector General (IG). Plaintiff specifically made two IG Hotline contacts and also to the DOD IG, Mr. Daniel Meyer, USACE IG and Chain of Command.

287. As a direct and proximate result of the whistleblower discrimination, Plaintiff suffered damages and is entitled to injunctive relief and an award of monetary damages under the WPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for all relief permitted under Title VII, Civil Service Reform

Act, Rehabilitation Act of 1973, Reasonable Accommodation, 5 U.S.C. 2302; and the

Whistleblower Protection Act ("WPA"), against Defendants, including but not limited to:

    a) Preliminary and permanent injunctive relief and declaratory relief as appropriate;

    b) Preliminary and injunctive relief prohibiting future retaliation against Plaintiff for

       lawful opposition to employment practices prohibited under Title VII;

    c) An Injunction prohibiting defendants from taking any prohibited retaliation against

       the Plaintiff;

    d) A Judgment declaring that Defendant's conduct towards Plaintiff in violation of Title

       VII, 42 USC 2000e et. seq; the Civil Service Reform Act, 5 USC 2302; the

       Americans with Disabilities Act; Rehabilitation Act of 1973; and, Whistleblower

       Protection Act ("WPA"), 5 U.S.C. 1211-1215, 1218-1219, 1221-1222, 7702-7703.

    e) All relief entitled to Plaintiff pursuant to Plaintiff's Title VII, Civil Service Reform

       Act and Whistleblower Protection Act claims;

    f) Compensatory damages as permitted by law, the exact amount to be determined at

       trial;

    g) Compensation for damages to future employment;

    h) Compensation and compensatory damages to Plaintiff's physical and mental health;

    i) An award of costs and fees incurred by Plaintiff in bringing this action, including

       those incurred at the administrative level, as well as reasonable attorneys and expert

       witness fees as incurred by Plaintiff, and pre-judgment and post-judgment interest.

    j) Such other and further relief as the Court may deem just and proper.

## PLAINTIFF REQUEST FOR COURT ASSIGNED LEGAL COUNSEL

Plaintiff requests the Court to assign legal counsel to this case under the Pro Bono provisions available to the Court.

This humble request is due to the overwhelming legal and medical fees, as well as lost income and benefits, arising out of the on-going, continual discrimination and harassment exacted against the Plaintiff.

JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE

Respectfully Submitted,

5/21/2007

Sheila A. Bloom
Pro Se Litigant, Requesting Counsel Appointed by the Court
1712 Cedar Park Road
Annapolis, Maryland 21401
(443) 603- 1281
(443) 603-1603

May 21/22, 2007



**DEPARTMENT OF THE ARMY**
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMPLIANCE AND COMPLAINTS REVIEW**
1901 SOUTH BELL STREET, 1ST FLOOR
ARLINGTON, VA 22202-4508

REPLY TO
ATTENTION OF

**1 5 FEB** 2007

Equal Employment Opportunity
  Compliance and Complaints Review

Ms. Sheila Bloom
1712 Cedarpark Road
Annapolis, Maryland 21401

                    Complaint of Sheila Bloom v.
                      Francis J. Harvey, Secretary of the Army
                    DA Docket No.:  ARCEHECSA05APR08233

Dear Ms. Bloom:

    This is the Department of the Army's final decision in the above referenced equal employment opportunity (EEO) complaint, dated June 7, 2005, which was filed with the EEO Office, US Army Corps of Engineers, Humphrey's Engineer Center Support Activity, Alexandria, Virginia.

    I note that an investigation was conducted by the Department of Defense Office of Complaint Investigations (DoDOCI).  Thereafter, a copy of the DoDOCI Report of Investigation (ROI) was issued along with notification of the option to request either a hearing before an Equal Employment Opportunity Commission administrative judge or a final Army decision based upon the evidence in the case file.  This decision is issued pursuant to the request for a final Army decision based upon the evidence of record, or our failure to receive a response to the notice of post-investigative options within the allotted time.

    I have evaluated all of the information in the complaint file including the DoDOCI ROI.  Pursuant to my authority to decide these matters on behalf of the Secretary of the Army, a finding of no discrimination is issued based upon the evidence in the case file and for the reasons contained in the enclosed document entitled "Notice of Final Decision" (Enclosure 1).

    Since a finding of no discrimination has been issued in this matter, no relief, including attorney's fees or costs, is warranted or ordered.

    If this decision is not satisfactory, appeal rights are identified below:

### Appeal Rights for Non-Mixed Complaints

    An appeal may be filed with the Equal Employment Opportunity Commission [Director, Office of Federal Operations, Equal Employment Opportunity Commission

07   0979
**FILED**

**MAY 2 5** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Department of The Army
EO Compliance and Complaints Review
ATTN: SAMR-EO-CCR, Suite 109B
1901 South Bell Street
Arlington, VA 22202-4508

7006 0810 0005 0424 2304

# FIRST CLASS

$05.600
02/20/2007
Mailed From  22202
US POSTAGE

Rec'd
2/22/06
CMD

SHEILA BLOOM
1712 CEDARPARK ROAD
ANNAPOLIS, MD 21401

 **UNITED STATES POSTAL SERVICE**®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7006 0810 0005 0424 2304**
Status:

Your item was delivered at 1:39 pm on February 22, 2007 in
ANNAPOLIS, MD 21401. A proof of delivery record may be available
through your local Post Office for a fee.

Additional information for this item is stored in files offline.

( Restore Offline Details > )  (?)  ( Return to USPS.com Home > )

**Track & Confirm** 

Enter Label/Receipt Number.

( Go > )

 POSTAL INSPECTORS    site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust    Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy



for District of Columbia

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

## I. (a) PLAINTIFFS

Sheila A. Bloom

88888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Pro Se (517)   88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

1712 Cedar Park Road
Annapolis, MD. 21401
410.267.1515

## DEFENDANTS

Mr. Peter Geren, Acting Secretary of the Army and Office of the Department of the Army
LTG Robert L. Van Antwerp Chief of Engineers and Office of the Chief of Engineers
Department of the Army
Kristine Allaman, Bruce M. Elliott, Sean Wachutka, Toni T. Trombecky, James Braxton, et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Washington, DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:07-cv-00979
Assigned To : Kennedy, Henry H.
Assign. Date : 5/25/2007
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ⊙ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ **A. Antitrust**
  - ☐ 410 Antitrust

- ○ **B. Personal Injury/ Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ **C. Administrative Agency Review**
  - ☐ 151 Medicare Act

  **Social Security:**
  - ☐ 861 HIA ((1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)

  **Other Statutes**
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

---

- ○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Court from Mag. Judge

42 USC 2000

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violations of Whistleblower Protection Act, OSHA, Title V, Title VII, ADA, Rehabilitation Act of 1973, Reasonable Accommodation, Affirmative Defense

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ To Be Determined<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** 25   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 5/21/2007   SIGNATURE OF ATTORNEY OF RECORD _____

Pro Se Plaintiff

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.