# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHEILA A. BLOOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  07-0979 (HHK) |
| | ) | |
| | ) | |
| Mr. PETE GEREN, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' MOTION TO DISMISS,</u>

Defendants, by and through undersigned counsel, respectfully move this Court to dismiss the above-captioned action in its entirety based on plaintiff's failure to timely file her Complaint and for other alternative reasons discussed in the accompanying Memorandum of Law in Support of this Motion.  A Memorandum of Law in Support of this Motion is being filed simultaneously and is incorporated herein by reference.  An Order consistent with this Motion is also attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHEILA A. BLOOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  07-0979 (HHK) |
| | ) | |
| | ) | |
| Mr. PETE GEREN, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiff is a former GS-301-13 employee of the United States Army Corps of Engineers ("USACE").  Her judicial Complaint was filed 93 days after she acknowledges that she received the Final Agency Decision ("FAD").  Her Complaint is thus untimely on its face and should be dismissed in its entirety.[1]  Additionally, in a Title VII action the Secretary of the Army, Mr. Pete Geren, is the only proper named defendant.  All of the other named defendants are improper and should be dismissed.  Furthermore, plaintiff's whistleblower claim is barred by *res judicata.*  Finally, to the extent plaintiff makes any claim under the Federal Employee Compensation Act ("FECA"), standards promulgated by the Occupational Health and Safety

---

[1] Plaintiff's failure to timely file her Complaint bars all of her discrimination claims. Therefore, in the interests of judicial economy, this motion addresses only this critical gateway issue and a few other extremely clear and straight-forward arguments warranting dismissal of specific claims and parties.  However, should the Court deny this motion, the Defendant anticipates filing a more comprehensive motion for judgment on the pleadings seeking dismissal of part, if not all, of the Complaint on various alternate grounds.

Administration ("OSHA"), and the Family and Medical Leave Act ("FMLA"), these claims are beyond the jurisdiction of this Court, and must be dismissed.

## II. STATEMENT OF FACTS

In plaintiff's Complaint**,** she states "On February 22, 2007 Plaintiff received the Agency Final Decision letter via regular mail. Plaintiff is timely filing the Civil Action in accordance with directives within the Agency Final Decision letter dated February 15, 2007 mailed February 20, 2007, and received by the Plaintiff on February 22, 2007." (Comp. ¶ 9). Plaintiff's Complaint was filed with this Court on May 25, 2007 according to the clerk's docket stamp. By the straight-forward process of counting the dates between February 22, 2007, and May 25, 2007, it is apparent that plaintiff's Complaint was filed on the 93rd day after she admits receiving the FAD. The 90th day after plaintiff admits receiving the FAD was on Tuesday, May 22, 2007. [2] May 22, 2007 was neither a weekend nor a federal holiday.

The FAD contained instructions and deadlines from 29 Code of Federal Regulations (CFR) §1614.407 explaining to the plaintiff her right to file a civil action. The FAD stated in relevant part, that a complainant is authorized to file a civil action "[w]ithin 90 calendar days of receipt of the final action on an individual or class complaint if an appeal has not been filed." (Defense Ex.1, p. 4).

---

[2] As this Court has previously noted "receipt of the agency decision is normally presumed to occur three days after issuance." <u>Colbert v. Potter</u>, 2005 U.S. Dist. Lexis 35422 <u>citing</u> <u>Powell v. Wash. Metro. Area Transit Auth.</u>, 238 F. Supp. 2d 160, 163 (D.D.C. 2002). The certificate of service attached to the FAD says it was issued and sent by certified mail on Feb 16, 2007 making the presumed date of receipt February 19, 2007, three days before plaintiff admits receiving it. (See Ex. 1). Under either calculation, plaintiff's Complaint is untimely.

### III. STANDARD OF REVIEW

**A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).**

The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds. Tuck v. Pan Am. Health Org., 668 F.2d 547, 549 (D.C. Cir. 1981).  Jurisdiction is a threshold matter; without it, this Court has no authority to decide other potentially dispositive issues in this case. See Ticor Title Ins. Co. v. FTC,  814 F.2d 731, 757 (D.C. Cir. 1987).  Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court–plaintiff here–bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. United States DOI, 231 F.3d 20, 24 (D.C. Cir. 2000) citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d  9, 13 (D.D.C. 2001) (a Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.");  Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  In deciding a 12(b)(1) motion, the Court need not limit itself to the allegations of the complaint. See Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987). Rather, "the court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." Scolaro v. D.C. Board of Elections and Ethics, 104 F. Supp.2d 18, 22 (D.D.C. 2000) citing Herbert v. Nat'l Academy of Sciences,  974 F.2d 192, 197 (D.C. Cir. 1992)).

**B.     Failure to State A Claim Upon Which Relief Can Be Granted Under Fed. R. Civ. P. 12(b)(6).**

The filing time limit imposed by Title VII, 42 U.S.C. § 2000e-16(c) "is not a jurisdictional requirement but rather is similar to a statute of limitations." In re James, 444 F.3d

643, 647 (D.C. Cir. 2006) (citing <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89 (1990)); <u>see also</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982). As such, the appropriate mechanism for dismissing an untimely Title VII claim is under Fed. R. Civ. P. 12(b)(6).

When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u> No. 05-1126, 2007 U.S. LEXIS 5901 (U.S. May 21, 2007) (citations omitted).

The Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. <u>Trudeau v. Federal Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). Pursuant to Fed. R. Civ. Pro. 12(b), this Court may convert a motion to dismiss for failure to state a claim to which plaintiff is not entitled to relief into a motion for summary judgment if matters outside the pleadings are considered by the Court. <u>See</u> Fed. R. Civ. Pro. 12(b).

## IV. ARGUMENT

### A. **Plaintiff's Complaint is Untimely Filed and Must be Dismissed.**

This Court correctly stated and applied the black-letter law controlling the outcome of this case in <u>Colbert v. Potter</u>, 2005 U.S. Dist. LEXIS 35422 (July 28, 2005), <u>affirmed</u> <u>Colbert v. Potter</u>, 471 F.3d 158, 161 (D.C. Cir. 2006). In that case, this Court stated in relevant part,

> Federal employees…may only bring Title VII lawsuits if they file within 90 days of receipt of notice of final administrative action. (citations omitted). The 90-day requirement operates as a statute of limitations rather than as a jurisdictional bar, …and as such is "subject to equitable doctrines of waiver, estoppel, and tolling." (citations omitted). Although the court may thus toll the statute of limitations in "extraordinary and carefully circumscribed instances," <u>Mondy</u>, 845 F.2d at 1057, in the absence of a recognized equitable consideration, "the court cannot extend

4

the limitations period by even one day." <u>Anderson v. Local 201 Reinforcing</u>
<u>Rodmen</u>, 886 F. Supp. 94, 97 (D.D.C. 1995) (citation omitted); see also, e.g.,
<u>Smith v. Dalton</u>, 971 F. Supp. 1 (D.D.C. 1997) (dismissing suit filed 91 days after
plaintiff received final agency decision).

Based on the above black-letter statutory analysis, plaintiff's imposing 74-page, 287-
paragraph Complaint must be dismissed.  The ninth paragraph of Plaintiff's Complaint twice
states that she received the Final Agency Decision ("FAD") on February 22, 2007.  She again
reiterates this fact in paragraph seventy-five.[3]  The clerk's date stamp on the Complaint
indicates it was filed with the Court on May 25, 2007.[4]  This is consistent with Plaintiff's
Certificate of Service, attached to her Complaint, which swears that plaintiff mailed the
Complaint by certified mail to the Clerk of the Court on the 21st and 22nd day of May, 2007.

---

[3] The Final Agency Decision is not needed to reach the decision on a Motion to Dismiss,
because Plaintiff admits receipt of the FAD outside the statutory filing period.  Nonetheless, a
copy of the FAD is attached to this Motion as Exhibit 1 if the Court chooses to resolve this
issue under Rule 56.

[4] While not explicitly stated, the filing of a complaint by mail appears to be permitted by the
Supplement to the Local Rules, available at . http://www.dcd.uscourts.gov/LocalRules
Supplement.pdf  See Innovatit Seafood Sys., LLC v. Comm'r for Patents, 240 F.R.D. 23, 25
(D.D.C. 2007).  However, a filing is complete only when the clerk receives the complaint, not
when it is mailed.  See Innovatit, 240 F.R.D at 25 (Although complaint was mailed on April
22, it is deemed filed on April 24, when it was first received by the Clerk).  As Moore's
Federal Practice notes, while "Papers may be mailed to the clerk in order to satisfy the filing
requirements of Rule 5… the filing requirement is met only on actual receipt of the documents
or when they are placed in the box in the clerk's office." 1-5 Moore's Federal Practice - Civil §
5.30.  See also Clark v. Milam, 152 F.R.D. 66, 69 (S.D. W. Va. 1993) (when party mails
papers to clerk's office, filing is complete when papers received by clerk or placed in clerk's
post office box); McIntosh v. Antonino 71 F.3d 29,36-37 (1st Cir. 1995);  United States v.
Doyle, 854 F.2d 771, 773 (5th Cir. 1988) (Fed. R. Civ. P. 5 provision that service is effective
on mailing does not apply to filing with court clerk); Torras Herreria v. Construcciones, S.A. v.
M/V Timur Star, 803 F.2d 215, 216 (6th Cir. 1986) ("If mailed, the filing is accomplished only
when actually received by the clerk or when placed in the clerk's post office box. Filings
reaching the clerk's office after a deadline are untimely, even if mailed before a deadline.")
Raymond v. Ameritech Corp., 442 F.3d 600, 604-605 (7th Cir. 2006) (summary judgment
response was not timely filed when it was mailed prior to midnight on day it was due, but did
not reach clerk until after deadline); Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir.
1989) (mailed complaint deemed filed only on receipt by clerk).

Consultation with any 2007 desk calendar confirms that by filing her Complaint with the Clerk's office on May 25, 2007, Plaintiff filed her Complaint three days beyond the statutory deadline.

**B.  Improper Parties Should Be Dismissed.**

Plaintiff has named a number of unnecessary and improper parties as Defendants in the instant action.  Pete Geren, the Secretary of the Army, is the only proper party defendant for plaintiff's discrimination claims.  See 42 U.S.C. § 2000e-16(c) (the only proper defendant for discrimination claims is "the head of the department, agency, or unit, as appropriate)."  See also Nichols v. Agency For Int'l Dev., 18 F. Supp. 2d 1, 3 (D.D.C. 1998) (citing Hackley v. Roudebush, 520 F.2d 108, 115 n. 17 (D.C. Cir. 1975).  All of the remaining Defendants are improper parties in this action and should be dismissed.

**C.  Plaintiff's Whistleblower Claim (Count IX – Mislabeled Count VIII in the Complaint) Must Be Dismissed as an Additional Basis Under the Doctrine of Res Judicata.**

Additionally, plaintiff's Whistleblower allegation (Count VIII of her Complaint) must be dismissed under the Doctrine of *Res Judicata*.  Count VIII of the present complaint duplicates the Plaintiff's same allegations about the "Spring Valley" that she raised to this Court in Count IV of her 2005 complaint in Bloom v. Geren, Docket No. 05-1804.  She also presented these same issues to the Court of Appeals for the Federal Circuit (CAFC) in an Individual Right of Action (IRA) appeal identified by civil action Case No. 2007-3102.  CAFC issued a decision involving the same parties on June 11, 2007, which affirmed the Merit System Protection Board's (MSPB's) dismissal of these whistleblower claims.  A copy of this CAFC decision is attached as Exhibit 2.

As the D.C. Circuit has held, *res judicata*:

is designed to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation. Under the doctrine, the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not. Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981)).

Under the doctrine of *res judicata*, "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate – even if they chose not to exploit that opportunity – whether the initial judgment was erroneous or not." Charles T. Sherwin v. Dept of the Air Force, 955 F. Supp. 140, 142 (D.D.C. 1997) (quoting Hardison, 655 F.2d at1288); Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980).

In the current complaint, Count VIII (and ultimately Count IV of Case No. 05-1804 also pending before this court) must be dismissed because the same issues involving the same parties were resolved within the above-cited CAFC decision. The doctrine of *res judicata* bars plaintiff from proceeding with the WPA claim in this forum.

**D. Plaintiff's Family and Medical Leave Act (FMLA) Claim, Occupational Safety and Health Administration (OSHA) Claim, and Worker's Compensation Claims Must Be Dismissed for Lack of Jurisdiction Under Fed. R. Civ. P. 12(b)(1).**

The gravamen of plaintiff's *pro se* Complaint concerns alleged discrimination violations of Title VII and the Rehabilitation Act and actions under the Whistleblower Protection Act. However, Plaintiff's complaint also alludes to alleged violations of Merit Systems Protection and interference with her union representation rights; problems with the processing of her worker's compensation claim; alleged violations of OSHA standards; and violation of the FMLA. To the extent that plaintiff has alleged these violations, they are improperly plead and outside the reach of this Court's jurisdiction as discussed below.

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. United States DOI, 231 F.3d 20, 24 (D.C. Cir. 2000) citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998).

Count VI of the Complaint "(Violation of Merit Systems Protection – Performance Management and Union Representation)" alleges that the Army violated its own performance management standards in the process of evaluating plaintiff's performance. Plaintiff further alleges within this count that her supervisors intimidated the union steward into not pursuing actions on the plaintiff's behalf. Plaintiff's vague concerns about her performance rating and the interactions between management and union officials do not create a cause of action in federal court. Plaintiff fails to plead any basis which would give this Court jurisdiction over this claim, nor is any jurisdictional basis clear on the face of the Complaint. The plaintiff's failure to identify any jurisdictional basis for this Count merits a separate reason for dismissing these allegations.

Count VII of the Complaint ("Violation of the FMLA, ADA, Rehabilitation Act, and Reasonable Accommodation") cites alleged violations of the FMLA among other statutes. Again, the plaintiff provides no factual support, discussion, or analysis whatsoever of what Army action or inaction allegedly violated the FMLA, 29 U.S.C. § 2601, et seq. A Complaint that contains vague and conclusory accusations and no specific facts regarding the alleged wrongdoing does not allow a defendant to frame an intelligent defense and is subject to dismissal. Neitzke v. Williams, 490 U.S. 319, 328 (1989); Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994). Plaintiff also fails to demonstrate on what basis this Court could assert jurisdiction over such an FMLA claim even if it were factually supported. As a federal civil servant, the plaintiff's FMLA benefits were governed by Title II of the FMLA. Title II of the

8

FMLA does not waive sovereign immunity for private actions against the federal government, and does not provide a private cause of action for alleged violations. Accordingly, the plaintiff's FMLA claim is fatally defective and must be dismissed. See Gibson-Michaels v. FDIC, 2007 U.S. Dist LEXIS 32564 (D.D.C. May 3, 2007).

Count VIII "(Violation of the OSHA and DOL Employment Laws)" appears to be primarily a collateral attack on the processing of plaintiff's worker's compensation claim under the Federal Employees Compensation Act (FECA). Unfortunately for plaintiff, 5 U.S.C. § 8128(b) of FECA generally bars judicial review of FECA claim processing.[5] In the absence of a colorable constitutional claim under FECA, this court lacks jurisdiction to entertain this issue. To the extent that the substance of Count VIII restates plaintiff's failure to accommodate allegations under the Rehabilitation Act, these duplicative allegations are not independently actionable.

## V. CONCLUSION

For the reasons stated above, plaintiff's Complaint is untimely on its face and should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6). The plaintiff's WPA allegations are also barred by *res judicata* and must be dismissed. Finally, plaintiff fails to salvage her Complaint by merely referencing the FMLA, OSHA guidance, DOL worker's compensation issues, and generic merit principles, because claims under these statutory authorities are beyond the jurisdiction of this Court.

---

[5] Constitutional arguments concerning FECA are subject to judicial review under Lepre v. DOL, Emple. Compensation Appeals Bd., 275 F.3d 59 (D.C. Cir. 2001), despite the language in 5 U.S.C. §8128(b). However, no constitutional issue is raised in the subject Complaint.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants


Of Counsel:
R. Brian Bohlen
U.S. Army Litigation Division


10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 29, 2007, I served a copy of the foregoing

Defendants' Motion to Dismiss, the Supporting Memorandum of Law, proposed Order, and all

applicable exhibits by first class mail, postage pre-paid, on the following:

Ms. Sheila Bloom
1712 Cedarpark Road
Annapolis, Maryland  21401


_____/s/_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Exhibit 1



**DEPARTMENT OF THE ARMY**
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMPLIANCE AND COMPLAINTS REVIEW**
1901 SOUTH BELL STREET, 1ST FLOOR
ARLINGTON, VA 22202-4508

REPLY TO
ATTENTION OF

1 5 FEB 2007

Equal Employment Opportunity
    Compliance and Complaints Review

Ms. Sheila Bloom
1712 Cedarpark Road
Annapolis, Maryland 21401

Complaint of Sheila Bloom v.
    Francis J. Harvey, Secretary of the Army
    DA Docket No.: ARCEHECSA05APR08233

Dear Ms. Bloom:

This is the Department of the Army's final decision in the above referenced equal employment opportunity (EEO) complaint, dated June 7, 2005, which was filed with the EEO Office, US Army Corps of Engineers, Humphrey's Engineer Center Support Activity, Alexandria, Virginia.

I note that an investigation was conducted by the Department of Defense Office of Complaint Investigations (DoDOCI). Thereafter, a copy of the DoDOCI Report of Investigation (ROI) was issued along with notification of the option to request either a hearing before an Equal Employment Opportunity Commission administrative judge or a final Army decision based upon the evidence in the case file. This decision is issued pursuant to the request for a final Army decision based upon the evidence of record, or our failure to receive a response to the notice of post-investigative options within the allotted time.

I have evaluated all of the information in the complaint file including the DoDOCI ROI. Pursuant to my authority to decide these matters on behalf of the Secretary of the Army, a finding of no discrimination is issued based upon the evidence in the case file and for the reasons contained in the enclosed document entitled "Notice of Final Decision" (Enclosure 1).

Since a finding of no discrimination has been issued in this matter, no relief, including attorney's fees or costs, is warranted or ordered.

If this decision is not satisfactory, appeal rights are identified below:

### Appeal Rights for Non-Mixed Complaints

An appeal may be filed with the Equal Employment Opportunity Commission [Director, Office of Federal Operations, Equal Employment Opportunity Commission,

P.O. Box 19848, Washington, DC 20036] within <u>30 calendar days</u> of the date of receipt of this decision.  The <u>30 calendar day</u> period for filing an appeal begins on the date of receipt of this decision.  An appeal shall be deemed timely if it is delivered in person, transmitted by facsimile or postmarked before the expiration of the filing period or, in the absence of a legible postmark, the appeal is received by the Commission by mail within five (5) calendar days after the expiration of the filing period.  **The complainant will serve a copy of the Notice of Appeal/Petition, EEOC Form 573, to the agency [Deputy for Equal Employment Opportunity Compliance and Complaints Review, Department of the Army, ATTN:  SAMR-EO-CCR, 1901 South Bell Street, Suite 109B, Arlington, Virginia 22202] [and furnish a copy to the agency representative at the address on the enclosed certificate of service (Enclosure 2)] at the same time it is filed with the Commission.**  In or attached to the appeal to the Commission, the complainant must certify the date and method by which service was made to the agency [Deputy for Equal Employment Opportunity Compliance and Complaints Review].

The complainant may file a brief or statement in support of his/her appeal with the Office of Federal Operations.  The brief or statement **must** be filed within <u>30 calendar days</u> from the date the appeal is filed.  The complainant will serve a copy of the brief or statement in support of his/her appeal to the agency [Deputy for Equal Employment Opportunity Compliance and Complaints Review and furnish a copy to the agency representative at the addresses shown above] at the same time the brief or statement is filed with the Commission.  The regulation providing for appeal rights is contained in Title 29 of the Code of Federal Regulations, a section of which is reproduced below:

### Section 1614.401  Appeals to the Commission.

(a)  A complainant may appeal an agency's final action or dismissal of a complaint.

(b)  An agency may appeal as provided in Section 1614.110(a).

(c)  A class agent or an agency may appeal an administrative judge's decision accepting or dismissing all or part of a class complaint; a class agent may appeal a final decision on a class complaint; a class member may appeal a final decision on a claim for individual relief under a class complaint; and a class member, a class agent or an agency may appeal a final decision on a petition pursuant to Section 1614.204(g)(4).

(d)  A grievant may appeal the final decision of the agency, the arbitrator or the Federal Labor Relations Authority (FLRA) on the grievance when an issue of employment discrimination was raised in a negotiated grievance procedure that permits such issues to be raised.  A grievant may not appeal under this part, however, when the matter initially raised in the negotiated grievance procedure is still ongoing in that process, is in arbitration, is before the FLRA, is appealable to the MSPB [Merit Systems Protection Board] or if 5 U.S.C. 7121(d) is inapplicable to the involved agency.

(e)  A complainant, agent or individual class claimant may appeal to the Commission an agency's alleged noncompliance with a settlement agreement or final decision in accordance with Section 1614.504.

### Section 1614.402  Time for appeals to the Commission.

(a)  Appeals described in Section 1614.401(a) and (c) must be filed within 30 calendar days of receipt of the dismissal, final action or decision.  Appeals described in Section 1614.401(b) must be filed within 40 calendar days of receipt of the hearing file and decision.  Where a complainant has notified the EEO Director [Deputy for Equal Employment Opportunity Compliance and Complaints Review] of alleged noncompliance with a settlement agreement in accordance with Section 1614.504, the complainant may file an appeal 35 calendar days after service of the allegations of noncompliance, but no later than 30 calendar days after receipt of the agency's determination.

(b)  If the complainant is represented by an attorney of record, then the 30 calendar day time period provided in paragraph (a) of this section within which to appeal shall be calculated from the receipt of the required document by the attorney.  In all other instances, the time within which to appeal shall be calculated from the receipt of the required document by the complainant.

### Section 1614.403  How to appeal.

(a)  The complainant, agency, agent, grievant or individual class claimant (hereinafter appellant) must file an appeal with the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, DC 20036, or by personal delivery or facsimile.  The appellant should use EEOC Form 573, Notice of Appeal/Petition [copy enclosed], and should indicate what is being appealed.

(b)  The appellant shall furnish a copy of the appeal to the opposing party [Deputy for Equal Employment Opportunity Compliance and Complaints Review and the agency representative – addresses shown above] at the same time it is filed with the Commission.  In or attached to the appeal to the Commission, the appellant must certify the date and method by which service was made on the opposing party [Deputy for Equal Employment Opportunity Compliance and Complaints Review].

(c)  If an appellant does not file an appeal within the time limits of this subpart, the appeal shall be dismissed by the Commission as untimely.

(d)  Any statement or brief on behalf of a complainant in support of the appeal must be submitted to the Office of Federal Operations within 30 calendar days of filing the notice of appeal.  Any statement or brief on behalf of the agency in support of its appeal must be submitted to the Office of Federal Operations within 20 calendar days of filing the notice of appeal.  The Office of Federal Operations will accept statements or

briefs in support of an appeal by facsimile transmittal, provided they are no more than 10 pages long.

(e)  The agency must submit the complaint file to the Office of Federal Operations within 30 calendar days of initial notification that the complainant has filed an appeal or within 30 calendar days of submission of an appeal by the agency.

(f)  Any statement or brief in opposition to an appeal must be submitted to the Commission and served on the opposing party within 30 calendar days of receipt of the statement or brief supporting the appeal, or, if no statement or brief supporting the appeal is filed, within 60 calendar days of receipt of the appeal.  The Office of Federal Operations will accept statements or briefs in opposition to an appeal by facsimile provided they are no more than 10 pages long.

### Section 1614.407  Civil action: Title VII, Age Discrimination in Employment Act and Rehabilitation Act.

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under Title VII, the ADEA [Age Discrimination in Employment Act] and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

(a)  Within 90 calendar days of receipt of the final action on an individual or class complaint if no appeal has been filed;

(b)  After 180 calendar days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;

(c)  Within 90 calendar days of receipt of the Commission's final decision on an appeal; or

(d)  After 180 calendar days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

### Section 1614.409  Effect of filing a civil action.

Filing a civil action under § 1614.408 or § 1614.409 shall terminate Commission processing of the appeal.  If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing.

If a civil action is filed and the complainant does not have or is unable to obtain the services of a lawyer, the complainant may request the court to appoint a lawyer.  In such circumstances as the court may deem just, the court may appoint a lawyer to represent the complainant and may authorize the commencement of the action without the payment of fees, costs, or security.  Any such request <u>must</u> be made within the

above referenced <u>90 calendar day</u> time limit for filing suit and in such form and manner as the court may require.

You are further notified that if a civil action is filed, the appropriate Department or Agency head must be named as the defendant and his or her official title provided. **DO NOT NAME JUST THE AGENCY OR DEPARTMENT.** Failure to name the head of the Department or Agency or to state his or her official title may result in the dismissal of the case. The appropriate agency is the Department of the Army. The head of the Department of the Army is the Honorable Francis J. Harvey, Secretary of the Army.

### Docket Number

The docket number identified on page one of this letter should be used on all correspondence.

Sincerely,

Insook Cho
Acting Deputy for Equal Employment Opportunity
Compliance and Complaints Review

Enclosures

## NOTICE OF APEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P. O. Box 19848
Washington, DC 20036

**Complainant Information:** (Please Print or Type)

Complainant's Name
(Last, First M.I.):

Home/Mailing Address:

City, State, ZIP Code:

Daytime Telephone #
(with Area Code)

E-mail address (if any):

**Attorney/Representative Information (if any):**

Attorney Name:

Non-Attorney Representative
Name:

Address:

City, State, ZIP Code:

Telephone Number
(if applicable):

E-mail address (if any):

EEOC Form 573 REV 1/01

**General Information**

| | |
|---|---|
| Name of the agency being Charged with discrimination: | |
| _____ | |
| Identify the Agency's Complaint Number: | |
| _____ | |
| Location of the duty station or Local facility in which the complaint arose: | |
| _____ | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this Complaint? | _____Yes;  Date Received _____ (Attach Copy) <br><br> _____No; <br> _____This appeal alleges a breach of settlement agreement. |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any other administrative or collective bargaining procedures? | _____No <br><br> _____Yes    (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate.) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | _____No <br><br> _____Yes  (Attach a copy of the civil action filed) |

**NOTICE:**  Please attach a copy of the final decision or order from which you are appealing.  If a Hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision.  Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency <u>within 30 days</u> of the date of this appeal is filed.  The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| |
|---|
| Signature of complainant or Complainant's representative: |
| _____ |
| Date: |

EEOC Form 573 REV 7/01

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974, Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, January 2001.

2. **AUTHORITY:** 42 U.S.C. & Sect; 2000e-16.

3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable
   the Commission to properly and effectively adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **ROUTINE USES:** Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data Base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

---

EEOC Form 573 REV 1/01-

## NOTICE OF APEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### OFFICE OF FEDERAL OPERATIONS
P. O. Box 19848
Washington, DC 20036

**Complainant Information:** (Please Print or Type)

Complainant's Name
(Last, First M.I.):
_____

Home/Mailing Address:
_____

City, State, ZIP Code:
_____

Daytime Telephone #
(with Area Code)
_____

E-mail address (if any):
_____

**Attorney/Representative Information (if any):**

Attorney Name:
_____

Non-Attorney Representative
Name:
_____

Address:
_____

City, State, ZIP Code:
_____

Telephone Number
(if applicable):
_____

E-mail address (if any):

EEOC Form 573 REV 1/01

## General Information

Name of the agency being
Charged with discrimination:

_____

Identify the Agency's
Complaint Number:

_____

Location of the duty station or
Local facility in which the
complaint arose:

_____

| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this Complaint? | _____Yes;  Date Received _____ (Attach Copy) _____No; _____This appeal alleges a breach of settlement agreement. |
| --- | --- |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any other administrative or collective bargaining procedures? | _____No _____Yes    (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate.) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | _____No _____Yes  (Attach a copy of the civil action filed) |

**NOTICE:**  Please attach a copy of the final decision or order from which you are appealing.  If a Hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision.  Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency **within 30 days** of the date of this appeal is filed.  The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

Signature of complainant or
Complainant's representative:

_____

Date:

EEOC Form 573 REV 7/01

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974, Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, January 2001.

2. **AUTHORITY:** 42 U.S.C. & Sect; 2000e-16.

3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable
the Commission to properly and effectively adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **ROUTINE USES:** Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data Base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

---

EEOC Form 573 REV 1/01-

## DEPARTMENT OF THE ARMY
## EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE
## AND COMPLAINTS REVIEW

Sheila Bloom,
   Complainant

                 v.                           DA Docket No.: ARCEHECSA05APR08233
                                              EEOC Hearing No.: 570-2006-00367X
Francis J. Harvey,
   Secretary of the Army

### NOTICE OF FINAL DECISION

This is the Department of the Army's final decision in your Equal Employment Opportunity (EEO) complaint dated June 7, 2005, which was filed with the EEO Office, US Army Corps of Engineers, Humphrey's Engineer Center Support Activity, Alexandria, Virginia. During the time at issue, you were employed as a Strategic Planner, GS-0301-13, at the U.S. Army Corps of Engineers (USACE).

In the instant complaint, you claim that you were the victim of discrimination on the bases of religion (Jewish), gender (Female), disability (not identified), reprisal (prior EEO activity), and on-going harassment when (1) on March 21, 2005, Mr. Sean Wachuctka placed you on leave restriction based on absence in FMLA status and sick leave status, and accused you of being AWOL while you were attending "Groove" training, and (2) on March 29, 2005, Mr. Wachutcka denied your request for removal of unauthorized, unmerited, and illegal leave restriction, and a change in the alternative work schedule to fixed schedule.[1]

In your initial complaint, you lodged several additional claims of discrimination. In a document entitled "Notice of Partial Dismissal," dated October 21, 2005, the Agency dismissed the following claims:

1. Mr. Sean Wachutka denied you reasonable time for preparing a pre-hearing report, EEOC Administrative Judge requirements, deposition of Mr. Bruce Elliot, Fact-finding Conference, narrowing and consolidation of issues and clarification of issues for two complaints.
2. Mr. Sean Wachutka denied your enrollment in the leave donor program outside HQ USACE (Corps-wide, DOD and Interagency, and leave bank program).
3. On March 7 and March 21, 2005, you were denied union representation in performance improvement plan (PIP) meetings and other meetings. You allege that you were told by Mr. Wachutka that

---

[1] At the EEO investigator's fact-finding conference conducted on March 23, 2006, you expanded your initial claim to include the religion, gender, and harassment bases. You also clarified that your bases did not include race (Transcript [TR.] pp. 8-9).

you were not covered under the bargaining unit contract and therefore not entitled to representation. Mr. Wachutka and Mr. Elliot threatened Union Representatives to dissuade their attendance and support at various meetings.

4. Denied telecommuting for medical necessity after Mr. Wachutka had been informed from three separate physicians that you could not work in the GAO building. Management denied your request to see if you could move from third floor to sixth floor even though many cubicles were available on the sixth floor. As a result, management forced you to move from Civil Works cubicle 3H72 to cubicle 3W60.

5. Denied data request for Environmental Study of building by Safety and Health officials. Requests for information from managers denied or ignored.

6. Threatened by key Agency officials (Agency Counsel, Steven Weiss), CPAC (Mr. Tim Alderman, Ms. Sheila Dent, Barbara Campbell, Safety and Health (Dave Breeden) request elevation to the next level in Agency.

7. Management's continued statements that you are not covered by the Bargaining Unit.

The Agency's EEO office cited your failure to state a claim pursuant to 29 C.F.R. 1614.107 as its reason for not accepting the claims listed above for investigation (Investigative File [IF.] pages [pp.] 41-43). I see no reason to disturb that decision.

On March 23, 2006, the Department of Defense, Civilian Personnel Management Service, Office of Complaint Investigations initiated the investigation on the accepted claims. However on April 27, 2006, and before the investigation was completed, you requested a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge (AJ) (EEOC No. 570-2006-00367X).[2]

On May 16, 2006, the EEOC AJ issued an order directing the Agency to produce your complaint file. Because the investigation had not yet been completed, the Agency responded to the EEOC AJ's order by sending the complaint file without the report of investigation. On June 1, 2006, the Agency transmitted the record of investigation to you.

On November 1, 2006, you filed a request that the proceedings before the EEOC AJ be dismissed (Complaint File, p. 3). In support of your request you pointed out that more than a year had elapsed since you filed your request for a hearing before the EEOC AJ and formal complaint with the Agency. You therefore requested that the administrative proceedings be dismissed to "permit [you] to bring [the] matter to federal court."

On November 6, 2006, an EEOC AJ issued an order granting your request by treating it as a request for the withdrawal of your hearing request, and "remanded it to

---

[2] Your request also covered DA Docket Nos: ARCEHECSA05JUL11813 and ARCHECSA05OCT12448.

the Agency for further processing (Complaint File, p. 1)." Accordingly, this is the Army's final decision regarding your complaint.

## Legal Framework

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination (commonly referred to as a "disparate treatment" claim). The complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish by a preponderance of the evidence a *prima facie* case of discrimination on the alleged basis. Furnco Construction Company v. Waters, 438 U.S. 567, 576 (1978). A complainant may establish a *prima facie* case of discrimination with circumstantial evidence by showing that he or she (1) belonged to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group, or, in the alternative, that there is some other evidence raising an inference of prohibited discrimination. Mayberry v. Vought Aircraft Company, 55 F.3d 1086, 1090 (5th Cir. 1995); Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992); Lipcsey v. USPS, EEOC Appeal No. 01981884 (January 6, 2000).

Once a *prima facie* case is established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco Construction Company, 438 U.S. at 578. See also St. Mary's Honor Center. v. Hicks, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254. If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; United States Postal Service. v. Aikens, 460 U.S. 711, 715 (1983). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext, but are pretext for discrimination. Hicks, 509 U.S. at 507, 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254; Hicks, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502

(1993). In <u>Hicks</u>, the Court held that, in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable.

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that he or she is a "person with a disability" as that term is defined in the Rehabilitation Act and Equal Employment Opportunity Commission regulations. Title 29, Code of Federal Regulations, Part 1630.2(g) defines a person with a disability as an individual who: (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. *See also* <u>Melahn v. Department of the Navy</u>, EEOC Appeal No. 01832380 (October 21, 1985). Whether an individual has a disability is not based on the name or diagnosis of the impairment involved but rather the effect which that impairment has on the individual's life. <u>Sutton *et al.* v. United Airlines, Incorporated</u>, 527 U.S. 471, at 483 (1998).

Also, the mere fact that an agency relied on a complainant's physical condition in taking a personnel action does not indicate that the agency perceived that the complainant had a substantially limiting condition. <u>Kelly v. U.S. Postal Service</u>, EEOC Appeal No. 01830028 (November 15, 1983). Similarly, the mere fact that an agency processed an employee's claim for benefits under the Federal Employees Compensation Act and/or granted the employee a modified work assignment in connection with that claim would not prove that the agency regarded the employee as disabled. <u>Brown v. U.S. Postal Service</u>, EEOC Appeal No. 01990686 (February 21, 2002).

According to EEOC regulations, major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. See 29 C.F.R. 1630.2(i). The Interpretive Appendix to the regulations also identifies sitting, standing, lifting, and reaching as other major life activities. The term "impairment" is defined broadly at 29 C.F.R. 1630.2(h) and the Commission's guidance on having a record of an impairment or being perceived as disabled appears at 29 C.F.R. 1630.2 (k) and (l). The regulations define "substantially limited" as meaning that the individual cannot perform the major life activity at all or is significantly limited in the ability to perform the activity compared to the average person in the general population. 29 C.F.R. 1630.2(j) and <u>Toyota Motor Manufacturing of Kentucky, Incorporated v. Williams</u>, 534 U.S. 184 (2002). See also <u>Harrison v. Department of Justice</u>, EEOC Appeal No. 01A03948 (July 30, 2003).

Courts also look to mitigating factors such as assistive devices or medication in determining whether an individual is substantially limited. <u>Sutton</u>, *supra.* Temporary or intermittent conditions are not covered. <u>Heino v. Postmaster General</u>, EEOC Appeal No. 01994965 (January 28, 2002); <u>Anderson v. National Gallery of Art</u>, EEOC Appeal No. 03910108 (September 17, 1991); and <u>Wolfe v. Postmaster General</u>, EEOC Appeal No. 01993796 (July 8, 2002). If the major life activity of "working" is involved, the individual must be unable to perform an entire class of jobs or a broad range of jobs

within the class in order to be substantially limited.  29 C.F.R. 1630.2(j) (3).  *See* also
Webber v. Department of the Air Force, EEOC Appeal No. 01989587 (March 2, 2001).

    A generalized assertion, without specific evidence to support it, that an individual
is substantially limited is not sufficient to satisfy a complainant's burden of proof.
Lohr v. U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994);
Zeigler v. Postmaster General, EEOC Appeal No. 01930854 (May 12, 1994) and
Jenkins v. Postmaster General, EEOC Appeal No. 01954572 (March 24, 1997).

    It is also not enough that the agency is in possession of a diagnosis that an
individual's supervisor knows that they have a particular condition, that the complainant
has an approved claim with the Office of Workers Compensation Programs, or that the
complainant has a percentage disability awarded by the Department of Veterans'
Affairs.  Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994);
Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986);
Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); and
Bono v. Postmaster General, EEOC Appeal No. 01951113 (August 11, 1997).

    To establish a *prima facie* case based on reprisal, a complainant must show that:
(1) he/she engaged in prior protected activity; (2) the agency official was aware of the
protected activity; (3) he/she was subsequently disadvantaged by an adverse
employment action or adverse treatment; and (4) there is a causal link between the
protected activity and adverse action/treatment.  Hochstadt v. Worcester Foundation for
Experimental Biology, Incorporated, 425 F. Supp. 318, 324 (D. Mass),
aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of
Physicians and Surgeons, 842 F. 2d 590, 593 (2nd Cir. 1988); Witmire v.
Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000).  The
causal connection may be inferred by evidence that the protected conduct was closely
followed by the adverse action.  Grant v. Bethlehem Steel Corporation, 622 F.2d 43
(2nd Cir. 1980).

    In addition, in Gunther v. County of Washington, 623 F.2d 1303, 1316
(9th Cir. 1979), aff'd 452 U.S. 161 (1981), the court held that essential to the link
between protected activity and adverse action is showing that the official taking action
was aware that the complainant engaged in protected activity.  To support a finding of
unlawful retaliation, there must be proof that the agency official(s) took the action at
issue because of complainant's prior protected activity and sought to deter complainant
or others.  EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998),
pp. 8-16.

    Harassment of an employee that would not occur but for an employee's race,
color, sex, national origin, age, disability, or religion is unlawful if it is sufficiently severe
or pervasive.  Wibstad v. United States Postal Service, 01972699 (August 14, 1998),
citing McKinney v. Dole, 765 F. 2d 1129, at 1138-1139 (D.C. Cir. 1985).  Moreover, an
employer who creates or tolerates a work environment which is permeated with
"discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to

alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. Harris v. Forklift Systems, Incorporated, 501 U.S. 17 (1993), citing Meritor Savings Bank F.S.B., 477 U.S. 57 (1986). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. Harris, *supra*. In order to support a finding of a hostile environment, more than a few isolated incidents of racial or sexual enmity must have occurred. Johnson v. Bunny Bread Company, 646 F. 2d 1250, at 1257 (8th Cir. 1981) and Cariddi v. Kansas City Chiefs Football Club, Incorporated, 568 F. 2d 87, at 88 (8th Cir. 1977). There must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, 782 F. 2d 1094 (2nd Cir. 1986).

The Equal Employment Opportunity Commission has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal deprivation sufficient to render an individual aggrieved. Johnson v. Department of Justice, EEOC Appeal No. 01986199 (February 18, 2000); Backo v. U. S. Postal Service, EEOC Request No. 05960227 (June 10, 1986); and Henry v. U. S. Postal Service, EEOC Request No. 05940695 (February 9, 1995).

The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. McGivern v. U. S. Postal Service, EEOC Request No. 05930481 (March 17, 1994) and Vargas v. Department of Justice, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred. Rabidue v. Osceola Refining Company, 805 F. 2d 611, at 620 (6th Cir. 1988) and Gilbert v. City of Little Rock, 722 F. 2d 1390, at 1394 (8th Cir. 1993). The decisions make it clear that the anti-discrimination laws are not a "general civility code" and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment. Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment. DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000).

### Procedural and Factual Background

You entered an appearance at the EEO Investigator's fact-finding conference conducted on March 23, 2006. While there, you were given an opportunity to provide testimony supporting your claims that Mr. Sean Wachuctka intentionally discriminated against you when (1) on March 21, 2005, he placed you on a leave restriction based on your absences in (Family Medical Leave Act) FMLA status and sick leave status, and accused you of being AWOL while you were attending "Groove" training, and (2) on March 29, 2005, he denied your request for removal of unauthorized, unmerited, and

illegal leave restriction, and a change in the alternative work schedule (AWS) to fixed schedule.

At that time, you testified that you had a disability, but did not identify it (Transcript [TR.] pp. 49, 65-69). You said that you had surgery and had an incident at work in which you suffered a respiratory problem (TR. pp. 49, 65-69). You also said that you had medical records within your possession while there, but could not give them to the EEO Investigator for review because they were "medical" (TR. pp. 43, 45-46).

You testified that you had engaged in prior EEO activity when you filed EEO complaints against the Army. You identified your religion as Jewish and gender as female. When asked why you believed that Mr. Wachutka took the disputed actions because of your prior EEO activity, religion, gender, or medical conditions, you said that he took them because of they were your "protected activities (TR. p. 39)." You said management officials treated you differently as to the type of documentation that you were required to provide in order to support your sick leave absences. (TR. pp. 87-90).

In response to questioning concerning your claims related to being "AWOL", you said that you attended "Groove" training at 1:00 pm on the day in question (TR. p. 123).

With respect to your claims concerning the change on your alternative work schedule to a fixed schedule, you testified that Mr. Wachutka did not follow proper procedures to give you a failing performance evaluation, which was the basis for his change in your schedule (TR. p 339). Specifically, you testified ". . .Mr. Wachutka issued me a performance appraisal on October 22, 2004, without a senior rater's --- supervisor's—his boss's signature and a 5, and there was no backup counseling sessions or anything to document that . . ." (TR. p. 339).

Sean Wachuctka, Division Chief, Strategy and Integration Directorate, GS-0301-15, identified himself as your first-level supervisor. He said that you mischaracterized his actions. He denied that he had placed you on a leave restriction because you had used sick leave or were absent pursuant to the FMLA (TR. pp. 134, 139-140). He said that he issued you a letter on March 21, 2005, giving you detailed instructions on how and when to submit your request for leave because of your two-month delay in alerting him that there was a problem in the recording of your leave usage (TR. p. 140). He said that you complained that there was a problem with your pay dating back to January 2005. As an example of problems keeping track with your leave, he said that you had a history of turning in your time sheets late that led to recordkeeping problems (TR. pp. 141-142). He described other practices that made it "hard for him to know when [you] were actually on leave" (TR. p. 145). He said that you had registered concerns about the accurate recording of your leave, so in an effort to avoid future problems, he issued you the letter providing you with detailed instructions as to what you must do "to ensure that [your] leave requests [were] submitted and approved in a timely manner" (TR. p. 146). He said that the instructions set forth in the letter apply to everyone under his supervision and in the Directorate (TR. p. 146).

He admitted that he asked you whether you had been "AWOL" from your scheduled "Groove" training class, but said he did not charge you leave for an absence. (TR. pp. 151-152). He explained that you had sent him an email notifying him that you would be attending the "Groove" training course at 10:00 am, but when he attended the class he did not see you there (TR. p. 149). He said that when he asked you why you were "AWOL" from the course, you responded in a "defiant manner" that you had attended a later class (TR. p. 150). He added that despite this, he did not charge you for an absence.

Mr. Wachutka pointed out that you had been on a fixed work schedule since November 1, 2004, when he placed you on a PIP due to problems related to your work performance (TR. pp. 153-154). He explained that he placed you on a PIP in an effort to help you improve your work performance because you had received unsatisfactory performance ratings in October 2004. Specifically, he testified that because you had failed your evaluation and he had placed you on a PIP, under the Army's regulations he was required to give you "more structure and more supervision" (TR. p. 160) He explained that that was the reason why he changed your AWS schedule to a fixed one, effective November 1, 2004. He added that he had not placed any of the other employees that he supervised on fixed work schedule because none of them were subject to a PIP. He denied that you had requested a change in that schedule on March 29, 2005, other than requesting that your lunch break be expanded to one hour so that you could walk for exercise (TR. p. 154). He added that he granted your request.

He denied discriminating against you on your claimed protected bases (TR. p. 156). He also opined that you were not disabled (TR. pp. 157-158, 165).

### *Prima Facie* Case Analysis

<u>Gender and Religion</u>

As set forth above, these claims are properly analyzed under the <u>McDonnell-Douglas</u> legal framework. This framework explains how you can prove unlawful disparate treatment where direct evidence of such discrimination is lacking, as in this case. See <u>Furnco Construction Company v. Waters</u>, 438 U.S. 567 (1978); <u>Board of Trustees of Keene State College v. Sweeney</u>, 439 U.S. 24 (1978).

If you do establish a *prima facie* case, then the Army has the opportunity to articulate a reasonable, non-discriminatory reason for its actions, after which you have "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons," but pretextual. <u>Burdine</u>, 450 U.S. at 253.

The first question is whether you have established a *prima face* case. Prong one of the <u>Mayberry</u> case above requires you to show that you are a member of a protected

class. As for gender and religion, it is conceded that you are Jewish and female and therefore are a member of those protected classes.

Prong two of <u>Mayberry</u> requires that you suffer an adverse employment action; and prong three requires you to show that similarly situated co-workers, not of your protected classes, were treated more favorably than you.

It is questionable whether you suffered any adverse employment actions or treatment with respect to your claims related to the "AWOL" comment and the leave restrictions. There is no record evidence establishing that Mr. Wachutka docked your leave for not attending the "Groove" training or actually placed restrictions on your usage of leave. You were not penalized. Thus, you failed to establish a *prima facie* case of disparate treatment as to those claims. However, because he acknowledged that he had changed your alternative work schedule to a fixed one, his action constituted an adverse one. The next question is whether similarly situated employees not of your protected classes were treated more favorably than you.

In order to be a valid comparator, a co-worker must be similarly situated with you. <u>Michelle K. Knapp-Huffman v. John Ashcroft, Attorney General, Department of Justice, (Bureau of Prisons)</u>, EEOC Appeal No. 01991026 (2002) ("In order to be considered similarly situated, the persons with whom the complainant is comparing herself *must be similar in substantially all aspects, so that it would be expected that they would be treated in the same manner.* <u>Murray v. Thistledown Racing Club, Incorporated</u>, 770 F.2d 63, 68 (6th Cir. 1985)" (emphasis added)). *See also* <u>Nogas v. John E. Potter, Postmaster General, United States Postal Service</u>, EEOC Appeal No. 01994718 (2002). Moreover, all relevant aspects of the employees' work situation must be identical or nearly identical, *i.e.,* that the employees report to the same supervisor, perform the same job function, and work during the same time periods. See <u>Anderson v. Department of Treasury</u>, EEOC Appeal No. 01A22092 (March 13, 2003); <u>Stewart v. Department of Defense</u>, EEOC Appeal No. 01A02890 (June 27, 2001); <u>Jones v. United States Postal Service</u>, EEOC Appeal No. 01983491 (April 13, 2000).

With regard to his instructions on how to request leave, and inquiries as to your attendance at scheduled training, you did not show that any other person supervised by Mr. Wachutka received more favorable treatment. In short, you have failed to prove that similarly situated employees not of your protected classes were treated differently as to those claims. However, Mr. Wachutka testified that he did not take action to change the AWS of any other employee he supervised, so this is evidence that affords a sufficient basis from which to draw an inference of discrimination (TR. p. 154). Therefore, you have successfully made out a *prima facie* case of gender or religion discrimination as to the change of your work schedule from AWS to fixed.

<u>Disability</u>

At the outset, you failed to assert a claim under the Rehabilitation Act (hereinafter "Act") because you failed to establish that you were a "person with a disability" within

the meaning of the Act. In reaching this conclusion, it was noted that in your testimony you made references to having had surgery, an unspecified illness, and an episode at work in which you experienced respiratory problems (TR. pp. 43-46, 65-69). However, you have failed to introduce evidence that sheds light on how your condition substantially limited one or more life activities and thus, rendered you disabled within the meaning of the Rehabilitation Act.

You also testified that your condition affected your ability to attend work on a regular basis within the building of your work location (TR. pp. 43-46). But even if it could be argued that you were substantially limited in the life activity of working because you were unable to consistently perform all of the duties of your position and attend work regularly, you still would have failed to prove that you were disabled within the meaning of the Rehabilitation Act. This is because you failed to introduce evidence showing that your condition substantially limited your ability to perform work in a class of jobs or a broad range of jobs in various classes. Webber v. Department of the Air Force, EEOC Appeal No. 01980587 (March 2, 2001).

Thus, the Agency was not obligated under the Act to provide you with an accommodation for a disability.

Having found that you failed to prove that you were disabled because you suffer from impairments that substantially limit a major life activity, the question is whether you are a disabled person within the meaning of the Act because the Army has a record of disabling impairments, or regarded you as having disabling impairments. You testified that on November 21, (presumably in 2004), Mr. Wachutka received a medical assessment that you were not allowed work in the building more than one hour" (TR. p. 388). This does not establish that you had a disabling impairment. There is no evidence in the record establishing that the Army has records of a disabling impairment that would permit you to assert a claim under the Rehabilitation Act.

Further, there is no evidence that Army management perceived you as being disabled by virtue of a medical condition. In fact, Mr. Wachutka referred to your unidentified medical condition as an "alleged disability," so it is clear that he did not perceive you to be disabled (TR. p. 133). Finally, there is no evidence in the record to support a finding that he treated you differently from other employees with regard to the actions of which you complain because he perceived you to have a disabling impairment. For these reasons, the record shows that you were not a member of the group protected by the Rehabilitation Act. In sum, you failed to establish a *prima facie* case of discrimination based on a disability.

Reprisal

With respect to your reprisal claim, you have failed to successfully establish a *prima facie* case of reprisal discrimination. Mr. Wachutka testified that he had knowledge of your prior EEO activity. However, while you have established that you engaged in protected activity (ARCEHCSA04NOV08536) on November 30, 2004, this

was approximately six months before the disputed events (AWOL statement and leave restriction) took place. The change in your AWS was effective on November 1, 2004, before you had engaged in the protected EEO activity. Therefore, there is insufficient evidence to support the inference of a causal connection between your protected activity and Mr. Wachutka's actions.

Harassment

There is also insufficient evidence to support the establishment of a *prima facie* case of workplace harassment based on your protected classifications. You claimed that Mr. Wachuckta created a hostile work environment for you. The record does not support that finding. I find that he treated you in a respectful manner, but you resisted his supervision. In addition, the incidents that you described do not rise to the level of discriminatory harassment. Instead, they appear to be only routine "instructions" resulting from Mr. Wachutka's hands-on management style and his legitimate management of Directorate employees, programs, and activities. Even as you described them, they were not severe or pervasive. Hence, the finding is that you were not subject to harassment on your claimed bases.

## Management's Nondiscriminatory Reasons

Even if it were assumed, for the sake of argument only, that you have established a *prima facie* case of discrimination on your claimed protected classifications, the burden then shifts to the Agency to articulate a nondiscriminatory reason for its actions. Specifically, Mr. Wachutka asserted that he took the contested actions because of a need to:

- account for your work activities,

- assist you in improving your work performance, and

- ensure the proper recording of your leave status for pay purposes (TR. pp. 144-160).

Notably, you do not deny that you had complained about the improper recording of your leave, and that you were not at the "Groove" training at 10:00 am.

I have reviewed the March 25, 2005, letter that is the subject of your complaint and it clearly does not place restrictions on your usage of leave as you have contended (IF. pp. 297-298). It merely sets forth the procedures to support the accounting of your leave status. Also, there is no indication from the record that Mr. Wachutka actually took any concrete action when he did not see you at the "Groove" training. His comment that you were "AWOL" was just that, a comment.

The unsatisfactory performance appraisal led to the PIP, which in turn led to the change in your work schedule from AWS to fixed effective November 1, 2004. You did not question the propriety of Mr. Wachutka's assessment that your work performance

had been unsatisfactory. You merely argued that he did not follow proper procedures when he issued you the performance evaluation (TR. p. 339). I have no reason to believe that his unsatisfactory performance appraisal was not warranted by your performance. Moreover, his placing you on a fixed work schedule in order to assist you in approving your performance is reasonable.

I am not persuaded that the actions that Mr. Watchutka took were not legitimate exercises of his responsibilities to manage you and the Directorate. The reasons that Mr. Wachutka gave for his actions appear to me to be both reasonable and legitimate. Mr. Wachutka articulated the agency's legitimate, facially non-discriminatory explanation for the disputed actions.

## Pretext

It remains for you to show that in spite of the articulated non-discriminatory explanation, an overall inference of discrimination can be discerned by a preponderance of the evidence. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714-17 (1983).

In other words, you must show that the Army was "more likely motivated by discriminatory reasons [citation omitted],"than not. Hill v. Social Security Administration, Appeal No. 01970512 (June 8, 2000). Alternatively, you may show that the proffered explanation of the Army is unworthy of credence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Essentially, the record must show that the Army articulated a false reason and that its real reason was discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

At this stage of the analysis, according to the United States Supreme Court, the burden of the Army is not onerous. Burdine, supra, 450 U.S. at 254-256. See also Rosser v. Department of Transportation, EEOC Appeal No.01970650 (December 12, 1999). Even if you showed, for the sake of argument only (because you have not done so), that the Army engaged in an action that was an unsound business decision, was unfair, or was motivated by an ill feeling or arbitrariness, that is insufficient to show pretext. Keyes v. Secretary of the Navy, 853 F.2d 1016, 1026 (1st Cir. 1988).

You made no attempt to show pretext, nor have you shown that the explanation of the Army for its actions was simply a pretext for discrimination. Mere speculation and/or conjecture that the Army had a discriminatory motive without proof are insufficient for proving pretext. See Autry v. North Carolina Department of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987); ("the fact-finder must not be permitted to engage in surmise and conjecture but rather causation must be shown by probability rather than mere possibility"); Lovelace v. Sherwin-Williams Company, 681 F.2d 230, 241-46 (4th Cir. 1982).

Your allegations are general and unspecific as they relate to your efforts to provide a connection between the action taken and unlawful discrimination. They are

unsupported by the totality of the record.  In other words, there is nothing that shows by a preponderance of the evidence that the legitimate explanations given by the Army were pretexts for discrimination. Hammons v. HUD, EEOC Request No. 05971093, EEOC Appeal No. 01955704 (May 5, 1999).

Other than your initial assertions, you have presented no direct evidence, no corroborating testimony from another witness, and no documentation that would confirm your claim that management's actions were based upon your protected classifications. Hence, management's nondiscriminatory reasons have not been proven to be a pretext for illegal discrimination.

### Conclusion

Pursuant to my authority to decide this matter on behalf of the Secretary of the Army, I find that you were not the victim of discrimination based upon a disability, prior EEO activity, gender, or religion based upon the evidence in the case file and for the reasons cited above.

Since you are not a prevailing party, and are not represented by an attorney, you are not entitled to any relief, including attorney's fees or costs.

If you are not satisfied with this decision, your appeal rights are in the attached letter.

# DEPARTMENT OF THE ARMY
## EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE
## AND COMPLAINTS REVIEW

| | |
|---|---|
| Sheila Bloom ) | |
| ) | |
| ) | |
| Complainant ) | |
| ) | DA Docket No.: ARCEHECSA05APR08233 |
| v. ) | |
| ) | |
| Francis J. Harvey, Secretary of the Army ) | |
| ) | |
| Agency ) | |
| ) | |

## CERTIFICATE OF SERVICE

I certify that this office sent the enclosed Notice of Final Decision (with EEOC Form 573) (Enclosure 1) and this Certificate of Service (Enclosure 2), on this date, to the following parties:

**By Certified Mail**

Ms. Sheila Bloom
1712 Cedarpark Road
Annapolis, Maryland 21401

**By Electronic Mail**

Commander
U.S. Army Corps of Engineers
Humphrey Engineers Support Activity
ATTN: EEO Office (Mr. Braxton)
441 G Street, N.W.
Washington, DC 20310
James.j.Braxton.sr@hq02.usace.army.mil

Commander
U.S. Army Corps of Engineers
Humphrey Engineers Support Activity
ATTN: Office of Counsel (Mr. Lopez, Agency Representative)
7701 Telegraph Road
Alexandria, Virginia 22315
Andrew.Lopez@usace.army.mil

Enclosure 2

Chief of Engineers
Headquarters, U.S. Army Corps of Engineers
ATTN: CEEO
441 G Street, NW
Washington, DC 21314-1000
Gonzales.e.Williams@usce.army.mil

Date: _____2/16/07_____    _____
EEO Assistant

Exhibit 2

*US District Court*
*for District*
*Original*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

MAY 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| **SHEILA A. BLOOM**<br>1712 Cedarpark Road<br>Annapolis, Maryland 21401<br>*410. 267. 1515* | ) ) ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) ) ) |  |
|  | ) |  |
| v. | ) ) | **Complaint and Jury Demand** |
|  | ) |  |
| **PETER GEREN, ACTING SECRETARY**<br>UNITED STATES ARMY<br>101 Army Pentagon<br>Washington, DC 20310-0101 | ) ) ) ) ) |  |
|  | ) |  |
| and | ) ) |  |
|  | ) | Case: 1:07-cv-00979 |
| **LTG ROBERT L. VAN ANTWERP**<br>Chief of Engineers<br>Office of the Chief of Engineers<br>2600 Army Pentagon<br>Washington, DC 20310-2600 | ) ) ) ) ) | Assigned To : Kennedy, Henry H.<br>Assign. Date : 5/25/2007<br>Description: Employ. Discrim. |
|  | ) |  |
| Et. Al: Bruce Merle Elliott, Toni Trever Trombecky ,<br>Sean M. Wachutka, James J. Braxton,<br>Tim Alderman, David Breeden, Kathy Genung<br>Kristine Allaman (SES), Barbara Campbell<br>Carl A. Strock LTG-RET, Robert Griffin MG-RET<br>Up to 10 defendants to be named<br>US ARMY CORPS OF ENGINEERS<br>441 G Street, NW<br>Washington, DC 20314-1000 | ) ) ) ) ) ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) ) |  |

**JURY ACTION**

## COMPLAINT

1.   This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII), *as amended*, 42 U.S.C. 2000eet seq,; the Civil Service Reform Act ("CSRA"), Rehabilitation Act of 1973, Reasonable Accommodation, 5 U.S.C. 2302; and the Whistleblower Protection Act ("WPA"), 5 U.S.C. 1211-1215, 1218-1219, 1221-1222, 7702-7703.

### JURISDICTION AND VENUE

2.   This Court has jurisdiction under over all of Plaintiff's Title VII claims pursuant to 42 U.S.C. 2000e -5(f)(3), 2000e-5(g), 2000e-16(c), and 29 C.F.R. 1614.407(b) and (d).

3.   Venue is proper in the United States District Court for the District of Columbia pursuant to 42 U.S.C. 2000e-5(f)(3) because of unlawful employment practices alleged to have occurred in the District of Columbia.

4.   This Court has jurisdiction over the Plaintiff's whistleblower and Civil Service Reform Act claims pursuant to Section 7702 of Title V of the United States Code, which governs the prosecution of "mixed case" claims, and Section 7703 of Title V of the United States Code.  Plaintiff initially elected to proceed with her "mixed case" claims before the Agency's Equal Employment Office ("EEO Office").

5.   Plaintiff claims standing with regards to Executive Branch officials being directed to break laws, statutes, regulations and policies and exacting discrimination, reprisal, retaliation and hostile work environment and other employment law violations against the Plaintiff through the use of privileges provided by Presidential Signing Statements yet to be determined.

6.   Plaintiff exhausted her administrative remedies before pursuing her claims in federal court.  Plaintiff exhausted her administrative remedies both with the Agency (Army/DoD)

and EEOC regarding four timely filed complaints under Department of the Army ("DA")

Docket Numbers:

    a. **ARCEHECSA05APR08233** (Initial contact with EEO April 13, 2005. EEO

        Counselor's Report Submitted to EEO Officer on June 20, 2005. Notice of Right

        to File dated May 20, 2005 received June 4, 2005, formal complaint filed June 3,

        2005. EEO Officer acknowledgment of formal complaint received June 29, 2005.

        Amendments July 25, 2005 and July 27, 2005.  Notice of Partial Dismissal

        received October 12, 2005); Formal complaint filed with request for hearing and

        appeal to EEOC on April 27, 2006.

    b. **ARCEHECSA05JUL11813** (Initial contact with EEO on July 8, 2005. Assigned

        to an investigator on July 8, 2006. EEO Counselor's Report Submitted to EEO

        Officer on November 11, 2005. Notice of Right to File dated October 27, 2005.

        Amendment filed August 1, 2005.  No acknowledgement of amendment received.

        Formal complaint filed with request for hearing and appeal to EEOC on April 27,

        2006.

    c. **ARCEHECSA05OCT12448** (Initial contact with EEO Office on October 20,

        2005, Notice of Right to File dated December 16, 2005 (untimely by Agency),

        Formal Complaint filed December 26, 2005, EEO Officer Acknowledgement of

        Complaint dated January 4, 2006 received January 9, 2006; Amendments and

        clarifications submitted February 23, 2006; Notice of Dismissal dated March 15,

        2006 received March 27, 2007); Addendum to Notice of Dismissal dated March

        24, 2006. Formal complaint timely filed with request for hearing and appeal to

        EEOC on April 27, 2006.

    d. **No DA Docket Number assigned.** (Initial contact with EEO on October 27, 2005, January 6, 2006, January 16, 2006 and February 23, 2006. Not assigned to an investigator by Agency. No counseling session conducted by EEO Office. EEO Officer dismissed the complaint without an investigation. Addendum to Notice of Dismissal dated March 24, 2006 received March 27, 2006). Formal complaint timely filed with request for hearing and appeal to EEOC on April 27, 2006.

7.    Agency officials had also failed to conduct their investigations within the time frames or in accordance with EEO procedures stipulated within Agency Policy, procedures, regulations and laws. Therefore, in accordance with 29 CFR 1614.108(g), Plaintiff timely filed a request for hearing before the Equal Opportunity Employment Commission Washington Field Office ("EEOC") on April 27, 2006. EEOC also failed to perform their duties within the 180 days allotted and failed to conduct a hearing within the stipulated time frames denying Plaintiff her rights under the law.

8.    Therefore on November 1, 2006, Plaintiff timely filed a Motion to Request to Proceed to Federal Court After Exhausting Her Administrative Remedies with the presiding Administrative Law Judge, Varice Ted Henry. On November 6, 2006, her motion was GRANTED and hereby remanded to the Agency for further processing. Between November 6, 2006 and February 22, 2007, Agency officials failed to provide the Agency Final Decision within the stipulated time frames for such action.

9.    On February 22, 2007 Plaintiff received the Agency Final Decision letter via regular mail. Plaintiff is timely filing the Civil Action in accordance with directives within the

Agency Final Decision letter dated February 15, 2007 mailed February 20, 2007 and received by the Plaintiff on February 22, 2007.

10.  Plaintiff exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407 (d) as more than 180 days have passed since she filed her request for hearing (April 27, 2006) with the EEOC on all four complaints.

11.  The Plaintiff exhausted her administrative remedies regarding the first formal complaint filed with the Agency's EEO Office on June 20, 2005 (Army Docket No. **ARCEHECSA05APR08233).** Plaintiff made her initial contact with the EEO was April 13, 2005 but was not provided the Notice of Right to File until May 20, 2005.

12.  The Agency EEO Office took delayed action in investigating the complaint that contained multiple valid claims. EEO Officer inappropriately dismissed the numerous claims and only investigated on claim thus denying the Plaintiff her rights to investigation of all stated claims. Plaintiff attempted to exhaust her administrative remedies within the Agency by participating in the Department of Defense Office of Complaint Investigations ("DOD OCI") Fact Finding Conference ("FFC") on March 23, 2006 that only investigated one claim, not the many raised by the Plaintiff. The FFC was held way over the 180 days allotted for Agency investigation.

13.  Due to the delay in processing her complaint, Plaintiff timely filed a request for hearing with the EEOC on April 27, 2006. The EEOC did not issue a final decision or hold a hearing within 2 years of filing this complaint. Plaintiff has exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for hearing with EEOC. In addition, more than 768 days (over two

years) have elapsed since Plaintiff made initial contact with Agency EEO on April 13,

2005;

14.  A second complaint was timely filed on July 8, 2005 with the Agency EEO Office and

on April 27, 2006 with EEOC (Army Docket No. **ARCEHECSA05JUL11813).** Once

again the Plaintiff was denied her rights to have a valid investigation on multiple claims

raised within her complaint by the Agency EEO.  The complaint investigator conducted no

counseling sessions with the Plaintiff. The EEO Office submitted the EEO Counselor's

Report (AR 690-600, DA Form 7510) on November 11, 2005 to the Agency EEO Officer.

Plaintiff was not provided the final counseling session or counselors report dated

November 11, 2005 until after July 25, 2006 (9 months later).  Plaintiff did not receive the

EEO Counselor's report until after July 25, 2006 when Agency Counsel provided the

document as a part of the Agency's Brief in Opposition to Appeal for Army Docket No.

**ARCEHECSA05OCT12448** to the Equal Employment Opportunity Commission Office

of Federal Operations.  EEO Counselor had intended to amend the complaint after Plaintiff

met with her on October 27, 2005. From Agency documents submitted to the EEOC, the

EEO Counselor was still conducting her investigation on October 27, 2005.  Plaintiff has

exhausted her administrative remedies as more than 682 days (almost two years) has

elapsed since Plaintiff made initial contact with EEO on July 8, 2005. Plaintiff had

provided amendments to the complaint on August 1, 2005.  Agency did not provide

acknowledgement of the amendment to the Plaintiff.  Due to the serious delay in

processing her complaint and her right to appeal through the EEOC, Plaintiff timely filed

an appeal and request for hearing with the EEOC on April 27, 2006.  Plaintiff raised these

matters with the EEOC on April 27, 2006 and requested a hearing into the allegations

raised in her multiple claims within this complaint. The EEOC did not issue a final decision or hold a hearing within over 1 year of requesting a hearing with the EEOC and almost two years since filing with Agency EEO. Plaintiff has exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for hearing with EEOC. In addition, more than 768 days (over two years) have elapsed since Plaintiff made initial contact with Agency EEO on July 8, 2005;

15.  In complaints **ARCEHECSA05APR08233 and ARCEHECSA05JUL11813** Plaintiff requested a identified claims that included discrimination, reprisal and retaliation by key Agency officials involved in the EEO, Family Medical Leave Act, Americans with Disability Act and Rehabilitation Act processing of requests for Reasonable Accommodation and Rehabilitation as Agency witnesses and notified Agency officials within USACE and the Army. On July 18, 2005 Plaintiff requested a Change in Venue from the EEO Officer and his superior, Mr. Chuck Rau. The EEO Officer and his superior ignored the request. Plaintiff requested the complaints to be elevated to the next level of review on August 11, 2005 and October 17, 2005. Plaintiff also requested the change in venue from the Department of Army after naming the EEO Officer as a Responsible Management Official as well as others on October 25, 2005. Department of the Army did not respond to the Plaintiff but to the EEO Officer on November 14, 2005 denying her request. Army never provided a letter to the Plaintiff denying her request.

16.  EEO Officer failed to process the Change in Venue request.

17.  A third complaint was timely filed on October 20, 2005 with the Agency EEO Office and on April 27, 2006 with the EEOC (Army Docket No. **ARCEHECSA05OCT12448).** Plaintiff made initial contact with EEO Office on October 20, 2005 and the Agency

provided an untimely Notice of Right to File to the Plaintiff on December 16, 2005.

Agency failed to conduct a valid investigation on multiple claims raised within the

complaint and provided a Notice of Dismissal to the Plaintiff dated March 24, 2006,

received on March 27, 2006). Once again the Plaintiff was denied her rights and especially

her right to change in venue she made to the Agency based upon conflicts arising out of

discriminatory acts conducted by the EEO Officer as well as other Senior Officials within

the EEO, Safety and Security, Occupational Safety and Health, Human Resources and

Labor Relations, and Senior officers/civilians within the Chain of Command involved in

the discriminatory acts against the Plaintiff. The Plaintiff did not raise these matters against

these officials because of their position, but because of their direct discrimination and

retaliation against the Plaintiff.

18.   Plaintiff elevated the request for "change in venue" to the Army EEO and never

received correspondence explaining why her request was denied. The Local EEO officer

delayed processing her request for "change in venue" within US Army Corps of Engineers

(USAC) for months. Then Plaintiff was denied her request to have Department of Army

conduct the investigation even though she demonstrated clear evidence that the EEO

procedures were being violated by the EEO Officer and other key officials within the

process. The USACE EEO Officer dismissed her complaint and failed to conduct a valid

investigation on multiple claims raised within her complaint by the Agency EEO. Agency

officials never assigned her complaint to an investigator and no counseling session was

conducted by EEO Office. Plaintiff has no record of her complaint being investigated by

the Agency EEO. Plaintiff has exhausted her administrative remedies as more than 682

days (almost two years) has elapsed since Plaintiff made initial contact with EEO on

October 20, 2005. USACE EEO Officer once again dismissed the complaint and the Notice of Dismissal dated March 24, 2006. Due to the serious delay in processing her complaint and her right to appeal through the EEOC, Plaintiff timely filed an appeal and request for hearing with the EEOC on April 27, 2006. Plaintiff raised these matters with the EEOC on April 27, 2006 and requested a hearing into the allegations raised in her multiple claims within this complaint. The EEOC did not issue a final decision or hold a hearing within over 1 year of requesting a hearing with the EEOC and almost two years since filing with Agency EEO. Plaintiff has exhausted her administrative remedies as set forth under 29 C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for hearing with EEOC. In addition, more than 768 days (over two years) have elapsed since Plaintiff made initial contact with Agency EEO on April 13, 2005;

19.    A Notice of Dismissal was never provided to the Plaintiff for additional claims raised on October 27, 2005, January 6, 2006, January 16, 2006 and February 23, 2006. Once again the Plaintiff was denied her rights to have a valid investigation on multiple claims raised within her complaint by the Agency EEO. Agency officials never investigated her multiple claims under these complaints. No investigation or counseling session were conducted by EEO Office. Plaintiff has no record of her complaint being processed by the Agency. and more than 365 days since her claims dated January 16, 2006 and February 23, 2006. Due to the serious delay in processing her complaint, Plaintiff filed a request for hearing with the EEOC on April 27, 2006. Plaintiff raised these matters with the EEOC on April 27, 2006 and requested a hearing into the allegations raised in her multiple claims within this complaint. The EEOC did not issue a final decision or hold a hearing within over 1 year of requesting a hearing with the EEOC and almost two years since filing with

Agency EEO. Plaintiff has exhausted her administrative remedies as set forth under 29

C.F.R. 1614.407(d) as more than 180 days has passed since she filed her request for

hearing with EEOC. Plaintiff has exhausted her administrative remedies as more than 674

days (almost two years) has elapsed since Plaintiff made initial contact with EEO on

October 27, 2005, more than 499 days (over 1 year) has elapsed since Plaintiff made initial

contact with EEO on January 6, 2006 and 420 days (over 1 year) has elapsed since Plaintiff

made initial contact with EEO on February 23, 2006.


## PARTIES

**20.**   Plaintiff, Ms. Sheila A. Bloom, is a citizen of the United States and a resident of the

State or Maryland. She was employed by the United States Army Corps of Engineers and

the Defense Department between December 1, 1986 and December 2006. Plaintiff had

continuous career federal service and was denied her rights under the Rehabilitation Act

and provisions of Reasonable Accommodation. Plaintiff was forced to retire under the

provisions of the Disability in Federal Employee Retirement System when her requests for

reasonable accommodation and rehabilitation were denied or ignored by all levels within

her Chain of Command. After exhausting all avenues within her Chain of Command to

secure reasonable accommodation, Plaintiff filed her FERS disability retirement papers on

March 17, 2006.

**21.**   Plaintiff last position was a GS-13-0301 Strategic Planner. During her career service

within the Department of Defense (Army and Air Force) Plaintiff held positions in

Engineering (General, Environmental, Civil), Environmental Scientist, Community

Planning, Economic Development, Biologist, Project and Program Management.

22. The United States Army is an Agency of the United States Government and is headquartered in Virginia. United States Army is an executive agency within the meaning of 42 U.S.C. 2000e-16(a).

23. The United States Army Corps of Engineers ("USACE") is headquartered in Washington, DC. The USACE is an executive agency within the meaning of 42 U.S.C. 2000e-16(a).

24. Defendant is the Secretary of the United States Army. He is being sued in his official capacity under 42 U.S.C. 2000e-16(c).

25. Defendant is the Commander of the United States Army Corps if Engineers as the Chief of Engineers. Defendant is being sued in his official capacity and in his capacity under 42 U.S.C. 2000e-16(c).

26. Defendant Carl A. Strock (RET) was the Commanding General of the United States Army Corps of Engineers and served as the 51st Chief of Engineers. Defendant Strock is being sued as a former Responsible Management Official and personally.

27. Defendant Robert Griffin (RET) was the Deputy Commanding General of the United States Army Corps of Engineers. Defendant Strock is being sued as a former Responsible Management Official and personally.

28. Defendant MG Ronald Johnson is the Deputy Commander of the United States Army Corps if Engineers. Defendant Johnson is being sued as a Responsible Management Official and personally.

29. Defendants Bruce M. Elliott, Toni Trever Trombecky and Sean Wachutka are each being sued as Responsible Management Officials and personally.

**30.**  Defendant Kristine Allaman, Senior Executive Service (SES), Director of Strategy and Integration Directorate (SID), is being sued as a Responsible Management Official and personally.

**31.**  Defendant James Braxton, EEO Officer is being sued as a Responsible Management Official, in his capacity under 42 U.S.C. 2000e-16(c) and personally.

**32.**  Defendant Barbara Campbell, Deputy Chief of Staff (Civilian) is being sued as a Responsible Management Official, in her capacity under 42 U.S.C. 2000e-16(c) and personally.

**33.**  Defendant David Breeden, Safety and Occupational Health Officer is being sued as a Responsible Management Official, in his former capacity under 42 U.S.C. 2000e-16(c) and personally.

**34.**  Defendant Timothy Alderman, Director of Civilian Personnel Advisory Center (CEPAC) is being sued as a Responsible Management Official, in his capacity under 42 U.S.C. 2000e-16(c) and personally.

**35.**  Defendant Kathy Genung, Lead Human Resources Specialist of Civilian Pe rsonnel Advisory Center (CEPAC) is being sued as a Responsible Management Official and in her capacity under 42 U.S.C. 2000e-16(c)

**36.**  Defendants John and Jane Doe, yet to be determined, are being sued as a Responsible Management Official and in their capacity under 42 U.S.C. 2000e-16(c), and potentially personally.

## FACTS

37.  Plaintiff was hired by the defendant, the United States Army Corps of Engineers ("USACE"), in December of 1986 as a Civil Engineer.

38. Between December of 1986 and September of 2002, Plaintiff's career and individual performance as an employee of the USACE excelled. She received numerous promotions; outstanding performance appraisals; performance based Within Grade Increases; Quality Step Increases; cash awards; prestigious leadership training; and letters and notes of commendation and recognition form inside and outside of the USACE.

39. In June 1996, Plaintiff was permanently promoted to Formerly Used Defense Site (FUDS) Program Manager over the Northeast Region in the Environmental Management Branch in Programs and Project Management Division in the Baltimore District Corps office. Shortly after assuming this position, Plaintiff began to uncover major flaws at the FUDS site known as "American University Experiment Station (AUES)" or "Spring Valley" in the Northwest of the District of Columbia. The site involved identification, testing, removal and clean-up of chemical and biological agents, nerve agents, chemical and conventional weapons and munitions and the breakdown products.

40. Between 1996 and 1998, Plaintiff raised significant concerns to her supervisors with respect to critical and life threatening deficiencies in the cleanup of the Spring Valley project. Plaintiff's disclosures exposed specific and substantial dangers to public health and safety as well as to the environment. Plaintiff's concerns involved the drinking water reservoir, tributaries and sources of potential contamination arising from the FUDS activities at AUES and to surrounding areas. Plaintiff's concerns also included flawed scientific and engineering analysis strategies that were foundational to correct clean-up and restoration of the site. Plaintiff also raised concerns over inadequate and misleading sample collection, munitions discovery and removal, inaccurate baseline mapping, inadequate sampling, analysis and testing of the chemical constituents and breakdown

products from chemical and biological weapons, improper data quality and third party validation methods, and deficiencies with how deep soil, water, surface and subsurface samples were collected throughout the site.

41.  Plaintiff noted several violations of the Community Right to Know Act, the Clean Water Act, Clean Air Act, Safe Drinking Water and Comprehensive Environmental Response and Liability Act (CERCLA). She also disclosed conflicts of interest created by rehiring and paying Parsons Engineering to reevaluate its own project documents and cleanup strategies under Operation Safe Removal conducted between 1993 and 1995.

42.  In retaliation for raising these concerns with USACE and Army, Plaintiff was informed she was no longer going to function as the AUES (Spring Valley) Project Manager and was going to be replaced.

43.  In late 1998 and early 1999, Plaintiff was selected as the top candidate for a key position funded by EPA and detailed to the City of Baltimore as the Baltimore City Showcase Community Federal Loaned Executive.  In retaliation for her disclosures, USACE Senior officials attempted to interfere with this transfer and informed the Plaintiff that she was not allowed to accept the assignment.  Said interference was taken as a result of Plaintiff having raised serious concerns related to the Spring Valley site.  After EPA and Baltimore City officials objected due to the fact that Plaintiff was the top candidate for the position, USACE Senior officials capitulated and allowed her to accept the assignment.  Between February 1999 and April 2001 served with excellence forging key relationships and agreements under the Brownfields Showcase initiative both within Baltimore, Annapolis and on the national level.  Plaintiff received an Excellent Performance appraisal with awards for this effort and was recognized by EPA Administrator Carol Browner.

Plaintiff was responsible for crafting landing memorandum of agreements between the Mid-Atlantic Federal Partners for the Environment (MAFPE) and the cities of Baltimore and Annapolis both ratified on September 25, 2002 and April 22, 2004 respectively.

44. During this time, Plaintiff also graduated from the Leadership Anne Arundel Flagship Class after 10 month course work in Community Trustee training. Plaintiff also was an instructor for USACE and spoke at various major forums for environmental matters and Brownfields.

45. In early 2001, Plaintiff had arranged a new potential assignment with the Baltimore City Mayor's Office or another Department to continue the efforts on Brownfields. However, in retaliation, once again Senior Agency officials refused to allow her to be assigned to this high status position working on Brownfields Redevelopment in Baltimore City.

46. In April 2001, Plaintiff was suddenly transferred to Headquarters USACE at 441 G. Street, NW, Washington DC as the National Program Manager for FUDS and Native American Lands Environmental Mitigation Program (NALEMP). Plaintiff received commendation and awards in this assignment.

47. In July 2001, Plaintiff provided an email to internal USACE team members raising concerns regarding Spring Valley to the Project Team in preparation for Congressional Hearings.

48. In October 2001, Plaintiff was selected to Shadow the former Chief of Engineers, Robert Flowers LTG (Ret) for six days.

49. Plaintiff was competitively selected to attend the prestigious Army Management Staff College (AMSC) for four months from which she graduated in April 2002. While attending the AMSC, Plaintiff interviewed for key top positions at the GS-13 and GS-14

level both within and outside of USACE. On March 24, 2002, Plaintiff was permanently
transferred from Baltimore District to HQ USACE Command Planning Group a new
strategic planning cell within the Executive Office of the Chief of Engineers. Plaintiff was
assigned to the CPG and informed in writing by Personnel that she was a strategic planner,
GS-13-0301. Plaintiff reported for duty in April 2002 following graduation from AMSC.

50.   Plaintiff was provided a Permanent Change of Station (PCS) order reflecting her new
job title (Strategic Planner), grade (GS-13) and Series (0301) by USACE Personnel.

51.   After arrival in the CPG, Plaintiff discovered that her position description and title
(Facilitator) reflected on her SF-50 were incorrect and immediately notified Agency
officials who assured her that the job title and description would be corrected. This
calculated decision by Personnel resulted in further reprisal that eventually was used as a
form of retaliation against the Plaintiff during a "MOCK" Reduction in Force conducted in
2003 and 2004.

52.   Plaintiff's concerns became the subject of Department of Justice ("DOJ") investigation
following the filing of a Civil Action in early 2002 by Thomas P. Loughlin and Kathy
Loughlin ("Loughlin's") individually and on behalf of their children regarding the Spring
Valley (AUES) project cleanup. In accordance with the Appeals from the United States
District Court for the District of Columbia No. 03-5284 (page 3) decided December 21,
2004 and consolidated with 03-5286, et. al., the Loughlin's along with other appellants –
American University ("AU"); Glenbrook Limited Partnership, Lawrence N. Brandt, Inc.,
Lawrence N. Brandt and Robert Brant (Collectively "Glenbrook-Brandt"); Patricia Gillum
and Samille Saum "for the Government's alleged negligence in (1) burying dangerous
munitions and toxic chemicals on property leased from AU in the Spring Valley area of the

District of Columbia around the time of World War I, (2) failing to issue warnings about the buried munitions and chemicals and resulting in dangerous conditions, and (3) failing to investigate and remedy the hazards and contamination it caused." Gillum and Saum initially filed Federal Tort Claims Act (FTCA) and local law claims in the DC Superior Court. AU removed the actions to the District Court under 28 USC 1441(b)-(c) (2000). The Loughlins, Gillum and Saum had originally brought negligence claims against AU - *Loughlin I, 209 F. Supp. 2d at 167* which brought cross-claims against the Government under the FTCA. Loughlins filed both FTCA and supplemental local law claims in District Court. Loughlin's were able to bring their local law claims to the District *Court See Loughlin I, 209 F. Supp. 2d at 167* even after AU entered a Motion to Dismiss. The US District Court of DC Civil Docket No. 1:02-cv-00294-ESH only dismiss the case based upon discretionary function and not the merits of the issues raised. The Appellant's appealed the dismissal and filed *Loughlin II, 286 F. Supp. 2d at 23* with Oral Argument 3:17-:28.

53. The Government is compelled to comply with local, state, federal laws, statutes, policies and procedures under the CERCLA, Clean Water, Clean Air, Safe Drinking Water, NEPA, OSHA, Department of Transportation (shipment of hazardous substances, munitions and chemicals), Community Right to Know Act, Emergency Response, etc..

54. Federal employees who are entrusted with safety, health, environmental and public policy positions are required to warn and notify the Public of imminent or potential threats to human health and the environment and can suffer both criminal and civil penalties for willingly and knowingly misleading or withholding such information from the Public and other Federal Agencies engaged in the Clean-up and Restoration of FUDS sites. Under

DOD and Army Policy the Restoration Advisory Board and advertisement of valid, accurate, timely and scientifically based information regarding issues related safety, human health and the environment is required. Misleading the Public through manipulation or withholding of critical data is a violation of law, regulations and policies. Agency officials who purposefully withhold such information are violating the intention of Congress in establishing the FUDS program as a remedy to past military activities. At AUES (Spring Valley) the imminent threat and danger to both human health and the environment as well as National Security related to the Safety of the Government within the Executive, Judicial and Legislative Branches even requires more due diligence in ensuring that quantification and scientific analysis, clean-up and restoration strategies, Spill and Emergency Response Reporting and destruction of Weapons of Mass Destruction (chemical and biological agents, munitions) is adhered to with extreme rigor and commitment. AUES also has a direct impact on the Drinking Water Reservoir and tributaries of the Nations Capital due to potential underground infiltration of toxic chemicals, agents and munitions.

55.  During the World War I operations at AUES (Spring Valley) the US Army Corps had exclusive control over the property. During operations, the Gas Service did conduct massive research and development activities with thousands of scientists and engineers to develop, test, manufactured a myriad of chemical, biological and nerve agents as well as weapons. The Gas Service used open burst air testing of these agents over trenches, bunkers and pits to simulate battlefield conditions. When the AUES was suddenly closed the very large quantities appear to have been dumped into various areas within AUES and many wood buildings were burned on site potentially spreading the contaminants by wind to other areas.

56.  Following Loughlin's and other appellants suits mentioned above, Plaintiff was compelled to meet with "DOJ" after she discussed the her concerns over Spring Valley with Susan Platt, Agency Counsel of the Baltimore District Corps office and Kenneth Powers of the USACE General Counsel (Ethics Officer) in early April 2002. Following graduation from AMSC, Plaintiff met with "DOJ" attorneys at which time Plaintiff revealed her concerns during the interview with DOJ attorneys in the Civil Litigation Department.

57.  Thereafter, it became known to the entire Command Structure within HQ USACE, North Atlantic Division and the Baltimore District that Plaintiff was willing to go forward and expose concerns that she raised internally with USACE, potentially leading to embarrassment and potential criminal and civil penalties for misleading the public and other local, state, federal agencies.  Plaintiff had attempted to raise these concerns since 1996 and believed it was her duty to do so in the interest of the Public Trust for which she was called to uphold.

58.  Significant retaliation and reprisal against the Plaintiff ensued shortly after these protected disclosures to DOJ.  Plaintiff was now residing under the Chief of Engineers Executive Office.  Plaintiff's protected disclosures related to the AUES (Spring Valley) project were a contributing factor in a multitude of adverse actions and reprisals conducted by Senior Agency officials between September 2002 and present.

59.  Plaintiff further attempted to bring forward her concerns to the USACE and DOD Inspector General ("IG") who report directly to the Commanding General and Secretary of Defense respectively.  The USACE IG and the Plaintiff met and discussed the issues

related to Spring Valley. Plaintiff also alerted both the USACE and DOD IG and the Commanding General to her protected disclosures regarding Spring Valley.

60. The retaliation was so severe within the CPG that the Plaintiff and other CPG personnel request sensing sessions. The USACE IG refused to investigate or conduct any sessions until November 2003.

61. Between June of 2002 and August of 2002, three GS-15 managers were hired in the CPG and referred to themselves as the "management team": Bruce M. Elliott (Deputy), Mr. Sean Wachutka and Toni Trombecky.

62. In July 2002, at a work-related party held in the home of USACE Colonel Peter Saia (RET), Ms. Trombecky's husband made inappropriate sexual advances towards Plaintiff. He assumed another name, Sam, and did not tell the Plaintiff that his wife was her supervisor. At the end of the party, Plaintiff was saying goodbye to her supervisors and other people while standing outside, including Ms. Trombecky. Mr. Trombecky grabbed Plaintiff and pulled her towards him into a hug and said "take me away from them, they don't understand me."

63. Within several days of this incident with Mr. Trombecky, Ms. Trombecky trapped Plaintiff in her cubicle and berated her.

64. Beginning in September of 2002 and continuing through the present, Plaintiff has been subjected to a pattern of discrimination, reprisal and hostilities in violation of the terms and conditions of her employment by the management team, Senior Civilian and Military Officers, Personnel Officials, Safety and Health Officials, Labor Relations and the EEO Office.

65. After Mr. Wachutka's arrival in the CPG in August 2002, he continually presented Plaintiff with job announcements on a daily basis. Mr. Wachutka also threatened, harassed and reprised against the Plaintiff.

66. Following the first party at Colonel Saia's house in July 2002, Ms. Trombecky accused Plaintiff of intending to undermine her authority on numerous occasions.

67. On November 15, 2002, the day before another work-related Holiday Party at Mr. Bruce Elliott's home, Mr. Trombecky approached Plaintiff and asked if she was going to the party. Plaintiff said she thought she was going but was very apprehensive due to the behavior of Mr. Trombecky at the last party. Ms. Trombecky then stated that her husband was going to "joke" with the Plaintiff. Plaintiff asked why he was going to "joke" with her. Ms. Trombecky stated in a very sexual tone, "Oh he really likes you." Plaintiff became very frightened and upset and did not wish to attend the party but felt compelled since her next line supervisor had invited her.

68. On November 16, 2002, Plaintiff reluctantly attended the Holiday Party at Mr. Elliott's house as she was afraid of the Trombecky pair. There were approximately 30-40 people gathered in a large open kitchen living room area. When the Plaintiff walked in, Mr. Trombecky immediately approached her, grabbed her and pulled her towards him, then grabbed and tickled her near her breasts. Plaintiff immediately pushed him away and said, "Don't you ever touch me again" loud enough for people in the room to hear. Mr. Trombecky asked Plaintiff what was wrong and she told him that he inappropriately tickled her and to never touch her again. Plaintiff quickly moved away from him and the into the finished basement, then both Mr. and Mrs. Trombecky followed her there. Mrs.

Trombecky approached the Plaintiff and was overly nice. Mr. Trombecky stood against the wall and stared at the Plaintiff for a long time. Plaintiff left the party a short time later.

69. Agency officials refused to change the Plaintiff's job title until October 2, 2004 preventing Plaintiff to be reassigned to vacant positions for which she was more than qualified.

70. During the International District Commanders Conference in 2003, Ms. Trombecky and Mr. Elliott further retaliated and reprised against the Plaintiff.

71. Beginning in September 2002, the management team would not assign valid work for which she was qualified, namely in environmental and International work. After early 2003, the management team conspired together to ensure that Plaintiff was not assigned valid work, given a legitimate Total Army Performance And Evaluation System TAPES Performance Standards and associated work assignments. The management team made it impossible for the Plaintiff to excel as she had always done by withholding work, over assigning work or abusing her in meetings, withholding access to tools to perform her job such as telephone, computers and attendance of meetings. Plaintiff repeatedly submitted Draft TAPES to the management team as well as her Senior Executive Service member Ms. Kristine Allaman. In late 2003, Ms. Allaman assumed leadership of the Strategy and Integration Directorate formerly known as the Command Planning Group. Plaintiff was reassigned from the CPG to the SID during the MOCK RIF under the illegal and unauthorized USACE 2012 reorganization scheme.

72. The acts of discrimination, reprisal and retaliation and hostilities against the Plaintiff have never lapsed. These acts of aggression led first to an Administrative Grievance in

March 2003 and four subsequent EEO Complaints documented within the timely filed

Civil Action Case Number 1:05CV01804 on September 12, 2005.

73.   Within the court filing (Case Number 1:05CV01804), Plaintiff's Counsel, Mike Kohn,

Kohn, Kohn & Colapinto, clearly identified claims from September 2002 to October 22,

2004. That Case clearly identifies, with specificity, the increasing hostilities towards the

Plaintiff for her protected disclosures both under Title VII of the Civil Rights Act of 1964

("Title VII), *as amended,* 42 U.S.C. 2000e et seq,; the Civil Service Reform Act

("CSRA"), 5 U.S.C. 2302; and the Whistleblower Protection Act ("WPA"), 5 U.S.C. 1211-

1215, 1218-1219, 1221-1222, 7702-7703. Plaintiff's attorney clearly provided supporting

evidence and claims for Five (V) counts: COUNT I (Hostile Work Environment); COUNT

II (Retaliation); COUNT III (Sex Discrimination); COUNT IV (Whistleblower

Discrimination (and reprisal)) ; and COUNT V (Violation of the Merit Systems Protection

– 30 Day Suspension) (30 working day, really 43 calendar days).

74.   The following claims identified within this current action submitted on May 20, 2007

are being submitted Pro Se by the Plaintiff.

75.   Plaintiff requests the Court to assign Plaintiff Counsel to litigate this complaint as

outlined in the Agency Final Decision Letter received February 22, 2007.

76.   The claims stated within this action give rise out of the actions taken by Agency

officials in prior claims and the evidence of on-going reprisal must be considered as

overwhelming evidence of on-going and continual discrimination, harassment, reprisal and

retaliation by the "management team", Ms. Kristine Allaman and Senior Agency Officials.

77.   The claims included within this action arise out of provisions of law, regulation, policy

ad procedures governed by Title VII of the Civil Rights Act of 1964 ("Title VII), *as*

*amended,* 42 U.S.C. 2000eet seq,; the Civil Service Reform Act ("CSRA"), Rehabilitation

Act of 1973, Reasonable Accommodation, 5 U.S.C. 2302; and the Whistleblower

Protection Act ("WPA"), 5 U.S.C. 1211-1215, 1218-1219, 1221-1222, 7702-7703. The

Claims arise out of the following counts: COUNT I (Hostile Work Environment); COUNT

II (Retaliation and Reprisal); COUNT III (Sex Discrimination); COUNT IV (Disability

Discrimination); COUNT V (Reprisal and Discrimination by Senior Agency Responsible

Management Officials; COUNT VI (Violation of the Merit Systems Protection –

Performance Management and Union Representation); COUNT VII (Violation of the

Family Medical Leave Act ("FMLA"), Americans with Disability Act ("ADA"),

Rehabilitation Act and Reasonable Accommodation); COUNT VIII (Violation of the

Occupational Safety and Health Act (OSHA)OSHA and DOL Employment Laws); and,

COUNT IX (Whistleblower Discrimination (and reprisal)).

### <u>COUNT I (Hostile Work Environment)</u>

78.  Plaintiff incorporates by reference paragraphs 1-77, inclusive and all allegations

contained herein.

79.  Agency officials have not provided customary benefits, rights and privileges given to

similar employees within her class and Agency officials have colluded to discriminate and

reprise against Plaintiff in violation of laws, regulations, statutes, policies and principles of

the Army after Plaintiff notified her superiors of the discrimination, reprisal, retaliation and

hostile work environment created by the Senior managers within the Strategy and

Integration Directorate (formerly known as the Command Planning Group).  Her

disclosures about workplace discrimination and reprisal only led to more reprisal and

discrimination, threats and retaliation in violation of Plaintiff rights and protections under Title VII and Title X.

80.   On September 21, 2004 Mr. Elliott, Mr. Wachutka and a contractor from the USACE Provost Marshall threatened to have Plaintiff arrested by the District of Columbia Police Department and falsely accused Plaintiff of a felony in the District of Columbia.   Mr. Wachutka falsely stated that the Plaintiff was "guilty of a Felony in the District of Columbia" and that they were going to have arrested, however this was her first offense for an undefined and proven crime.

81.   Between September 21 and 30, 2004, Plaintiff notified appropriate law enforcement of the treats made by her managers to District of Columbia Police Department, GAO, the Executive Branch and Congressional Members.

82.   On September 22, 2004 Plaintiff was compelled to notify the GAO security who in turn notified the Federal Protective Service regarding the threats by the Senior Managers.

83.   On September 24, 2004 Colonel McMahon and Barbara Campbell refused to remove me from the hostile work environment or to report the reprisal actions on-going within the Strategy and Integration Directorate.   During this meeting, Colonel McMahon repeatedly interrogated the Plaintiff as to why she was not willing to deploy to the war zones of IRAQ or Afghanistan.

84.   On March 7, 2005, Mr. Elliott threatened Plaintiff during a weekly Performance Improvement Plan meeting.   Mr. Elliott intimidated and forced the union steward to leave the meeting and then threatened Plaintiff and refused her to have union representation in violation of the USACE-AFGE Union Agreement. Plaintiff was compelled to notify the GAO security and Federal Protective Service regarding the threats.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHEILA A. BLOOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  07-0979 (HHK) |
| | ) | |
| | ) | |
| Mr. PETE GEREN, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss, or any Opposition thereto, and the

entire record, it is this _____ day of _____, 2007 hereby

ORDERED, that defendants' Motion is GRANTED.  It is further

ORDERED that plaintiff's Complaint is dismissed with prejudice.


_____
HENRY H. KENNEDY JR.
U.S. DISTRICT COURT JUDGE


Copies to:
Defendants via ECF and to Plaintiff via first-class mail